Lorraine B. Echavarria (SBN 191860)
lori.echavarria@wilmerhale.com
Nancy Lynn Schroeder (SBN 280207)
nancy.schroeder@wilmerhale.com
Sonia L. Fleury (SBN 298534)
sonia.fleury@wilmerhale.com
Kelsey M. McGregor (SBN 307627)
kelsey.mcgregor@wilmerhale.com
Laura F. Donaldson (SBN 307638)
laura.donaldson@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Laboni Hoq (SBN 224140)
lhoq@advancingjustice-la.org
Yanin Senachai (SBN 288336)
ysenachai@advancingjustice-la.org
ASIAN AMERICANS ADVANCING
    JUSTICE-LOS ANGELES
1145 Wilshire Blvd., 2nd Floor
Los Angeles, CA 90017
(213) 977-7500 Telephone
(213) 977-7595 Facsimile

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Socheat Chy, | Case No. 2:17-cv-04325-BRO-AGR |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| Lam Sin Yam; Ray Lim; Tiffany Ngo; Ngo Asset Management, LLC; Tiffany Ngo in her capacity as trustee of The Tiffany Ngo Living Trust UTD; Naing Lam Yam; Jane Doe 1; Cindy Kanya Chan; Molica Ratha Keo; Nivodeth Khiev; Doe Gas Station 2; Doe Gas Station 3; Doe Laundromat 4; and DOES 5 through 10, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Socheat Chy ("Socheat" or "Plaintiff") alleges against her trafficker defendants, Lam Sin Yam (known to Plaintiff as Sing Lim); Ray Lim; Tiffany Ngo; Ngo Asset Management, LLC; Tiffany Ngo in her capacity as trustee of The Tiffany Ngo Living Trust UTD; Naing Lam Yam; Jane Doe 1; Cindy Kanya Chan; Molica Ratha Keo; Nivodeth Khiev; Doe Gas Station 2; Doe Gas Station 3; and Doe Laundromat 4 as follows:

## I.     NATURE OF THE ACTION

1.     Socheat brings this action against the Defendants for violations of the Trafficking Victims Protection Act and its Reauthorizations ("TVPA"), Human Trafficking under California Civil Code § 52.5, violations of the California Labor Code, violations of the Fair Labor Standards Act ("FLSA"), Unfair Competition under the California Business and Professions Code, Intentional Infliction of Emotional Distress, False Imprisonment, Battery, Assault, Negligence, Negligence Per Se, Negligent Infliction of Emotional Distress, Trespass to Chattel, Quantum Meruit, Conspiracy, Constructive Voidable Transaction, Intentional Voidable Transaction, and Breach of Contract. Defendants trafficked Socheat from Cambodia to the United States, where they subjected her to forced labor and involuntary servitude in their businesses and homes in Southern California.  For years, Defendants terrorized and tortured Socheat.  Defendants forced Socheat to work an average of 17 hours per day, seven days per week, in their places of business and homes for negligible pay; confined Socheat to a gas station every night for months at a time, forcing her to sleep in a lawn chair there, and at times locking her inside with a metal grate; physically and verbally abused Socheat, going so far as to cut her face with a knife to intimidate and control her; forbade Socheat from going anywhere by herself; refused to seek medical attention for Socheat after she attempted suicide; and threatened Socheat with further harm if she attempted to escape. Throughout the recruitment and trafficking process, Defendants used methods of

-1-

personal, reputational, and cultural coercion to manipulate, entrap, and control Socheat.  Defendants' relentless abuse culminated in Socheat's suicide attempt, during which Defendants denied her medical care and left her to die.  After regaining her strength, Socheat contacted the police and was rescued by them in 2015.  She has been living in a shelter for trafficking survivors since that time.

## II.   JURISDICTION AND VENUE

2.     This Court has federal question jurisdiction over this action under U.S.C. § 1331 because this action alleges violations of federal statutes, including the TVPA (18 U.S.C. §§ 1584, 1589, 1590, 1592, 1593A, 1594, and 1595(a)) and the FLSA (29 U.S.C. §§ 206 and 207).

3.     This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k), because each Defendant, being domiciled or incorporated in California, is subject to the jurisdiction of a court of general jurisdiction in the state of California under California Code of Civil Procedure § 410.10.

5.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III.   THE PARTIES

### A. <u>Plaintiff</u>

6.     Plaintiff Socheat Chy was born in Banan, Cambodia, and was trafficked to California by Defendants on June 11, 2013 for purposes of forced labor.  Socheat grew up poor in a small Cambodian village with her two sisters and her parents, who are farmers.  Defendants forced Socheat to work for them from at least June 11, 2013 through September 28, 2015.  Socheat and Defendants communicated in the Khmer language. Specific statements attributed to Defendants in this complaint are translations of Khmer-language words.

## B. **Defendants**

7.     On information and belief, Defendant Lam Sin Yam ("Defendant Sin") is the sister of Defendant Naing Lam Yam, the mother of Defendants Tiffany Ngo and Ray Lim, and resides in Palmdale, California.  On information and belief, Defendant Sin masterminded the scheme to traffic Socheat into the United States for forced labor, including by recruiting Socheat, directing her marriage to Defendant Naing Lam Yam, threatening her and her family with harm, confiscating her documents, mentally and physically abusing her, directing others not to pay her, and failing to pay her for her work.

8.     On information and belief, Defendant Naing Lam Yam ("Defendant Yam") is the brother of Defendant Sin, the uncle of Defendants Tiffany Ngo and Ray Lim, and resides in Long Beach, California.  On information and belief, Defendant Yam married Socheat in or around December 2010, and participated in the scheme to recruit and force her to work under duress and without proper payment, including by humiliating her, fabricating coercive immigration evidence, and threatening her and her family with harm.

9.     On information and belief, Defendant Tiffany Ngo ("Defendant Ngo") is the daughter of Defendant Sin, the niece of Defendant Yam, the sister of Defendant Ray Lim, and resides in Palmdale, California.  On information and belief, Defendant Ngo owns or owned Defendant Doe Gas Station 2, Defendant Doe Gas Station 3, and Defendant Doe Laundromat 4.  On information and belief, Defendant Ngo is also the agent of an asset management company, Ngo Asset Management, LLC, which owns or owned the shopping center where Socheat was required to work.  Defendant Ngo participated in the scheme to force Socheat to work under duress and without proper payment, including by mentally and physically abusing her, and subjecting her to deplorable working conditions with negligible compensation.

10.     On information and belief, Defendant Ngo Asset Management, LLC ("Defendant Ngo Asset Management") is located at 101 East Avenue J, Lancaster, California 93535, and owns or owned the shopping center where Socheat was required to work under duress and without proper payment.

11.     On information and belief, Defendant Tiffany Ngo in her capacity as trustee of The Tiffany Ngo Living Trust UTD ("Defendant Ngo Trustee"), is a trust created under the laws of California with a mailing address in Palmdale, California.  Defendant Ngo is the trustee of The Tiffany Ngo Living Trust UTD. On information and belief, Defendants Ngo, Lim, and Ngo Asset Management transferred substantially all their real properties to The Tiffany Ngo Living Trust UTD.

12.     On information and belief, Defendant Ray Lim ("Defendant Lim") is the son of Defendant Sin, the nephew of Defendant Yam, the brother of Defendant Ngo, and resides in California.  On information and belief, Defendant Lim owns or owned the Defendant Doe Gas Station 3 business, and employed Socheat there.  On information and belief, Defendant Lim participated in the scheme to force Socheat to work under duress and without proper payment, including by subjecting Socheat to deplorable working conditions.

13.     On information and belief, Defendant Jane Doe 1 ("Defendant Doe 1") has family residing in Cambodia, and personally resides in California.  On information and belief, Defendant Doe 1 participated in the scheme to recruit and force Socheat to work under duress and without proper payment, including by helping recruit Socheat and threatening Socheat and her sister, who still resides in Cambodia.

14.     On information and belief, Defendant Cindy Kanya Chan ("Defendant Chan") was born in Cambodia and resides in Long Beach, California.  On information and belief, Defendant Chan participated in the

-4-

scheme to recruit and force Socheat to work under duress and without proper payment, including by co-sponsoring Socheat's immigration process.

15.   On information and belief, Defendant Molica Ratha Keo ("Defendant Keo")—known to Socheat as "Monica"—is the mother of Defendant Nivodeth Khiev, and resides in Long Beach, California.  On information and belief, Defendant Keo participated in the scheme to recruit and force Socheat to work under duress and without proper payment, including by managing and coaching Socheat's immigration process, constraining her movements, and severely underpaying her for significant domestic labor.

16.   On information and belief, Defendant Nivodeth Khiev ("Defendant Khiev")—known to Socheat as "Julie"—is the daughter of Defendant Keo, and owns a residence in Long Beach, California.  On information and belief, Defendant Khiev participated in the scheme to recruit and force Socheat to work under duress and without proper payment, including by severely underpaying her for significant domestic labor.

17.   On information and belief, Defendant Doe Gas Station 2 is a Valero franchise gas station and market operated by Defendants Sin, Lim, Ngo, and Ngo Asset Management.  On information and belief, Defendant Doe Gas Station 2 is or was owned by Defendant Ngo and is located at 500 East Avenue K, Lancaster, California 93535.  On information and belief, Socheat was required to work at Defendant Doe Gas Station 2 under duress and without proper payment.

18.   On information and belief, Defendant Doe Gas Station 3 is an Arco franchise gas station and market operated by Defendants Sin, Lim, Ngo, and Ngo Asset Management.  On information and belief, the Defendant Doe Gas Station 3 business is or was owned by Defendants Ngo and Lim and the property is or was owned by Defendant Ngo.  On information and belief, Defendant Gas Station 3 is located at 44412 Division St., Lancaster, California 93535.  On information

1    and belief, Socheat was required to work at Defendant Doe Gas Station 3 under

2    duress and without proper payment.

3         19.   On information and belief, Defendant Doe Laundromat 4 is a

4    laundromat that was or is owned by Defendant Ngo and is located at 500 East

5    Avenue K, Lancaster, California 93535.  On information and belief, Socheat was

6    required to work at Defendant Doe Laundromat 4 under duress and without

7    proper payment.

8         20.   On information and belief, each Defendant is the alter ego and joint

9    employer of, and is working in joint enterprise with, each and every other

10   Defendant.  Plaintiff is informed and believes, and on that basis alleges, that at

11   all times mentioned in this Complaint, each and every Defendant was the agent

12   or employee of each and every other Defendant, and in doing the acts alleged,

13   was acting within the course and scope of such agency or employment, with the

14   consent, provision and authorization of each of the remaining Defendants.  All

15   actions of each Defendant were ratified and approved by every other Defendant.

16        21.   Plaintiff is informed and believes, and on that basis alleges, that at all

17   times mentioned in this Complaint, each and every Defendant entered into a

18   conspiracy and agreement with every other Defendant, or later joined that

19   conspiracy and ratified the acts and conduct of other defendants who had entered

20   the conspiracy.  Plaintiff is further informed and believes, and on that basis

21   alleges, that at all times mentioned in this Complaint, all Defendants knowingly,

22   maliciously, and willfully entered into that conspiracy.  All Defendants' acts and

23   failures to act as alleged in this Complaint were perpetrated in furtherance of the

24   conspiracy.

25   ///

26   ///

27   ///

28   ///

## IV.   FACTUAL BACKGROUND

### A. <u>Defendants recruited Socheat for labor, tarnished her reputation, and threatened her younger sister</u>

a)   <u>Defendants recruited Socheat to work in the United States</u>

22.   Socheat was born in 1990 in Banan, Cambodia, a small village in the northwest of the country, about an hour outside the city of Battambang. Socheat's parents were farmers, and her father had municipal responsibilities in their village.  Growing up, Socheat helped care for her two younger sisters. Socheat's family was poor, and her parents worked a lot.

23.   When Socheat was a teenager, Defendant Sin recruited Socheat's close family member ("Family Member 1") to work for her in the United States. On information and belief, Defendant Sin arranged for Family Member 1 to marry a United States Green Card holder, and subsequently move to the United States to work for Defendants.

24.   In or around July or August 2009, Socheat spoke to Family Member 1 on the phone.  Family Member 1 encouraged Socheat to come to the United States to work for Defendants.  Family Member 1's family had purchased a piece of land and a new shop and appeared to be prospering.  Socheat believed their prosperity derived from money that Family Member 1 sent to Cambodia from her job in the United States.  Socheat wanted to do the same for her family.

25.   Soon thereafter, Defendant Sin's brother, Defendant Yam, came to visit Socheat.  Defendant Yam told Socheat that she would work hard in the United States, stocking and shelving items in a shop, and working the register. Defendant Yam told Socheat she would make more money than she was earning at her current job in a restaurant in Battambang, and that she could help her family.  Socheat told Defendant Yam that she wanted to come to the United States.

-7-

b)      Defendants begin spying on and controlling Socheat

26.   At the end of 2009 or early 2010, after Defendant Yam visited Socheat, Defendant Sin called Socheat and ordered her to stop working immediately, to return home to Banan, and to begin taking English classes. Socheat did not want to leave her job, but Family Member 1's mother told Socheat that in order to go to the United States and make more money, she had to do whatever Defendant Sin told her to do.  On information and belief, Defendant Sin also instructed Family Member 1's mother to tell Socheat that if Socheat did not obey Defendant Sin, Socheat could not go to the United States. Socheat obeyed Defendant Sin's orders.

27.   In January 2010, Defendant Sin called Socheat and informed her that a man named C.C. would be coming to Cambodia with Defendant Doe 1. Defendant Sin told Socheat that Socheat would marry C.C.  Socheat understood that if she wanted to come to the United States, she had to marry C.C.  Defendant Sin told Socheat to do whatever Defendant Doe 1 told her to do.

c)      Defendants tarnished Socheat's reputation and
threatened Socheat and her younger sister

28.   In February 2010, on information and belief, C.C. and Defendant Doe 1 arrived in Phnom Penh, and traveled to Banan.  Shortly thereafter, Socheat became engaged to C.C., and her neighbor R.H. became engaged to Defendant Doe 1.  Defendant Sin ordered that a double engagement ceremony take place for the four of them.

29.   After the engagement ceremony, Defendant Sin sent money for Defendant Doe 1, R.H., C.C., Socheat, and Socheat's mother to travel around Cambodia and take photos together.  During this time, Defendant Doe 1 pushed Socheat to sit close to C.C., and to be "touchy" with him.  Defendant Doe 1

-8-

1   instructed C.C. to put his hands on Socheat's hips, whether or not a photograph

2   was being taken.

3          30.   Next, Defendant Doe 1 took Socheat, C.C., and R.H. to Phnom Penh

4   without Socheat's mother.  Socheat avoided C.C. because she did not want him

5   to touch her.  Defendant Doe 1 reprimanded Socheat for avoiding C.C., telling

6   her that if she continued to misbehave, Socheat would not be allowed to come to

7   the United States.

8          31.   At night, Defendant Doe 1 insisted that Socheat go to C.C.'s room.

9   Socheat refused, and Defendant Doe 1 threatened Socheat that if she did not let

10  C.C. touch her body, Defendant Doe 1 would tell Defendant Sin to take

11  Socheat's middle sister to the United States instead of Socheat.  Despite

12  Socheat's express refusals, C.C. stayed in Socheat's bed all night with his arms

13  around her, and Socheat could not sleep because she was so afraid.

14         32.   In March 2010, C.C. and Defendant Doe 1 left Cambodia, and

15  Socheat accompanied them to the airport.  Before they parted, C.C. kissed

16  Socheat's cheek without Socheat's consent.  On information and belief, R.H. saw

17  C.C. kiss Socheat, and smirked.  By kissing Socheat in a public space, C.C. had

18  shamed Socheat, and damaged her reputation as a Cambodian woman.

19         33.   After this trip, Defendant Sin called off Socheat's engagement with

20  C.C., and cancelled their wedding.  Socheat understood that Defendant Sin

21  believed that after Socheat arrived in the United States, C.C. might interfere with

22  Defendant Sin's control over Socheat.

23         34.   By cancelling the wedding with C.C., Defendant Sin exposed

24  Socheat to shame and ridicule.  On information and belief, members of Socheat's

25  community knew of their engagement, and had seen C.C. touch Socheat and kiss

26  her at the airport.  Socheat believed that her reputation was ruined because these

27  behaviors were taboo in her culture.  Socheat feared that if she did not come to

28  the United States, she would have to leave Banan or risk never being able to

-9-

marry or have a family.  Socheat considered moving to Thailand if she was unable to come to the United States.

35.    Family Member 1 called Socheat to say that Defendant Sin wanted to take Socheat's middle sister to the United States instead of Socheat.  Socheat perceived this as a threat to her sister because her sister was too young to protect herself from Defendant Sin and her associates.  In order to protect her sister, Socheat felt she had go to the United States.  Socheat's sister told Family Member 1 that she did not want to go to the United States, and Socheat waited, fearful about whom Defendant Sin would choose to send.

36.    During this time, on information and belief, rumors about Socheat spread through Banan.  On information and belief, when Socheat attended a wedding, guests in attendance told people that Socheat was already married, and was not single.

> ### d)    Defendant Yam married Socheat

37.    In July 2010, Defendant Sin informed Socheat that her brother, Defendant Yam (who was twenty-eight years older than Socheat), would marry Socheat in Cambodia.  Socheat felt required to move forward with the proposal in order to protect her little sister from Defendant Sin.

38.    On or about December 27, 2010, Socheat married Defendant Yam.

> ### e)    Defendants continued to threaten and shame Socheat, and submitted documents with false information to U.S. Citizenship and Immigration Services to obtain a visa for Socheat

39.    Defendants Sin and Yam continued to manipulate and entrap Socheat by compromising her reputation in her community, and by submitting fabricated evidence to the American Embassy in Cambodia and to U.S. Citizenship and Immigration Services ("USCIS").  Defendant Sin told Socheat that she had to do

-10-

whatever Defendant Yam told her to do if Socheat wanted to work in the United States.

40.    First, after the wedding ceremony, Defendant Yam made Socheat take pictures all over Cambodia of him hugging and touching her.  Next, Defendant Yam forced Socheat to get into bed with him, and had Socheat's father's boss take pictures of her lying in bed next to Defendant Yam.  Defendant Yam threatened Socheat that if she did not stop being shy or embarrassed, and act like his wife for the photos, she could not come work in the United States.

41.    Around this time, Socheat heard a rumor in town that she had slept with Defendant Yam and become pregnant.  Based on this rumor and her ever-present fear that Defendant Sin would turn her attention toward Socheat's sister, Socheat felt compelled to obey Defendants Sin and Yam.

42.    While Socheat was waiting to come to the United States, Defendant Yam informed her that his girlfriend, Defendant Keo, would direct Socheat through the immigration process.  In or around August or September 2011, Defendant Keo traveled to Cambodia to meet Socheat.  Defendant Keo instructed her throughout the visa application process, including on what to say at her interviews with USCIS.  Defendant Keo instructed Socheat to call her with any questions that might arise during the immigration process.

43.    Defendant Yam certified under penalty of perjury on required U.S. immigration form I-864 that he would provide Socheat with financial support equal to at least 125% of the federal poverty line.  Defendant Chan also certified under penalty of perjury on required U.S. immigration form I-864 that she was Socheat's joint sponsor for her immigration application, and would also provide Socheat with financial support equal to at least 125% of the federal poverty line.

44.    On information and belief, Defendant Keo prepared and submitted Socheat's immigration paperwork for USCIS.  On information and belief, Defendant Yam and Defendant Chan's false attestations on the I-864

immigration forms and the forms Defendant Keo prepared and submitted provided USCIS with required information for Socheat's visa application. USCIS issued Socheat a visa in May 2013 to come to the United States.

## C. Defendants transported Socheat to the United States

45.    In or around May or June 2013, Defendant Yam traveled to Cambodia to retrieve Socheat, and bring her to the United States.  Defendant Yam travelled with Socheat and controlled her entry to the United States. Socheat arrived in the United States on June 11, 2013.  Defendant Sin picked Socheat up from the airport, and took Socheat to Defendant Ngo's residence in Palmdale, California.

## D. Defendants Sin, Lim, and Ngo threatened, abused, and used Socheat for forced labor

### a)    Defendants confiscated Socheat's passport, and threatened Socheat to coerce her labor and compliance

46.    On Socheat's first full day in the United States, Defendant Sin began manipulating Socheat with threats and coercion.  At Defendant Ngo's residence, Defendant Sin demanded that Socheat give Defendant Sin her passport.  Socheat did not understand why Defendant Sin needed her passport, but she complied because she was scared.

47.    On information and belief, Defendant Sin ordered Socheat to hold out her hand as if in prayer, and promise that she would not steal from Sin, nor lie to her, nor run away.  Defendant Sin threatened Socheat that if Socheat broke her promises, great harm would come to Socheat.  On information and belief, Defendant Sin knew that Socheat was a devoted Khmer Buddhist, and understood that such a promise had religious significance.

48.    In or around that week, Defendant Yam came to Defendant Ngo's house.  Defendant Sin told Socheat that she had already paid Defendant Yam $20,000 for Socheat's travel to the United States.  Defendant Sin then counted

-12-

out an additional $20,000 in cash and handed it to Defendant Yam in front of Socheat.  Defendant Sin told Socheat that it had cost Defendant Sin $40,000 total to get Socheat into the United States.  Socheat understood from this exchange that she owed Defendant Sin $40,000.

        b)     <u>Defendants forced Socheat to work 17-hour days, seven days a week for no pay; denied her proper meal and rest periods; and failed to provide her with wage statements</u>

49.   For the next five months, from approximately June 2013 through October 2013, Defendant Sin and her children, Defendant Lim and Defendant Ngo, required Socheat to work from morning until night, seven days per week, at their various businesses.  On a typical day, Defendants made Socheat work at two or three separate businesses, for approximately 17 hours total.  Socheat tended the cash registers, stocked products, mopped floors, cleaned countertops, and took the trash out, among other tasks.

50.   In addition to forcing Socheat to work at the Defendants' gas stations, laundromat, and shopping center, Defendants forced Socheat to clean and mop Defendant Ngo's house approximately once per week.  During the summer, Defendants made Socheat pull weeds in Defendant Ngo's backyard and tend Defendant Ngo's garden in the heat.

51.   The minimum wage in California when Socheat began working for Defendants was $8.00 per hour.  From June 2013 through October 2013, Defendants did not pay Socheat at all for her labor.

52.   California law also requires that employees be paid overtime for any hours worked in excess of eight hours per day or forty hours per week. Employers must pay employees one and one-half times their regular rate of pay for all hours worked in excess of eight hours up to and including 12 hours in any workday, and two times their regular rate of pay for all hours worked in excess of 12 hours in any workday.  California law prohibits employers from requiring

-13-

1    employees to work for seven days in one workweek.  California law requires that

2    employees be paid 1.5 times their regular rate of pay for the first eight hours

3    worked on the seventh workday of the workweek, and two times their hourly

4    wage for hours worked in excess of eight on the seventh workday of the

5    workweek.   Although Defendants forced Socheat to work about 17 hours per

6    day, seven days per week, from approximately June through October 2013, they

7    never provided Socheat with overtime pay.

8         53.    In addition to working long hours for no pay, Defendants routinely

9    denied Socheat her proper meal and rest periods.  Under California law, an

10   employer is required to provide an employee with a meal period of at least 30

11   minutes if the employee works for more than five hours per day, and with a

12   second meal period of at least 30 minutes if the employee works for more than

13   ten hours per day.  If the employee works no more than 12 hours, the second

14   meal period may be waived by mutual consent of the employer and employee.

15   An employer may require the employee to remain at the work site during the

16   meal period only with the employee's written consent, and the meal period must

17   be paid.  Under California law, an employer is also required to provide an

18   employee with a rest period at a minimum rate of ten minutes for every four

19   hours worked, and insofar as practicable such rest period must be provided in the

20   middle of each work period.  Rest periods are counted as time worked.

21        54.    Despite this, Defendants repeatedly failed to offer Socheat meal or

22   rest periods of the required length and frequency.  Defendants also forced

23   Socheat to remain on site at all times.  Socheat did not enter into a written

24   agreement to waive her meal and rest period rights.

25        55.    Finally, Defendants never provided Socheat with accurate wage

26   statements, as required by law.  To date, Defendants have failed to pay Socheat

27   all wages due to her for her labor during these five months.

28

-14-

FIRST AMENDED COMPLAINT
Case No. 2:17-cv-04325-BRO-AGR

c) <u>Defendants forced Socheat to sleep in a lawn chair at the gas station and bathe onsite</u>

56.   Almost every night, Defendants forced Socheat to sleep in the stocking room at Defendant Doe Gas Station 2 in a lawn chair without any cushions.  In the noisy and cold gas station stocking room, Socheat slept at most five or six hours per night, and often slept fewer.  Defendant Sin gave Socheat only one thin blanket, which did not adequately protect Socheat against the cold.  Defendant Sin did not allow Socheat to use a pillow or additional blankets.  Defendant Sin told Socheat she did not want it to look like someone was living there if there were an inspection.

57.   Defendants made Socheat bathe in a small room of the gas station using a wall-mounted spigot, which was either too hot or too cold.  On information and belief, Defendants knew the door to that room was broken and Socheat could be exposed to others while bathing.

58.   On information and belief, Defendants directed Family Member 1 to stay with Socheat at Defendant Doe Gas Station 2 each night.  Family Member 1 controlled the entry and exit points of Defendant Doe Gas Station 2.  Family Member 1 carried with her a remote control that could lift the metal grate around Defendant Doe Gas Station 2, as well as the key to the doors.  On information and belief, Defendant Doe Gas Station 2 had an emergency door that allowed a person inside the station to exit, but not to re-enter without a key.

d) <u>Defendants verbally abused Socheat, and physically tortured and battered her</u>

59.   Defendant Sin repeatedly abused and tortured Socheat.  Defendant Sin hit Socheat, pulled her hair, cussed at her, called her words like "stupid," "blind," "slow," and "lazy," and often screamed at Socheat when she asked a question.  One time, in about September 2013, when Socheat was moving stock in the backroom of Defendant Doe Gas Station 3, Defendant Sin approached

Socheat from behind and hit her on the back with her fists like she was swinging a baseball bat at Socheat.  Other times, when Socheat could not find something, Defendant Sin pulled Socheat by the hair and pushed Socheat's face inches from the object to show her where it was, and then asked why Socheat was so stupid. Socheat was terrified of Defendant Sin.  As a result of Defendant Sin's abuse, Socheat felt panicked when she saw Defendant Sin or Defendant Sin called her name.  Whenever Defendant Sin approached Socheat, Socheat was so scared that she had trouble functioning.

60.     Defendant Sin filed her nails to a point and scratched Socheat. Defendant Sin poked Socheat's eyes with her sharpened nails, and poked and pinched Socheat's ears and body regularly from in or around June 2013 through October 2013.  Once, in or around August 2013, when Socheat was stocking products, she put an item in the wrong place by accident.  Defendant Sin dragged Socheat by her hair for about six steps, then shoved Socheat's face against the counter, poked Socheat's head with her nails, and told Socheat where to put the products.

61.     Another time, in or around October 2013, when Socheat was stocking water, Defendant Sin began insulting Socheat, and demanded that she move the water bottles elsewhere.  Defendant Sin picked up a filled water bottle, and hit Socheat repeatedly in the eye.  Socheat's eye swelled, and she had blurry vision for days after the incident.

62.     Defendant Ngo also physically, verbally, and psychologically abused Socheat regularly from in or around June 2013 through in or around October 2013.  Defendant Ngo hit Socheat, screamed at her, and called her names. Defendant Ngo told customers that Socheat was "5150," suggesting that Socheat was mentally unstable, and called Socheat a "slut" or "prostitute."  Defendant Ngo slandered Socheat's parents, which was very painful for Socheat.

Sometimes, if Socheat made a mistake in her work, Defendant Ngo hit Socheat on the head with her knuckles.

63.   In or around October 2013, Defendant Yam secretly visited Defendant Doe Gas Station 2, where Socheat was working, and asked Socheat if she wanted to escape.  Socheat told Defendant Yam that she could not leave because Defendant Sin had taken all of her identity documents.  Socheat also feared escape because she owed Defendant Sin money, and Socheat thought that her family would owe Defendant Sin the money if Socheat left.

e)   Due to the abuse and threats of Defendants, Socheat's fear increased and her mental and physical state suffered

64.   During this time, Socheat's physical and mental state deteriorated. Many nights when she closed her eyes to sleep, she cried in fear of what Defendant Sin might do to her.  Socheat felt constant anxiety about what would happen to her if she made a mistake while performing her assigned duties at the gas stations and other shops.

65.   Socheat had trouble eating.  The more she thought about Defendant Sin, the more fearful and anxious she became.  Whenever Socheat saw the Defendant Doe Gas Station 3 sign, she felt depressed and scared.  She experienced episodes of paralyzing fear and panic.  As her health worsened, Socheat considered running away.

66.   Shortly after Defendant Yam visited her in or around October 2013, Socheat was working the Defendant Doe Gas Station 3 cash register while Defendant Sin was cutting ginger root nearby.  Socheat put a pack of cigarettes in the wrong place.  Defendant Sin called Socheat "stupid," and jabbed Socheat's face with her knife.  Socheat jumped out of the way, but Defendant Sin managed to cut Socheat's face, and Socheat started bleeding.  Socheat became afraid that Defendant Sin might actually kill her, and decided that she had to run away.

-17-

**E. Defendants Yam, Keo, and Khiev forced Socheat to work for them in a purported "escape" from Defendants Sin, Lim, and Ngo**

67.     In late October 2013, a customer left a phone at the gas station by mistake, and Socheat used it to call Defendant Yam, who arranged to pick her up from Defendant Doe Gas Station 2.  Defendant Yam picked Socheat up in the middle of the night, so that they would not be seen.  Socheat was brought to Defendant Khiev's house in Long Beach, where Socheat lived with Defendants Keo and Khiev for approximately six months.  Socheat hoped that she would have more freedom, and that Defendants Keo, Khiev, and Yam would help her get a job so she could pay off her debt to Defendant Sin.  However, while she was there, Defendants Keo, Khiev, and Yam did not permit Socheat to go outside or even stand near any windows.  Instead, Defendants Keo, Khiev, and Yam required her to stay in the house.  Socheat performed daily domestic labor for Defendants Keo and Khiev, including cooking, sweeping, stocking the refrigerator, cleaning the two houses on the property, and cleaning the yard.  In addition, Socheat gave Defendant Keo a massage for two to three hours per day, seven days per week.  Socheat understood that Defendant Keo expected her to perform this service.

68.     From in or around November 2013 through April 2014, Socheat performed domestic services for Defendants Keo and Khiev for approximately six to twelve hours per day, seven days per week.  Socheat was paid about $500 for approximately five months of domestic labor.

69.     At one point, Defendant Keo informed Defendant Yam that Socheat had stood near the window of the house.  Defendant Yam accused Socheat of trying to show off her body.  Socheat was ashamed and upset by this accusation, and felt like a prisoner in Defendant Khiev's house.

70.     One night in early 2014, Defendant Yam allowed Socheat to leave the house for a rare public outing.  While they were out, Defendant Yam bought

FIRST AMENDED COMPLAINT
Case No. 2:17-cv-04325-BRO-AGR

Socheat food and reminded her that he was treating her better than Defendant Sin ever had.  He told her not to run away from him.

71.   Socheat's other neighbor from Cambodia, V.H., was also staying with Defendants Keo, Khiev, and Yam at this time.  On information and belief, V.H. had come to the United States to work for Defendant Sin and her children, and later ran away.

72.   On or about April 2014, Defendant Yam drove Socheat back to Defendant Doe Gas Station 3 at midnight.  He made Socheat swear not to tell Defendant Sin where she had been, and that if she did, great harm would come to her.

## F.  Continued Debt Bondage, Abuse, and Threats by Defendants Sin, Lim, and Ngo

### a)   Defendants again threatened Socheat, and forced her into a written debt bondage contract

73.   When Socheat saw Defendant Sin again, Defendant Sin made Socheat swear a second time that she would not leave or betray Defendant Sin. Defendant Sin told Socheat that a recent, near-fatal motorbike accident involving Socheat's mother had occurred because Socheat had run away and cheated Defendant Sin.  Defendant Sin made Socheat participate in a ceremony and light incense in the Buddhist tradition.  On information and belief, Defendant Sin knew that according to Socheat's beliefs, the incense further strengthened the promise Socheat made to stay with Defendant Sin.  Defendant Sin told Socheat that if she broke her promise or disobeyed Defendants, Socheat and her family would be cursed with poverty and misery, and great harm would come to Socheat.

74.   A month or two later, Defendant Sin presented Socheat with a Khmer-language contract which stated that Socheat owed $40,000 to Defendant Ngo.  Defendant Sin then made Socheat sign the contract with a fingerprint.

-19-

b)   <u>Defendants continued to force Socheat to work, and physically and verbally abused her</u>

75.   From about April 2014 through about September 2015, on a typical day Defendants required Socheat to work about 14-15 hours per day, seven days per week, at their various businesses and Defendant Ngo's home.  Starting on July 1, 2014, the minimum wage in California increased from $8.00 to $9.00 per hour.  During this 17-month period, Defendants only paid Socheat approximately $1,200, and never paid her overtime or minimum wage.

76.   As before, Defendants denied Socheat her meal and rest periods, required that she remain on site at all times, and never provided her with accurate wage statements, in violation of federal and state labor laws.

77.   For at least one month, Socheat was locked inside the gas station overnight, without control over the exit points of the station.  Those nights, Socheat slept on a lawn chair.

78.   As before, Defendant Sin and Defendant Ngo continued to verbally and physically abuse Socheat.

**G. <u>Due to grievous harms, Socheat attempted to end her life, and Defendants denied her medical services and left her to die</u>**

79.   As Defendants continued to abuse Socheat and force her to work without pay in inhumane conditions, Socheat felt increasingly desperate. Socheat worried about how she would pay off her debt to Defendants, and concluded that the only way to escape the situation without causing problems for her family and her traffickers was to kill herself.  In August 2014, Socheat secretly ingested a bottle of Motrin and approximately ten tablets of Advil while at Defendant Ngo's house, in an attempt to end her life.  Defendants Sin, Ngo, and Lim forced Socheat to go to the gas station, even though Socheat had begun to feel sick.  Once Socheat arrived at work, she could not walk straight or

-20-

communicate clearly.  She vomited four or five times throughout the day, but Defendants kept her at work.

80.    That night, Defendant Sin accused Socheat of trying to kill herself. Defendant Sin called Defendant Lim to inform him that Socheat had tried to kill herself.  They agreed that they would not take Socheat to the hospital.  Defendant Lim called Socheat a "stupid-ass bitch."

81.    After her suicide attempt, Socheat felt sick all the time.  She had trouble sleeping, and feared that if she fell asleep she would never wake up. Whenever she did fall asleep, she had nightmares that she was falling off a mountain or from a high tower.  She felt crazy all the time, like she might start screaming, and like she did not have control of her body.  Sometimes Socheat felt like she was trapped inside a tiny dark box and could not escape, even though she was screaming for help.

82.    After surviving the suicide attempt, Socheat decided that she wanted to live so that she could see her mother again.  She resolved to escape from her traffickers.

## H. Socheat escaped from Defendants with the assistance of local police

83.    In or around August 2015, Socheat decided to try to contact a police officer that she had seen in the store a few times, who seemed kind.  Socheat barely spoke English, and was afraid to speak to him in person, in case Defendant Sin or anyone else overheard.  She decided to write a note, but she did not know the words in English.  Over the course of approximately two weeks, Socheat asked customers and coworkers how to say and spell the words she needed.  She never asked any person for more than one or two words, so that no one would become suspicious or give her away.

84.    Eventually, Socheat pieced together a short note asking for the officer's help, and in August 2015 she had a customer pass the note to the officer

-21-

when he visited the store.  Later, the officer left Socheat a note with his contact information.  After that, Socheat discreetly secured a phone and contacted the officer to tell him about her situation.  Socheat was rescued by law enforcement on September 28, 2015, and law enforcement later raided Defendants' properties.

## I.  Socheat continues to suffer from the effects of her trafficking

85.    Since being rescued, Socheat lives in a shelter for trafficking survivors.  Socheat has been diagnosed with post-traumatic stress disorder ("PTSD"), and suffers from regular nightmares and troubled sleep.

## J.  Defendants fraudulently transferred ownership of their real properties into a Living Trust, soon before and sometime after law enforcement rescued Socheat

86.    On information and belief, Defendants Ngo, Lim, and Ngo Asset Management transferred their rights, title, and interest in almost all of their real properties to The Tiffany Ngo Living Trust UTD, for which Defendant Ngo is trustee, two weeks before law enforcement rescued Socheat on September 28, 2015.

87.    Defendant Ngo is the sole owner and officer of Defendant Ngo Asset Management.  On September 10, 2015, Defendant Ngo Asset Management transferred its rights, title, and interest in the real property commonly known as 44412 Division St., Lancaster, California—the location of Defendant Doe Gas Station 3—to The Tiffany Ngo Living Trust UTD by quitclaim deed, without documentary transfer tax.  Socheat performed clerking and cleaning duties at this property for Defendants.

88.    On September 10, 2015, Defendant Ngo Asset Management transferred its rights, title, and interest in the real property commonly known as 101-137 East Avenue J, Lancaster, California—the location of the shopping center—to The Tiffany Ngo Living Trust UTD by quitclaim deed, Document

No. 20151149343, without documentary transfer tax.  Socheat performed cleaning duties at one of the vacant retail spaces at the shopping center.

89.   On September 10, 2015, Defendant Ngo as "an unmarried woman" transferred all her rights, title, and interest in her solely owned residential real property in Palmdale, California to The Tiffany Ngo Living Trust UTD by quitclaim deed, Document No. 20151149341, without documentary transfer tax. Defendants Sin and Ngo resided at this property during Socheat's captivity and, on information and belief, continue to reside there.  Socheat performed cleaning and landscaping duties at this residence during her captivity with Defendants Sin, Ngo, and Lim, and slept at this residence between part of April 2014 and September 2015.

90.   On September 10, 2015, Defendant Ngo as a "single woman" transferred all her rights, title, and interest in her solely-owned real property commonly known as 500 East Avenue K, Lancaster, California 93535, where Defendants Doe Gas Station 2 and Doe Laundromat 4 are located, to The Tiffany Ngo Living Trust UTD by quitclaim deed, Document No. 20151149342, without documentary transfer tax.  Socheat performed cleaning and clerking duties for Defendants Doe Gas Station 2 and Doe Laundromat 4 at this property.

91.   On September 10, 2015, Defendants Ngo and Lim as joint tenants transferred their rights, title, and interest in the real property commonly known as VAC/PALMDALE BLVD/VIC 60th St., Palmdale, California, to The Tiffany Ngo Living Trust UTD by quitclaim deed, Document No. 20151149340, without documentary transfer tax.

92.   On September 10, 2015, Defendant Ngo as a "single woman" transferred all her rights, title, and interest in the real property commonly known as VAC/AVE K/VIC 98 STW, Del Sur, California, to the Ngo Living Trust by quitclaim deed, Document No. 20151149344, without documentary transfer tax.

-23-

93.   On February 15, 2017, Defendant Lim transferred his right, title, and interest in real property at VAC/AVE G/VIC 18, Lancaster, California, to his spouse, Carmen Chau Yi Lim, by quitclaim deed, Document No. 20170234289, as a bona fide gift, without documentary transfer tax.  This transfer occurred after Socheat's rescue by police in September 2015 and after certain of Defendants' properties were raided by local law enforcement.

94.   On information and belief, Defendants Ngo, Lim, and Ngo Asset Management have transferred all their rights and interest in substantially all their real properties in California to The Tiffany Ngo Living Trust UTD for zero or nominal value, and thus without payment of reasonably equivalent value.

95.   Defendants Ngo, Lim, and Ngo Asset Management continued to reside at or conduct business at these transferred properties.

96.   Defendants' transfers of these real properties to The Tiffany Ngo Living Trust UTD, for which Defendant Ngo is trustee, were in effect transfers to themselves.

## FIRST CLAIM FOR RELIEF

### The TVPA

### For Sale into Involuntary Servitude Under 18 U.S.C. §§ 1584, 1595(a)

### (Against All Defendants)

97.   Socheat incorporates the foregoing paragraphs as if fully set forth herein.

98.   18 U.S.C. § 1595 allows victims of involuntary servitude under 18 U.S.C. § 1584 to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

99.   A victim may bring a § 1584 claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held.

-24-

Section 1584 makes it unlawful to hold a person in a condition of involuntary servitude, that is, "a condition of servitude induced by means of . . . any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint." 22 U.S.C. §7102(6)(A).

100. Defendants repeatedly subjected Socheat to verbal threats of serious harm, actual physical harm, and psychological and cultural coercion as part of a scheme to force Socheat to perform work against her will and without pay. Defendants shamed and manipulated Socheat into culturally and personally compromising situations; threatened Socheat's sister; promised that great harm would come to Socheat and her family if she attempted to escape from Defendants; confiscated Socheat's identity documents so that Socheat could not escape Defendants; physically confined Socheat to Defendants' houses and businesses; physically harmed Socheat, including cutting her face with a knife; and verbally abused Socheat. Defendants required Socheat to work excessive hours, seven days per week.

101. All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

102. As a result, Socheat sustained harm, including mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

103. Defendants are liable to Socheat for compensatory and punitive damages in amounts to be proven at trial, and other relief that the Court may deem proper.

///

///

///

///

-25-

**SECOND CLAIM FOR RELIEF**

**The TVPA**

**For Forced Labor Under 18 U.S.C. §§ 1589, 1595(a)**

**(Against All Defendants)**

104.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

105.  18 U.S.C. § 1595 allows victims of forced labor under 18 U.S.C. § 1589 to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

106.  A victim may bring a § 1589 claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly provides or obtains the labor or services of another person, by means of actual or threatened serious harm, including financial harm, to the victim or a third party, or by means of actual or threatened abuse of the legal process.  Serious harm encompasses not only physical violence, but also more subtle psychological methods of coercion.

107.  Defendants repeatedly subjected Socheat to verbal threats of serious harm, actual physical harm, and psychological and cultural coercion as part of a scheme to benefit from Socheat's labor without compensating her.  Defendants shamed and manipulated Socheat into culturally and personally compromising situations; threatened Socheat's sister; promised that great harm would come to Socheat if she attempted to escape from Defendants; confiscated Socheat's identity documents so that Socheat could not escape Defendants; physically confined Socheat to Defendants' houses and businesses; physically harmed Socheat, including cutting her face with a knife; and verbally abused Socheat.

108.  All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

-26-

109.  As a result, Socheat sustained harm, including mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

110.  Defendants are liable to Socheat for compensatory and punitive damages in amounts to be proven at trial, and other relief that the Court may deem proper.

<u>**THIRD CLAIM FOR RELIEF**</u>

**The TVPA**

**For Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor 18 U.S.C. §§ 1590, 1595(a)**

**(Against All Defendants)**

111.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

112.  18 U.S.C. § 1595 allows victims of enticement into slavery, involuntary servitude, or forced labor under 18 U.S.C. § 1590 to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

113.  A victim may bring a § 1590 claim under 18 U.S.C. § 1595 against any person who knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of 18 U.S.C. §§ 1984 and 1989, among others.

114.  In violation of 18 U.S.C. § 1590, Defendants knowingly recruited and transported Socheat to the United States, where they held her in a condition of involuntary servitude and forced labor in their homes and businesses, which are or have been owned by Defendants Lim; Ngo; Ngo Asset Management, LLC; and Ngo Trustee.  Defendants recruited, harbored, transported, provided or obtained, through actual and threatened verbal and physical abuse, psychological

-27-

1   coercion, threats to her and her family, and physical confinement in their houses

2   and businesses, as set forth in the respective claims above.

3        115.  As a result, Socheat sustained harm, including mental suffering,

4   humiliation, emotional distress, and economic loss, entitling her to damages in

5   amounts to be proven at trial and reasonable attorney's fees.

6        116.  Defendants are liable to Socheat for compensatory and punitive

7   damages in amounts to be proven at trial, and other relief that the Court may

8   deem proper.

9                       <u>**FOURTH CLAIM FOR RELIEF**</u>

10                                **The TVPA**

11   **For Unlawful Conduct With Respect to Documents in Violation of 18 U.S.C.**

12                             **§§ 1592, 1595(a)**

13                          **(Against All Defendants)**

14        117.  Socheat incorporates the foregoing paragraphs as if fully set forth

15   herein.

16        118.  18 U.S.C. §§ 1595 allows victims under 18 U.S.C. § 1592 to recover

17   damages and reasonable attorneys' fees, both from the perpetrators and others

18   who knowingly benefitted from the violations.

19        119.  A victim may bring a § 1592 claim under 18 U.S.C. §§ 1595 against

20   any person, including any business entity, who knowingly destroys, conceals,

21   removes, confiscates, or possesses any actual or purported passport or other

22   immigration document, or any other actual or purported government

23   identification document, of another person in the course of a violation of §§

24   1584, 1589, or 1590; or with intent to violate those sections; or to prevent or

25   restrict or to attempt to prevent or restrict, without lawful authority, the person's

26   liberty to move or travel, in order to maintain the labor or services of that person,

27   when the person is or has been a victim of a severe form of trafficking in

28   persons.

120.  In violation of § 1592, Defendants confiscated or conspired to confiscate Socheat's passport and identity documents upon her arrival in the United States.  On information and belief, Defendants removed these documents from Socheat with the intent to prevent or restrict, without lawful authority, Socheat's liberty to move or travel, in order to maintain her labor.  On information and belief, Defendants possessed these documents until they were retrieved by local law enforcement during a raid.

121.  All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

122.  As a result, Socheat sustained harm, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

123.  Defendants are liable to Socheat for compensatory and punitive damages in amounts to be proven at trial, and other relief that the Court may deem proper.

## FIFTH CLAIM FOR RELIEF

### The TVPA

### For Benefitting Financially from Trafficking in Persons Under 18 U.S.C. §§ 1593A, 1595(a)

### (Against All Defendants)

124.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

125.  18 U.S.C. § 1595 allows victims under 18 U.S.C. § 1593A to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

126.  A victim may bring a § 1593A claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has

-29-

engaged in any act in violation of section 1592 or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation.

127.  As alleged herein, Defendants violated § 1593A by knowingly benefitting from participation in a venture, knowing or in reckless disregard of the fact that the venture engaged in such a violation.

128.  All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

129.  As a result, Socheat sustained harm, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

130.  Defendants are liable to Socheat for restitution and compensatory and punitive damages in amounts to be proven at trial, and other relief that the Court may deem proper.

## SIXTH CLAIM FOR RELIEF

### The TVPA

### For Conspiracy to Violate the Chapter in Violation of §§ 1594, 1595(a)

### (Against All Defendants)

131.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

132.  18 U.S.C. § 1595 allows victims under 18 U.S.C. § 1594 to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

133.  18 U.S.C. §§ 1594(b) makes unlawful any conspiracy to violate, among other provisions, 18 U.S.C. §§ 1589, 1590, and 1592.

134.  As alleged herein, all Defendants conspired to violate 18 U.S.C. §§ 1589, 1590, and 1592 by agreeing or conspiring to obtain or provide Socheat's forced labor in violation of 18 U.S.C. § 1589, to traffic Socheat in violation of 18 U.S.C. § 1590, and to unlawfully possess Socheat's identity and immigration documents in violation of 18 U.S.C. § 1592.  On information and belief,

Defendants came to an understanding to commit these violations through the course of their dealings with each other.

135.  All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

136.  As a result, Socheat sustained harm, including mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

137.  Defendants are liable to Socheat for compensatory and punitive damages in amounts to be proven at trial, and other relief that the Court may deem proper.

## SEVENTH CLAIM FOR RELIEF

### For Human Trafficking Under California Civil Code § 52.5
### (Against All Defendants)

138.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

139.  California Civil Code § 52.5(a) allows a victim of human trafficking, as defined in California Penal Code § 236.1, to recover, in a civil action, actual damages, compensatory damages, punitive damages, and any other appropriate relief, as well as attorneys' fees and costs of suit.  California Civil Code § 52.5(b) allows a victim of human trafficking to recover treble damages.

140.  A victim may bring a claim under California Civil Code § 52.5 against any person who violates or deprives the victim of her personal liberty with the intent to obtain forced labor or services, or who restricts the victim's liberty through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury.  Forced labor or services means labor or services that are performed or provided by a person, and are obtained or maintained through force, fraud, or coercion, or equivalent conduct that would reasonably overbear the will of the person.

-31-

141.  Defendants, acting in their personal capacities and as agents of each other, or by conspiring, used threats, intimidation, coercion, violence, duress, menace, and the threat of unlawful injury to overbear Socheat's will, deprive Socheat of her liberty, and force her to work extreme hours in poor conditions and without adequate pay.

142.  Through such actions, Defendants acted with malice, oppression, fraud, and duress, to traffic Socheat.  On information and belief, Defendants conspired with each other to violate California Civil Code § 52.5.

143.  As a result, Socheat sustained harm, including mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorneys' fees.

144.  Defendants are liable to Socheat for actual, compensatory, punitive, and treble damages in amounts to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

**For Failure to Pay Minimum Wage Under California Labor Code Sections 1194, 1194.2, and 1197 and IWC Wage Order Nos. 6, 7, and 15**

**(Against All Defendants Except Defendants Chan and Doe 1)**

145.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

146.  California Labor Code § 1197 establishes the right of employees to be paid minimum wages for their work, in amounts set by state law.  Prior to 2013, California Labor Code § 1182.12 provided that the minimum wage in California was $8.00 per hour.  In 2013, § 1182.12 was amended to provide that, effective July 1, 2014, the minimum wage was to be raised to $9.00 per hour.

147.  California Labor Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage may recover the unpaid balance, together with attorneys' fees and costs of suit as well, as

-32-

liquidated damages in an amount equal to the minimum wages unpaid and interest on those amounts.

148. From June 2013 through September 2015, Defendants paid, or conspired to pay, Socheat significantly less than the minimum wage for the hours she worked.

149. Defendants were aware of, or should have been aware of, the requirement to pay Socheat the statutorily defined minimum wage for her labor and their failure to pay the minimum wage was willful.

150. As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages, entitling her to damages in an amount to be proven at trial and reasonable attorneys' fees, and all appropriate penalties provided by the Labor Code.

## **<u>NINTH CLAIM FOR RELIEF</u>**

**For Failure to Pay Overtime Wages Under California Labor Code Sections 510(a), 1194, and 1198 and IWC Wage Order Nos. 6, 7, and 15**

**(Against All Defendants Except Defendants Chan and Defendant Doe 1)**

151. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

152. California Labor Code § 510(a) entitles employees generally, IWC Wage Order No. 6 entitles laundromat employees, and IWC Wage Order No. 7 entitles gas station employees, to one and one-half times their regular wage rate for hours worked in excess of eight hours per day (or 40 hours per week), and twice their regular rate for hours worked in excess of 12 hours per day, or in excess of eight hours per day on the seventh day of a workweek.

153. As authorized by California Labor Code § 1198, IWC Wage Order No. 15 provides for overtime payments to domestic service "live-in" employees in California who are not "personal attendants." Employees, like Socheat, who spend more than 20% of their time engaged in activities other than taking care of

-33-

a child or person requiring supervision, are not attendants.  IWC Wage Order No. 15 provides that such workers shall not be employed more than nine hours in any workday for the first five workdays in a work week unless they receive additional compensation beyond their regular wages in amounts specified by law.  Such an employee is entitled to overtime pay at a rate of one and one-half times her regular rate for all hours worked in excess of nine during the first five workdays.  For the first nine hours worked on the sixth and seventh days of the work week, the employee is entitled to be paid one and one-half times her regular rate.  For the remaining hours worked on the sixth and seventh days, the employee is entitled to be paid at double her regular rate.

154.  Labor Code § 1194(a) provides that an employee who has not been paid the legal overtime pay may recover from her employer the unpaid balance together with attorneys' fees, costs of suit, and interest of those amounts.

155.  From June 2013 through September 2015, Defendants failed to pay, or conspired not to pay, Socheat the significant overtime wages she was entitled to under Labor Code § 510(a) and IWC Wage Orders Nos. 6, 7, and 15.

156.  On information and belief, Defendants were aware of, or should have been aware of, the requirement to pay Socheat the statutorily defined overtime pay for her labor.  Defendants' failure to pay the overtime wage was willful.

157.  As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages, entitling her to damages in an amount to be proven at trial and reasonable attorneys' fees, and all appropriate penalties provided by the Labor Code.

///

///

///

///

///

-34-

**TENTH CLAIM FOR RELIEF**

**For Failure to Pay Minimum Wage Under the FLSA, 29 U.S.C. § 206(a)(1)**

**and § 206(f)**

**(Against All Defendants Except Defendants Chan and Doe 1)**

158.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

159.  29 U.S.C. §§ 206(a) and 206(f), sections of the FLSA, establish a Federal minimum wage of $7.25 per hour for all relevant periods.  29 U.S.C. § 218 provides that an employer is required to pay the greater of the applicable state or federal minimum wage.  Prior to 2013, California Labor Code § 1182.12 provided that the minimum wage in California was $8.00 per hour.  In 2013, § 1182.12 was amended to provide that, effective July 1, 2014, the minimum wage was to be raised to $9.00 per hour.  Thus, Defendants were at all times required to pay Socheat the applicable California minimum wage.

160.  29 U.S.C. § 216(b) provides that an employer who fails to pay employees the minimum wages or overtime required under the FLSA is liable to such employees for their unpaid minimum wage or overtime, plus an additional equal amount in liquidated damages.

161.  Defendants employed Socheat within the meaning of FLSA.

162.  From June 2013 through September 2015, Defendants paid, or conspired to pay, Socheat significantly less than the greater of the state or federal minimum wage for the hours that she worked.

163.  On information and belief, Defendants were aware of, or should have been aware of, the requirement to pay Socheat the statutorily defined minimum wage for her labor.  Defendants' failure to pay the minimum wage was willful.

164.  As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages, entitling her to recover her unpaid wages, an additional equal amount in liquidated damages in an amount to be

-35-

proven at trial, and costs and reasonable attorneys' fees, and such further relief as the court deems proper.

## ELEVENTH CLAIM FOR RELIEF

**For Failure to Pay Overtime Under the FLSA, 29 U.S.C. § 207(a)**

**(Against All Defendants Except Defendants Chan and Defendant Doe 1)**

165. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

166. 29 U.S.C. § 207(a) requires an employer to pay workers at a rate not less than one and one-half times the higher of their regular rate (which must be at least the statutory minimum wage) for all hours worked in excess of forty hours per week.

167. 29 U.S.C. § 216(b) provides that an employer who fails to pay employees the minimum wages or overtime required under the FLSA is liable to such employees for their unpaid minimum wage or overtime, plus an additional equal amount in liquidated damages.

168. From June 2013 through September 2015, Defendants failed to pay, or conspired not to pay, Socheat the significant overtime wages she was entitled to under 29 U.S.C. § 207(a).

169. On information and belief, Defendants were aware of, or should have been aware of, the requirement to pay Socheat the statutorily required overtime pay for her labor. Defendants' failure to pay the minimum wage was willful.

170. As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages, entitling her to recover her unpaid overtime and an additional equal amount in liquidated damages, in an amount to be proven at trial, as well as costs and reasonable attorneys' fees, and such further relief as the court deems proper.

///

///

**TWELFTH CLAIM FOR RELIEF**

**For Failure to Provide Meal and Rest Periods Under**

**California Labor Code § 226.7 and IWC Wage Order Nos. 6, 7, and 15**

**(Against All Defendants Except Defendants Chan and Doe 1)**

171.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

172.  California Labor Code § 226.7 requires employers to permit their employees to take specified, paid rest breaks and unpaid meal periods.  § 226.7 imposes statutory damages on employers who violate these provisions.  Courts characterize § 226.7 claims as a kind of wage claim.

173.  From June 2013 through September 2015, Defendants routinely failed to provide, or conspired not to provide, Socheat with all legally required meal and rest periods, all in violation of Labor Code § 226.7.

174.  Due to Defendants' unlawful failure to provide Socheat with the meal and rest periods to which she was entitled by law, Defendants are liable to Socheat for statutory damages as provided by the Labor Code.

**THIRTEENTH CLAIM FOR RELIEF**

**For Failure to Provide Accurate, Itemized Wage Stubs Under California**

**Labor Code § 226 and IWC Wage Order Nos. 6, 7, and 15**

**(Against All Defendants Except Defendants Chan and Doe 1)**

175.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

176.  Under California Labor Code § 226, for each pay period, employers must furnish each employee with an accurate itemized statement reflecting employment information including gross wages earned, total hours worked, and itemized deductions.  Employers must record wage deductions in ink and keep these records on file for at least three years.

177.  From June 2013 through September 2015, Defendants knowingly and intentionally failed to provide, or conspired not to provide, Socheat with accurate itemized statements in the form and manner specified by Labor Code § 226.

178.  As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages.  Under Labor Code § 226(e), Socheat is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000, as well as an award of costs and reasonable attorneys' fees.

## FOURTEENTH CLAIM FOR RELIEF

**For Willful Failure to Pay Wages to Discharged or Quitting Employee**
**Under California Labor Code § 203**

**(Against All Defendants Except Defendants Chan and Doe 1)**

179.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

180.  California Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the date that wages are due until the wages are paid, for up to thirty days.

181.  At all relevant times, Defendants refused and failed to pay, or conspired not to pay, Socheat minimum wage, overtime compensation, and premiums for missed meal and rest breaks required by the California Labor Code and the applicable Wage Orders.

182.  Defendants did not pay, or conspired not to pay, Socheat all wages and premiums owed to her by the time she escaped captivity, thereby entitling Socheat to recover waiting time penalties equal to thirty days' pay pursuant to Labor Code § 203.

-38-

**FIFTEENTH CLAIM FOR RELIEF**

**For Unfair Competition Under California Business & Professions Code §
17203**

**(Against All Defendants Except Defendants Chan and Doe 1)**

183. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

184. The California Unfair Competition Law ("UCL"), in Cal. Bus. & Prof. Code § 17203, permits a court to provide injunctive relief to restore a plaintiff any interest in money or property which may have been acquired by means of unfair competition. Cal. Bus. & Prof. Code § 17200 defines "unfair competition" to include any unlawful, unfair, or fraudulent business act or practice. Pursuant to Cal. Bus. & Prof. Code § 17204, an individual has standing to bring a claim under the UCL if he or she has suffered injury in fact, and has lost money or property as a result of the unfair competition.

185. Defendants engaged in, or conspired to engage in, unlawful business acts or practices, including those set forth in the preceding paragraphs of the Complaint. Defendants, in operating their business, engaged in systematic violations of state and federal minimum wage and overtime laws and state and federal forced labor and human trafficking laws, each of which caused injury and the loss of money or property to Socheat.

186. Defendants' unfair business practices are detailed above.

187. Socheat seeks full restitution from Defendants, and other appropriate injunctive relief, as necessary and according to proof, to restore any and all monies withheld, acquired, and/or converted by Defendants by means of the unfair practices complained of herein.

///

///

///

-39-

## SIXTEENTH CLAIM FOR RELIEF

### For Intentional Infliction of Emotional Distress

### (Against All Defendants Except Defendants Chan and Doe 1)

188.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

189.  Defendants engaged in or conspired to engage in outrageous conduct towards Socheat, with the intention of causing, or with reckless disregard for the probability of causing, Socheat to suffer severe emotional distress.  To the extent that such outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified the conduct with a wanton and reckless disregard of the deleterious consequences to Socheat.  This outrageous conduct far exceeded the risks inherent in a normal employment relationship, and included the use of threats, intimidation, and coercion to overbear Socheat's will, to make her travel from her home overseas, to deprive her of personal liberty, and to force her to work for below minimum wage.  For example, Socheat was forced to sleep in Defendant Doe Gas Station 2 on a lawn chair without a blanket, to bathe in Defendant Doe Gas Station 2 and risk exposure to coworkers, and was subjected to constant verbal and physical abuse. Defendants' conduct violates the fundamental public policy of this state, including as set forth in California Civil Code § 52.5.

190.  As a direct and proximate result of Defendants' actions, Socheat has sustained harm, including lost wages, mental suffering, humiliation and emotional distress, entitling her to damages in an amount to be proven at trial.

191.  Defendants committed these acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Socheat, from an improper and evil motive amounting to malice, and in conscious disregard of Socheat's rights.  Socheat is thus entitled to recover punitive damages from Defendants in an amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF

### For False Imprisonment

### (Against All Defendants Except Defendants Chan and Doe 1)

192.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

193.  Defendants intentionally restricted or conspired to restrict Socheat's freedom, movement, or physical liberty, confining her to their businesses and homes, without legal right and without her consent, through the use of force, words, and acts.  Socheat was unlawfully detained against her will by Defendants from June 2013 through September 2015.  Socheat was not free to leave Defendants' control.

194.  Specifically, Defendants seized Socheat's passport and other identification documents; monitored all of Socheat's movements; prevented Socheat from leaving their properties without supervision; restricted and controlled Socheat's communications with her family; threatened Socheat and her family's safety and security; and physically and verbally tortured Socheat. Because of Defendants' actions, Socheat was afraid to defy Defendants and reasonably believed that she had to submit and remain in their control.

195.  Defendants committed these acts maliciously, with the wrongful intention of causing harm to Socheat, and in conscious disregard of her rights.

196.  As a direct and proximate result of Defendants' conduct, Socheat suffered harm, including emotional and psychological distress, pain and humiliation, economic injury from being deprived of the ability to go about her personal affairs, and other injuries.

197.  Socheat is entitled to recover damages, including punitive damages, in an amount to be proven at trial.

///

///

## EIGHTEENTH CLAIM FOR RELIEF

### Battery

### (Against Defendants Sin and Ngo)

198.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

199.  Defendants committed battery on Plaintiff by intentionally bringing about harmful and/or offensive contact upon Plaintiff.

200.  Defendants' harmful and/or offensive conduct consisted of Defendants Sin and Ngo striking, shoving, hitting, pinching, scratching, cutting, dragging, and slapping Socheat, all of which was done without Socheat's permission or consent.  Defendants' battery as alleged herein constituted an intentional touching of Socheat and was undertaken deliberately, and with actual malice, spite, and ill will.

201.  As a result of Defendants' conduct in perpetrating these battery acts, Socheat suffered damages, including emotional and psychological distress, pain and suffering, humiliation, mental distress, and other injuries.

202.  Socheat is entitled to recover damages, including punitive damages, in an amount to be proven at trial.

## NINETEENTH CLAIM FOR RELIEF

### For Assault

### (Against Defendants Sin and Ngo)

203.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

204.  Defendants intended to and did cause Socheat to apprehend immediate, unlawful, and harmful contact, without provocation and without the consent of Socheat, when Defendants repeatedly caused the herein described injuries and damages.  Defendants' unlawful actions, and affirmative acts and/or omissions, were carried out knowingly, willfully, intentionally and with the

-42-

1    specific malicious intent to cause injury and harm to Socheat, and ultimately

2    caused actual physical injuries and harm to Socheat.

3        205.  Socheat is entitled to recover general, punitive, and exemplary

4    damages in an amount to be proven at trial.

5                    **TWENTIETH CLAIM FOR RELIEF**

6                              **Negligence**

7                         **(Against All Defendants)**

8        206.  Socheat incorporates the foregoing paragraphs as if fully set forth

9    herein.

10       207.  Defendants stood in a special relationship to Socheat, based on the

11   facts alleged in this Complaint, including but not limited to the following:

12   Defendants arranged and paid for Socheat to travel to the United States; procured

13   Socheat's presence in the United States on fraudulent pretenses; forced Socheat

14   to reside at their properties; and knew Socheat spoke little English and had no

15   familiarity with the customs, culture, society, or laws of the United States at the

16   time they brought her from Cambodia.  Further, on information and belief, they

17   knew when they brought Socheat to the United States that she had no money for

18   return airfare and no other means of earning money in the United States.

19       208.  The California Labor Code imposes duties on employers, including

20   the duty to allow an employee one day's rest in seven under Labor Code §§ 551

21   and 552, and to "do every other thing reasonably necessary to protect the life,

22   safety, and health of employees" under Labor Code § 6401.

23       209.  By virtue of the relationship described above and Defendants'

24   position as Socheat's employers, Defendants' duty of reasonable care toward

25   Socheat under the circumstances included but was not limited to: (1) a duty to

26   provide reasonable accommodations and a safe working and living environment;

27   (2) a duty of reasonable care under the circumstances to protect Socheat's

28   emotional state; (3) a duty to allow Socheat one day in seven to rest from her

                                    -43-

work; and (4) a duty to ensure Socheat was informed of her rights as an employee under the laws of the United States and the State of California.  On the basis of the facts alleged in this Complaint, Defendants assumed a duty of care to Socheat beyond that owed to the public in general, including but not limited to the duties listed above.

210.  Defendants breached these duties owed Socheat by the acts and omissions alleged in this Complaint, including but not limited to subjecting Socheat to threats and abuse, and the failure to allow Socheat one day's rest in seven.

211.  As a direct and proximate result of these actions, Socheat sustained harm, including serious and severe mental suffering, humiliation, and emotional distress, entitling her to damages in an amount to be proven at trial.

## TWENTY-FIRST CLAIM FOR RELIEF

### Negligence Per Se

### (Against All Defendants)

212.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

213.  The services provided by Socheat to Defendants were performed under conditions that violated the FLSA; the TVPA; California Civil Code § 52.5; provisions of the California Labor Code; and the IWC Wage Orders, as alleged in this Complaint.  Defendants knew, or reasonably should have known, of these and ongoing violations, yet did and have done nothing to alleviate, investigate, remedy, or report the violations to appropriate authorities.  The anti-trafficking provisions of the TVPA and California Civil Code § 52.5; the minimum wage and overtime guarantees of the FLSA, the California Labor Code, and applicable IWC Wage Orders; and other provisions of state and federal law violated by Defendants, were enacted to protect workers from economic and personal injuries caused by forced labor, poverty-level wages,

-44-

unduly long working hours, discrimination, and other substandard working conditions. The acts and omissions of Defendants as alleged in this Complaint were and are a substantial factor contributing to the illegal working conditions under which Socheat labored.

214. Socheat is a member of the class of persons that the statutes and regulations referenced above were designed to protect, and for whose protection they were adopted. Socheat's injuries are of the type that the foregoing statutes and regulations are intended to prevent. Defendants' violations of the foregoing statutes and regulations constituted negligence per se, and created a presumption of negligence.

215. As a direct and proximate result of these actions, Socheat sustained harm, including mental suffering, humiliation, and emotional distress, thereby entitling Socheat to damages in an amount to be proven at trial. This conduct was malicious, fraudulent, and oppressive, and was done with a conscious disregard of Socheat's rights, and of the deleterious consequences of Defendants' actions. Each defendant authorized, condoned, and/or ratified the unlawful conduct of all the other defendants named in this action and of their agents and employees. Consequently, Socheat is entitled to an award of punitive damages.

## TWENTY-SECOND CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

216. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

217. By Defendants' status as Socheat's employers, and by virtue of Defendants' role in bringing Socheat from Cambodia to the United States and with knowledge of Socheat's vulnerability and dependence upon Defendants as alleged herein, Defendants owed Socheat a duty of care and a fiduciary duty to act in her best interest.

-45-

218.  Defendants negligently committed the acts alleged in this Complaint against Socheat, and thereby directly and proximately caused Socheat to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress.

219.  By the actions alleged herein, Defendants negligently breached their duty of care to Socheat, and directly and proximately caused her harm, entitling Socheat to damages in an amount to be proven at trial.

## TWENTY-THIRD CLAIM FOR RELIEF

### Trespass to Chattel

### (Against Defendants Sin and Ngo)

220.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

221.  Defendants intentionally interfered with Socheat's right to possession of her personal property by confiscating Socheat's identity documents upon her arrival in the United States, thereby depriving Socheat of their use from in or around June 2013 through at least September 2015.

222.  As a direct and proximate result of these actions, Socheat sustained harm, including the loss of rightful use of her identity documents, entitling her to damages in an amount to be proven at trial.

## TWENTY-FOURTH CLAIM FOR RELIEF

### Quantum Meruit

### (Against All Defendants Except Defendants Chan and Doe 1)

223.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

224.  Socheat performed all of the above-mentioned labor for Defendants. Defendants have not tendered proper payment to Socheat, and Socheat has not been compensated for the reasonable value of the services she rendered on behalf of Defendants.

225.  Socheat is entitled to compensatory damages from Defendants in an amount to be proven at trial, together with interest, attorneys' fees, and the costs of this action.

## TWENTY-FIFTH CLAIM FOR RELIEF

### Conspiracy

### (Against All Defendants)

226.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

227.  Defendants conspired and agreed with one another to unlawfully commit the tortious acts described herein, and any other acts contained in the following claims:

228.  Human Trafficking Under California Civil Code § 52.5;

229.  Failure to Pay Minimum Wage Under California Labor Code Sections 1194, 1194.2, and 1197, and IWC Wage Orders Nos. 6, 7, and 15;

230.  Failure to Pay Overtime Wages Under California Labor Code Sections 510(a), 1194, and 1198 and IWC Wage Order Nos. 6, 7, and 15;

231.  Failure to Pay Minimum Wage Under the FLSA, 29 U.S.C. § 206(a)(1) and § 206(f);

232.  Failure to Pay Overtime Under the FLSA, 29 U.S.C. § 207(a);

233.  Failure to Provide Meal and Rest Periods Under California Labor Code § 226.7 and IWC Wage Orders Nos. 6, 7, and 15;

234.  Failure to Provide Accurate, Itemized Wage Stubs Under California Labor Code § 226 and IWC Wage Orders Nos. 6, 7, and 15;

235.  Willful Failure to Pay Wages to Discharged or Quitting Employee Under California Labor Code § 203;

236.  Unfair Competition Under California Business & Professions Code § 17203;

237.  Intentional Infliction of Emotional Distress;

238.  False Imprisonment; and

239.  Quantum Meruit.

240.  The acts, or the tortious means used to accomplish the acts not in themselves tortious, were done in furtherance of the conspiracy.  Defendants' conduct was oppressive, malicious, intentional, and done with specific intent to harm Socheat.

The act or acts, or the tortious means used to accomplish an act not in itself tortious, directly and proximately caused harm to Socheat, entitling her to damages in an amount to be proven at trial.

## TWENTY-SIXTH CLAIM FOR RELIEF

### Constructive Voidable Transaction

### Cal. Civil Code § 3439.04(a)(2) and § 3439.05

### (Against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee)

241.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

242.  Socheat brings this cause of action against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee.

243.  A voidable transfer of assets occurs when the debtor makes the transfer without receiving a reasonably equivalent value in exchange for the transfer obligation, and the debtor intends to incur, or believes or reasonably should believe that she will incur, debts beyond her ability to pay as they become due.

244.  Defendants Sin, Ngo, Lim, and Ngo Asset Management had obligations to pay creditors, including but not limited to Socheat.

245.  Defendants incurred debts or obligations to pay Socheat because they trafficked Socheat and subjected her to labor violations, including denying her the minimum wage required by law for work performed at Defendant Doe Gas Station 3 at 44412 Division St. in Lancaster; the shopping center at 101-137 E

Avenue J in Lancaster; Defendants Doe Gas Station 2 and Doe Laundromat 4 at 500 East Avenue K; and at Defendant Ngo's residence in Palmdale.  Defendants knowingly and financially benefitted from the trafficking scheme.  On information and belief, Defendants were aware at all times of the obligations imposed on employers under the California Labor Code and the FLSA, and believed or reasonably should have believed that they would incur debts for Socheat's forced labor.

246.  Defendants' obligations to pay creditors, including Socheat, arose before the transactions in September 2015 and February 2017, in which Defendants Ngo, Lim, and Ngo Asset Management transferred their rights, title, and interest in substantially all their real properties to The Tiffany Ngo Living Trust UTD.  On September 10, 2015, Defendants Ngo, Lim, and Ngo Asset Management transferred to The Tiffany Ngo Living Trust UTD: (1) Defendant Ngo's residence in Palmdale; (2) Defendant Doe Gas Station 3 at 44412 Division St. in Lancaster; (3) the shopping center at 101-137 East Avenue J in Lancaster; (4) Defendants Doe Gas Station 2 and Defendant Doe Laundromat 4 at 500 East Avenue K in Lancaster; (5) vacant lot at VAC/Palmdale Blvd/Vic 60th; and (6) vacant lot at VAC/AVE K/Vic 98 STW.  On February 15, 2017, Defendant Lim transferred his interest in an additional vacant lot to his spouse Carmen Chau Yi Lim.  Defendants transferred these assets for no consideration, and thus received far less than reasonably equivalent value.

247.  On information and belief, at the time of the transfers, Defendants believed or reasonably should have believed that the transfers would make them incur debts that were beyond their ability to repay as they became due.

248.  These transfers put beyond creditors' reach—including Socheat's, reach—assets that may be subject to payment of Defendants' debts.

249.  On information and belief, Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee acted on each other's behalf in order to render

1    Defendants insolvent and unable to satisfy debts incurred to Socheat and other

2    creditors.

3          250.  As a proximate result of the wrongful acts alleged, Socheat has

4    incurred general damages in an amount to be proven at trial.

5                    **TWENTY-SEVENTH CLAIM FOR RELIEF**

6                        **Intentional Voidable Transaction**

7                     **California Civil Code §§ 3439.04(a)(1), (b)**

8          **(Against Defendants Ngo, Lim, Ngo Asset Management, and Ngo**

9                                    **Trustee)**

10         251.  Socheat incorporates the foregoing paragraphs as if fully set forth

11   herein.

12         252.  Socheat brings this cause of action against Defendants Ngo, Lim,

13   Ngo Asset Management, and Ngo Trustee.

14         253.  A voidable transfer of assets occurs when the debtor makes the

15   transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

16   Actual intent may be inferred when certain factors are present, including the

17   following: (1) the transfer was to an insider; (2) the debtor retained possession or

18   control of the property transferred after the transfer; or (3) the value of the

19   consideration received by the debtor was reasonably equivalent to the value of

20   the asset transferred or the amount of the obligation incurred.

21         254.  On September 10, 2015, Defendants Ngo, Lim, and Ngo Asset

22   Management transferred to The Tiffany Ngo Living Trust UTD: (1) Defendant

23   Ngo's residence in Palmdale; (2) Defendant Doe Gas Station 3 at 44412 Division

24   St. in Lancaster; (3) the shopping center at 101-137 East Avenue J in Lancaster;

25   (4) Defendants Doe Gas Station 2 and Doe Laundromat 4 at 500 East Avenue K

26   in Lancaster; (5) vacant lot at VAC/Palmdale Blvd/Vic 60th; and (6) vacant lot at

27   VAC/AVE K/Vic 98 Ste.

28

255.  On September 28, 2015, Socheat was rescued from Defendants by law enforcement.  Sometime after she was rescued, law enforcement raided certain of Defendants' properties.  On February 15, 2017, Defendant Lim transferred his interest in an additional vacant lot to his spouse Carmen Chau Yi Lim.

256.  The transfers of real properties by Defendants Ngo, Lim, and Ngo Asset Management were made with actual intent to hinder, delay, or defraud present and future creditors of Defendants, including but not limited to Socheat. Defendants Ngo, Lim, and Ngo Asset Management transferred the real properties to insiders, The Tiffany Ngo Living Trust UTD, of which Defendant Ngo is trustee, and to Defendant Lim's wife, Carmen Chau Yi Lim.

257.  Defendants Ngo, Lim, and Ngo Asset Management continue to reside in or conduct business at their respective real properties, and thus retained possession or control of the properties after they were transferred.

258.  Defendants Ngo, Lim, and Ngo Asset Management transferred the real properties for no consideration, and so for less than reasonably equivalent value.

259.  These transfers put beyond creditors' reach—including Socheat's, reach—assets that may be subject to payment of Defendants' debts.

260.  As a proximate result of the wrongful acts alleged, Socheat has incurred general damages in an amount to be proven at trial.

## TWENTY-EIGHTH CLAIM FOR RELIEF

### Breach of Contract

**(Against Defendants Sin, Yam, Ngo, Lim, and Ngo Asset Management, Doe Gas Station 2, Doe Gas Station 3, and Doe Laundromat 4)**

261.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

-51-

262.  Socheat brings this cause of action against Defendants Sin, Yam, Ngo, Lim, Ngo Asset Management, Doe Gas Station 2, Doe Gas Station 3, and Doe Laundromat 4.

263.  On information and belief, Defendant Sin, acting on behalf of herself and as agent for Defendants Yam, Ngo, Lim, Ngo Asset Management, Doe Gas Station 2, Doe Gas Station 3, and Doe Laundromat 4 entered into an oral, implied employment contract with Socheat.  Defendants offered her a job in the United States performing cashier and inventory duties for their businesses.

264.  On information and belief, Defendants directed Family Member 1 to encourage Socheat to work for Defendants in the United States.  Socheat understood she was going to work alongside Family Member 1 at Defendants' businesses.

265.  Socheat arrived in the United States to work for Defendants on June 11, 2013.  Defendants intended to employ Socheat as a cashier and clerk at Defendants' gas stations and businesses, and put her to work as soon as she arrived in the United States on June 11, 2013.

266.  Defendants also had Socheat clean Defendant Ngo's residence from time to time.

267.  Defendants did not discuss the express terms of compensation, but Defendant Yam represented to Socheat that she would make more working for Defendants than she was making at her job in Cambodia.

268.  The employment contract between Defendants and Socheat impliedly incorporated all applicable laws, rules, and regulations promulgated by the State of California and the United States, including prohibitions against paying workers less than the minimum wage, denying them meal and rest breaks, and employing workers for seven consecutive workdays.

269.  Defendants breached their contractual obligations to pay Socheat minimum wage; prevent her from working overtime unless they paid overtime

-52-

premiums; provide her with meal and rest breaks; provide her with accurate wage statements; and prevent her from working seven consecutive days, as required under law and implied under the contract.

270. Defendants paid Socheat no wages for the first five months she worked for their various businesses. Only after Socheat returned from Defendant Khiev's house did Defendants pay her approximately $100 per month from in or around May 2014 through September 2015.

271. Defendants, through their actions and statements as set forth above, have breached the terms, covenants, conditions, and agreements of the contract.

272. Defendants have also breached the implied covenant of good faith and fair dealing found in the contract. The breach of the implied covenant of good faith and fair dealing includes the fraud and misrepresentations set forth herein. Because of Defendants' breach, Socheat was denied the benefits of her bargain, and is entitled to the appropriate relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Socheat Chy respectfully seeks the following relief:

1.      Unpaid minimum and overtime wages, penalties and interest; liquidated damages; double damages; waiting time penalties; and wages in compensation for missed rest periods, under the applicable sections of the California Labor Code and of the FLSA, according to proof at trial;

2.      For general, compensatory, and special damages according to proof at trial;

3.      Exemplary and punitive damages according to proof at trial;

4.      Statutory damages, liquidated damages, treble damages, penalties, and all other forms of monetary relief recoverable under applicable law;

FIRST AMENDED COMPLAINT
Case No. 2:17-cv-04325-BRO-AGR

5.   Pre-judgment and post-judgment interest;

6.   Preliminary and permanent injunctive relief;

7.   Avoidance of transfers or obligations and attachment of any assets or proceeds;

8.   Appropriate restitution;

9.   Reasonable costs and attorneys' fees, and expenses incurred and expended to date, according to proof at trial, to the extent allowable by applicable law; and

10.   Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated:  August 16, 2017          WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Lorraine B. Echavarria*
Lori Echavarria
Nancy Lynn Schroeder
Sonia L. Fleury
Kelsey M. McGregor
Laura F. Donaldson

ASIAN AMERICANS ADVANCING JUSTICE—LOS ANGELES
Laboni Hoq
Yanin Senachai

*Attorneys for Plaintiff*

-54-

1

## PROOF OF SERVICE

2

I am employed in the County of Los Angeles, State of California.  I am
over the age of 18 and not a party to the within action.  My business address is
Wilmer Cutler Pickering Hale and Dorr LLP, 350 South Grand Avenue, Suite
2100, Los Angeles, California 90071.

3

4

5

On August 16, 2017, I served the foregoing document(s) described as:

6

### FIRST AMENDED COMPLAINT

7

8

on each interested party through their attorney of record, or at their
last known address, as stated below.

9

10

☒  **(BY U.S. MAIL)**  I caused such document(s) to be deposited with
the U.S. Postal Service by placing the document(s) listed above in
a sealed envelope with postage thereon fully prepaid, in the United
States mail at Los Angeles, California, addressed as set forth
below. I am readily familiar with the firm's practice of collection
and processing correspondence for mailing. Under that practice it
would be deposited with the U.S. Postal Service on that same day
with postage thereon fully prepaid in the ordinary course of
business. I am aware that on motion of the party served, service is
presumed invalid if postal cancellation date or postage meter date
is more than one day after the date of deposit for mailing in
affidavit.

11

12

13

14

15

16

17

18

Heidi S. Lewis
SULLIVAN, KRIEGER, TRUONG,
  SPAGNOLA & KLAUSNER, LLP
2 Park Plaza, Suite 900
Irvine, CA 92614

19

20

21

*Attorney for Defendants Lam Sin Yam,
Ray Lim, and Tiffany Ngo, individually
and as a trustee of the Tiffany Ngo
Living Trust UTD, and Ngo Asset
Management, LLC*

22

23

24

Molica Ratha Keo
Long Beach, CA

25

Nivodeth Khiev
Long Beach, CA

26

27

Naing Lam Yam
Long Beach, CA

28

-55-

## PROOF OF SERVICE
(Continued)

Cindy Kanya Chan
Long Beach, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 16, 2017 at Los Angeles, California.

_____
Gina N. Gaytan

-56-