1 | SULLIVAN, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER, LLP
2 | Eliot F. Krieger, (SBN: 159647)
*EKrieger@SKTLawyers.com*
3 | Heidi S. Lewis, Esq., State Bar No. 98046
*HLewis@SKTLawyers.com*
4 | Christopher L. Wong, (SBN: 178374)
*CWong@SKTLawyers.com*
5 | 444 West Ocean Boulevard, Suite 1700
Long Beach, California 90802
6 | Office: (562) 597-7070
Facsimile: (562) 597-7772
7 |
Attorneys for Defendants
8 | LAM SIN YAM; RAY LIM; TIFFANY NGO;
NGO ASSET MANAGEMENT, LLC;
9 | TIFFANY NGO IN HER CAPACITY AS
TRUSTEE OF THE TIFFANY NGO
10 | LIVING TRUST UTD; CRUISE THRU DAIRY
D/B/A CRUISE THRU DAIRY, VALERO MART
11 | INC. D/B/A VALERO MART/ARCO MARKET
INC., and TIFFANY NGO D/B/A SPEEDY
12 | WASH

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 | SOCHEAT CHY,                                  ) Case No. 2:17-cv-04325-BRO-AGR
                                                  )
16 |              Plaintiff,                       ) **REQUEST FOR JUDICIAL**
                                                  ) **NOTICE IN SUPPORT OF**
17 |      v.                                       ) **MOTION TO DISMISS OF**
                                                  ) **DEFENDANTS LAM SIN YAM;**
18 | LAM SIN YAM;                                  ) **RAY LIM; TIFFANY NGO; NGO**
     RAY LIM;                                      ) **ASSET MANAGEMENT, LLC;**
19 | TIFFANY NGO;                                  ) **TIFFANY NGO IN HER CAPACITY**
     NGO ASSET MANAGEMENT, LLC;                    ) **AS TRUSTEE OF THE TIFFANY**
20 | TIFFANY NGO IN HER CAPACITY                   ) **NGO LIVING TRUST UTD;**
     AS TRUSTEE OF THE TIFFANY                     ) **CRUISE THRU DAIRY D/B/A**
21 | NGO LIVING TRUST UTD;                         ) **CRUISE THRU DAIRY; VALERO**
     NAING LAM YAM;                                ) **MART INC. D/B/A VLERO**
22 | CINDY KANYA CHAN;                             ) **MART/ARCO MARKET INC.; AND**
     MOLICA RATHA KEO;                             ) **TIFFANY NGO D/B/A SPEEDY**
23 | NIVODETH KHIEV;                               ) **WASH**
     CRUISE THRU DAIRY, D/B/A                      )
24 | CRUISE THRU DAIRY;                            ) Hearing Date:  October 23, 2017
     VALERO MART INC., D/B/A                       ) Time:              1:30 P.M.
25 | VALERO MART/ARCO MARKET                       ) Court Room:    7C
     INC.; and                                     )
26 | TIFFANY NGO, D/B/A SPEEDY                     )
     WASH,                                         )
27 |                                               )
                  Defendants.                      )
28 | _____ )

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that Defendants LAM SIN YAM; RAY LIM;

3  TIFFANY NGO; NGO ASSET MANAGEMENT, LLC; TIFFANY NGO IN HER

4  CAPACITY AS TRUSTEE OF THE TIFFANY NGO LIVING TRUST UTD,

5  CRUISE THRU DAIRY D/B/A CRUISE THRU DAIRY, VALERO MART INC.

6  D/B/A VALERO MART/ARCO MARKET INC., and TIFFANY NGO D/B/A

7  SPEEDY WASH (collectively "Defendants") hereby respectfully request that this

8  Court take Judicial Notice, pursuant to Federal Rules of Evidence 201, *Mullis v.*

9  *United States Bank. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), *MGIC Indem. Corp. v.*

10  *Weisman*, 803 F.2d 500 (9th Cir 1986), *Sears v. Metropolitan*, 245 F.2d 67 (9th Cir.

11  1956), of the following matters and documents in consideration of Defendants'

12  concurrently filed Motion to Dismiss:

13       The original Complaint in the above-captioned matter was filed on June 9,

14  2017, a true and correct copy of which, bearing the file-stamp date, is attached

15  hereto as "Exhibit 1."

16  DATED: September 19, 2017          SULLIVAN, KRIEGER, TRUONG
17                                SPAGNOLA & KLAUSNER, LLP

18                             /s/Eliot F. Krieger
19                            Eliot F. Krieger, P.C.
20                            Heidi Stilb Lewis
                          Christopher L. Wong
21                            Attorneys for Defendants
22                            LAM SIN YAM; RAY LIM;
                          TIFFANY NGO; NGO ASSET
23                            MANAGEMENT, LLC; TIFFANY
24                            NGO IN HER CAPACITY AS
                          TRUSTEE OF THE TIFFANY NGO
25                            LIVING TRUST UTD; CRUISE
26                            THRU DAIRY D/B/A CRUISE THRU
                          DAIRY, VALERO MART INC.
27                            D/B/A VALERO MART/ARCO
                          MARKET INC., and TIFFANY NGO
28                            D/B/A SPEEDY WASH

**Exhibit 1**

1  Lorraine B. Echavarria (SBN 191860)
   lori.echavarria@wilmerhale.com
2  Sonia L. Fleury (SBN 298534)
   sonia.fleury@wilmerhale.com
3  Kelsey M. McGregor (SBN 307627)
   kelsey.mcregor@wilmerhale.com
4  Laura F. Donaldson (SBN 307638)
   laura.donaldson@wilmerhale.com
5  WILMER CUTLER PICKERING
      HALE AND DORR LLP
6  350 South Grand Avenue, Suite 2100
   Los Angeles, CA 90071
7  (213) 443-5300 Telephone
   (213) 443-5400 Facsimile
8
   Laboni Hoq (SBN 224140)
9  lhoq@advancingjustice-la.org
   Yanin Senachai (SBN 288336)
10 ysenachai@advancingjustice-la.org
   ASIAN AMERICANS ADVANCING
11     JUSTICE-LOS ANGELES
   1145 Wilshire Blvd., 2nd Floor
12 Los Angeles, CA 90017
   (213) 977-7500 Telephone
13 (213) 977-7595 Facsimile
14 *Attorneys for Plaintiff*
15
16                  **UNITED STATES DISTRICT COURT**
17                  **CENTRAL DISTRICT OF CALIFORNIA**
18 Socheat Chy,                          Case No. 2:17-cv-04325
19              Plaintiff,
20         v.                            **COMPLAINT**
                                         **JURY TRIAL DEMANDED**
21 Sing Lim; Ray Lim; Tiffany Ngo;
   Ngo Asset Management, LLC;
22 Tiffany Ngo in her capacity as
   trustee of The Tiffany Ngo Living
23 Trust UTD; Naing Lam Yam; Jane
   Doe 1; Cindy Kanya Chan; Molica
24 Ratha Keo; Nivodeth Khiev; Doe
   Gas Station 2; Doe Gas Station 3;
25 Doe Laundromat 4; and DOES 5
   through 10, inclusive,
26
27              Defendants.
28

1       Plaintiff Socheat Chy ("Socheat" or "Plaintiff") alleges against her

2  trafficker defendants, Sing Lim; Ray Lim; Tiffany Ngo; Ngo Asset Management,

3  LLC; Tiffany Ngo in her capacity as trustee of The Tiffany Ngo Living Trust

4  UTD; Naing Lam Yam; Jane Doe 1; Cindy Kanya Chan; Molica Ratha Keo;

5  Nivodeth Khiev; Doe Gas Station 2; Doe Gas Station 3; and Doe Laundromat 4

6  as follows:

7  **I.   NATURE OF THE ACTION**

8       1.   Socheat brings this action against the Defendants for violations of the

9  Trafficking Victims Protection Act and its Reauthorizations ("TVPA"), Human

10  Trafficking under California Civil Code § 52.5, violations of the California

11  Labor Code, violations of the Fair Labor Standards Act ("FLSA"), Unfair

12  Competition under the California Business and Professions Code, Intentional

13  Infliction of Emotional Distress, False Imprisonment, Battery, Assault,

14  Negligence, Negligence Per Se, Negligent Infliction of Emotional Distress,

15  Trespass to Chattel, Quantum Meruit, Conspiracy, Constructive Voidable

16  Transaction, Intentional Voidable Transaction, and Breach of Contract.

17  Defendants trafficked Socheat from Cambodia to the United States, where they

18  subjected her to forced labor and involuntary servitude in their businesses and

19  homes in Southern California.  For years, Defendants terrorized and tortured

20  Socheat.  Defendants forced Socheat to work an average of 17 hours per day,

21  seven days per week, in their gas stations, laundromat, and homes for negligible

22  pay; confined Socheat to a gas station every night for months at a time, forcing

23  her to sleep in a lawn chair there, and at times locking her inside with a metal

24  grate; physically and verbally abused Socheat, going so far as to cut her face

25  with a knife to intimidate and control her; forbade Socheat from going anywhere

26  by herself; refused to seek medical attention for Socheat after she attempted

27  suicide; and threatened Socheat with further harm if she attempted to escape.

28

COMPLAINT
Case No. 2:17-cv-04325

1     Throughout the recruitment and trafficking process, Defendants used methods of

2     personal, reputational, and cultural coercion to manipulate, entrap, and control

3     Socheat. Defendants' relentless abuse culminated in Socheat's suicide attempt,

4     during which Defendants denied her medical care and left her to die. After

5     regaining her strength, Socheat contacted the police and was rescued by them in

6     2015. She has been living in a shelter for trafficking survivors since that time.

7    **II.**   **JURISDICTION AND VENUE**

8       2.    This Court has federal question jurisdiction over this action under

9    U.S.C. § 1331 because this action alleges violations of federal statutes, including

10    the TVPA (18 U.S.C. §§ 1584, 1589, 1590, 1592, 1593A, 1594, and 1595(a))

11    and the FLSA (29 U.S.C. §§ 206 and 207).

12       3.    This Court has supplemental jurisdiction over the remaining claims

13    pursuant to 28 U.S.C. § 1367.

14       4.    This Court has personal jurisdiction over Defendants under Fed. R.

15    Civ. P. 4(k), because each Defendant, being domiciled or incorporated in

16    California, is subject to the jurisdiction of a court of general jurisdiction in the

17    state of California under California Code of Civil Procedure § 410.10.

18       5.    Venue is proper in this District under 28 U.S.C. § 1391 because a

19    substantial part of the events or omissions giving rise to the claims occurred in

20    this District.

21    **III.**   **THE PARTIES**

22       **A. Plaintiff**

23       6.    Plaintiff Socheat Chy was born in Banan, Cambodia, and was

24    trafficked to California by Defendants on June 11, 2013 for purposes of forced

25    labor. Socheat grew up poor, in a small Cambodian village with her two sisters

26    and her parents, who are farmers. Defendants forced Socheat to work for them

27    from at least June 11, 2013 through September 28, 2015. Socheat and

28

-2-

1    Defendants communicated in the Khmer language.  Specific statements

2    attributed to Defendants in this complaint are translations of Khmer-language

3    words.

4              **B. Defendants**

5         7.    On information and belief, Defendant Sing Lim ("Defendant Sing")

6    is the sister of Defendant Naing Lam Yam, the mother of Defendants Tiffany

7    Ngo and Ray Lim, and resides in Palmdale, California.  On information and

8    belief, Defendant Sing masterminded the scheme to traffick Socheat into the

9    United States for forced labor, including by recruiting Socheat, directing her

10   marriage to Defendant Naing Lam Yam, threatening her and her family with

11   harm, confiscating her documents, mentally and physically abusing her, directing

12   others not to pay her, and failing to pay her for her work.

13        8.    On information and belief, Defendant Naing Lam Yam ("Defendant

14   Yam") is the brother of Defendant Sing, the uncle of Defendants Tiffany Ngo

15   and Ray Lim, and resides in Long Beach, California.  On information and belief,

16   Defendant Yam married Socheat in or around December 2010, and participated

17   in the scheme to force her to work under duress and without proper payment,

18   including by humiliating her, fabricating coercive immigration evidence, and

19   threatening her and her family with harm.

20        9.    On information and belief, Defendant Tiffany Ngo ("Defendant

21   Ngo") is the daughter of Defendant Sing, the niece of Defendant Yam, the sister

22   of Defendant Ray Lim, and resides in Palmdale, California.  On information and

23   belief, Defendant Ngo owns or owned Defendant Doe Gas Station 2, Defendant

24   Doe Gas Station 3, and Defendant Doe Laundromat 4.  On information and

25   belief, Defendant Ngo is also the agent of an asset management company, Ngo

26   Asset Management, LLC, which owns or owned the shopping center where

27   Socheat was required to work.  Defendant Ngo participated in the scheme to

28

-3-

1   force Socheat to work under duress and without proper payment, including by

2   mentally and physically abusing her, and subjecting her to deplorable working

3   conditions with negligible compensation.

4       10.   On information and belief, Defendant Ngo Asset Management, LLC

5   ("Defendant Ngo Asset Management") is located at 101 East Avenue J,

6   Lancaster, California 93535, and owns or owned the shopping center where

7   Socheat was required to work under duress and without proper payment.

8       11.   On information and belief, Defendant Tiffany Ngo in her capacity as

9   trustee of The Tiffany Ngo Living Trust UTD ("Defendant Ngo Trustee"), is a

10  trust created under the laws of California with a mailing address in Palmdale,

11  California.  Defendant Ngo is the trustee of The Tiffany Ngo Living Trust UTD.

12  On information and belief, Defendants Ngo, Lim, and Ngo Asset Management

13  transferred substantially all their real properties to The Tiffany Ngo Living Trust

14  UTD.

15      12.   On information and belief, Defendant Ray Lim ("Defendant Lim") is

16  the son of Defendant Sing, the nephew of Defendant Yam, the brother of

17  Defendant Ngo, and resides in California.  On information and belief, Defendant

18  Lim owns or owned the Defendant Doe 3 Gas Station business, and employed

19  Socheat there.  On information and belief, Defendant Lim participated in the

20  scheme to force Socheat to work under duress and without proper payment,

21  including by subjecting Socheat to deplorable working conditions.

22      13.   On information and belief, Defendant Jane Doe 1 ("Defendant Doe

23  1") has family residing in Cambodia, and personally resides in the United States.

24  On information and belief, Defendant Doe 1 participated in the scheme to recruit

25  and force Socheat to work under duress and without proper payment, including

26  by helping recruit Socheat and threatening Socheat and her sister.

27

28

COMPLAINT
Case No. 2:17-cv-04325

1        14.   On information and belief, Defendant Cindy Kanya Chan

2    ("Defendant Chan") was born in Cambodia and resides in Long Beach,

3    California.  On information and belief, Defendant Chan participated in the

4    scheme to recruit and force Socheat to work under duress and without proper

5    payment, including by co-sponsoring Socheat's immigration process.

6        15.   On information and belief, Defendant Molica Ratha Keo ("Defendant

7    Keo")—known to Socheat as "Monica"—is the mother of Defendant Nivodeth

8    Khiev, and resides in Long Beach, California.  On information and belief,

9    Defendant Keo participated in the scheme to recruit and force Socheat to work

10   under duress and without proper payment, including by managing and coaching

11   Socheat's immigration process, constraining her movements, and severely

12   underpaying her for significant domestic labor.

13       16.   On information and belief, Defendant Nivodeth Khiev ("Defendant

14   Khiev")—known to Socheat as "Julie"—is the daughter of Defendant Keo, and

15   owns a residence in Long Beach, California.  On information and belief,

16   Defendant Khiev participated in the scheme to recruit and force Socheat to work

17   under duress and without proper payment, including by severely underpaying her

18   for significant domestic labor.

19       17.   On information and belief, Defendant Doe Gas Station 2 is a Valero

20   franchise gas station and market operated by Defendants Sing, Lim, Ngo, and

21   Ngo Asset Management.  On information and belief, Defendant Doe Gas Station

22   2 is or was owned by Defendant Ngo and is located at 500 East Avenue K,

23   Lancaster, California 93535.  On information and belief, Socheat was required to

24   work at Defendant Doe Gas Station 2 under duress and without proper payment.

25       18.   On information and belief, Defendant Doe Gas Station 3 is an Arco

26   franchise gas station and market operated by Defendants Sing, Lim, Ngo, and

27   Ngo Asset Management.  On information and belief, the Defendant Doe Gas

28

-5-

1    Station 3 business is or was owned by Defendants Ngo and Lim and the property

2    is or was owned by Defendant Ngo. On information and belief, Defendant Gas

3    Station 3 is located at 44412 Division St., Lancaster, California 93535. On

4    information and belief, Socheat was required to work at Defendant Doe Gas

5    Station 3 under duress and without proper payment.

6          19.   On information and belief, Defendant Doe Laundromat 4 is a

7    laundromat that was or is owned by Defendant Ngo and is located at 500 East

8    Avenue K, Lancaster, California 93535. On information and belief, Socheat was

9    required to work at Defendant Doe Laundromat 4 under duress and without

10   proper payment.

11         20.   On information and belief, each Defendant is the alter ego and joint

12   employer of, and is working in joint enterprise with, each and every other

13   Defendant. Plaintiff is informed and believes, and on that basis alleges, that at

14   all times mentioned in this Complaint, each and every Defendant was the agent

15   or employee of each and every other Defendant, and in doing the acts alleged,

16   was acting within the course and scope of such agency or employment, with the

17   consent, provision and authorization of each of the remaining Defendants. All

18   actions of each Defendant were ratified and approved by every other Defendant.

19         21.   Plaintiff is informed and believes, and on that basis alleges, that at all

20   times mentioned in this Complaint, each and every Defendant entered into a

21   conspiracy and agreement with every other Defendant, or later joined that

22   conspiracy and ratified the acts and conduct of other defendants who had entered

23   the conspiracy. Plaintiff is further informed and believes, and on that basis

24   alleges, that at all times mentioned in this Complaint, all Defendants knowingly,

25   maliciously, and willfully entered into that conspiracy. All Defendants' acts and

26   failures to act as alleged in this Complaint were perpetrated in furtherance of the

27   conspiracy.

28

-6-

COMPLAINT
Case No. 2:17-cv-04325

## IV.   FACTUAL BACKGROUND

### A. Defendants recruited Socheat for labor, tarnished her reputation, and threatened her younger sister

a)   Defendants recruited Socheat to work in the United States

22.   Socheat was born in 1990 in Banan, Cambodia, a small village in the northwest of the country, about an hour outside the city of Battambang. Socheat's parents were farmers, and her father had municipal responsibilities in their village.  Growing up, Socheat helped care for her two younger sisters. Socheat's family was poor, and her parents worked a lot.

23.   When Socheat was a teenager, Defendant Sing recruited Socheat's close family member ("Family Member 1") to work for her in the United States. On information and belief, Defendant Sing arranged for Family Member 1 to marry a United States Green Card holder, and subsequently move to the United States to work for Defendants.

24.   In or around July or August 2009, Socheat spoke to Family Member 1 on the phone.  Family Member 1 encouraged Socheat to come to the United States to work for Defendants.  Family Member 1's family had purchased a piece of land and a new shop and appeared to be prospering.  Socheat believed their prosperity derived from money that Family Member 1 sent to Cambodia from her job in the United States.  Socheat wanted to do the same for her family.

25.   Soon thereafter, Defendant Sing's brother, Defendant Yam, came to visit Socheat.  Defendant Yam told Socheat that she would work hard in the United States, stocking and shelving items in a shop, and working the register. Defendant Yam told Socheat she would make more money than she was earning at her current job in a restaurant in Battambang, and that she could help her

-7-

1   family. Socheat told Defendant Yam that she wanted to come to the United
2   States.

3           b)      Defendants begin spying on and controlling Socheat

4        26.   At the end of 2009 or early 2010, after Defendant Yam visited
5   Socheat, Defendant Sing called Socheat and ordered her to stop working
6   immediately, to return home to Banan, and to begin taking English classes.
7   Socheat did not want to leave her job, but Family Member 1's mother told
8   Socheat that in order to go to the United States and make more money, she had
9   to do whatever Defendant Sing told her to do. On information and belief,
10  Defendant Sing also instructed Family Member 1's mother to tell Socheat that if
11  Socheat did not obey Defendant Sing, Socheat could not go to the United States.
12  Socheat obeyed Defendant Sing's orders.

13       27.   In January 2010, Defendant Sing called Socheat and informed her
14  that a man named C.C. would be coming to Cambodia with Defendant Doe 1.
15  Defendant Sing told Socheat that Socheat would marry C.C. Socheat understood
16  that if she wanted to come to the United States, she had to marry C.C. Defendant
17  Sing told Socheat to do whatever Defendant Doe 1 told her to do.

18          c)      Defendants tarnished Socheat's reputation and
19                   threatened Socheat and her younger sister

20       28.   In February 2010, on information and belief, C.C. and Defendant
21  Doe 1 arrived in Phnom Penh, and traveled to Banan. Shortly thereafter, Socheat
22  became engaged to C.C., and her neighbor R.H. became engaged to Defendant
23  Doe 1. Defendant Sing ordered that a double engagement ceremony take place
24  for the four of them.

25       29.   After the engagement ceremony, Defendant Sing sent money for
26  Defendant Doe 1, R.H., C.C., Socheat, and Socheat's mother to travel around
27  Cambodia and take photos together. During this time, Defendant Doe 1 pushed
28

                                -8-

1   Socheat to sit close to C.C., and to be "touchy" with him. Defendant Doe 1

2   instructed C.C. to put his hands on Socheat's hips, whether or not a photograph

3   was being taken.

4       30.   Next, Defendant Doe 1 took Socheat, C.C., and R.H. to Phnom Penh

5   without Socheat's mother. Socheat avoided C.C. because she did not want him

6   to touch her. Defendant Doe 1 reprimanded Socheat for avoiding C.C., telling

7   her that if she continued to misbehave, Socheat would not be allowed to come to

8   the United States.

9       31.   At night, Defendant Doe 1 insisted that Socheat go to C.C.'s room.

10   Socheat refused, and Defendant Doe 1 threatened Socheat that if she did not let

11   C.C. touch her body, Defendant Doe 1 would tell Defendant Sing to take

12   Socheat's middle sister to the United States instead of Socheat. Despite

13   Socheat's express refusals, C.C. stayed in Socheat's bed all night with his arms

14   around her, and Socheat could not sleep because she was so afraid.

15       32.   In March 2010, C.C. and Defendant Doe 1 left Cambodia, and

16   Socheat accompanied them to the airport. Before they parted, C.C. kissed

17   Socheat's cheek without Socheat's consent. On information and belief, R.H. saw

18   C.C. kiss Socheat, and smirked. By kissing Socheat in a public space, C.C. had

19   shamed Socheat, and damaged her reputation as a Cambodian woman.

20       33.   After this trip, Defendant Sing called off Socheat's engagement with

21   C.C., and cancelled their wedding. Socheat understood that Defendant Sing

22   believed that after Socheat arrived in the United States, C.C. might interfere with

23   Defendant Sing's control over Socheat.

24       34.   By cancelling the wedding with C.C., Defendant Sing exposed

25   Socheat to shame and ridicule. On information and belief, members of Socheat's

26   community knew of their engagement, and had seen C.C. touch Socheat and kiss

27   her at the airport. Socheat believed that her reputation was ruined because these

28

-9-

1   behaviors were taboo in her culture.  Socheat feared that if she did not come to

2   the United States, she would have to leave Banan or risk never being able to

3   marry or have a family.  Socheat considered moving to Thailand if she was

4   unable to come to the United States.

5        35.   Family Member 1 called Socheat to say that Defendant Sing wanted

6   to take Socheat's middle sister to the United States instead of Socheat.  Socheat

7   perceived this as a threat to her sister because her sister was too young to protect

8   herself from Defendant Sing and her associates.  In order to protect her sister,

9   Socheat felt she had go to the United States.  Socheat's sister told Family

10   Member 1 that she did not want to go to the United States, and Socheat waited,

11   fearful about whom Defendant Sing would choose to send.

12        36.   During this time, on information and belief, rumors about Socheat

13   spread through Banan.  On information and belief, when Socheat attended a

14   wedding, guests in attendance told people that Socheat was already married, and

15   was not single.

16            d)   Defendant Yam married Socheat

17        37.   In July 2010, Defendant Sing informed Socheat that her brother,

18   Defendant Yam (who was twenty-eight years older than Socheat), would marry

19   Socheat in Cambodia.  Socheat felt required to move forward with the proposal

20   in order to protect her little sister from Defendant Sing.

21        38.   On or about December 27, 2010, Socheat married Defendant Yam.

22            e)   Defendants continued to threaten and shame Socheat,

23               and submitted documents with false information to U.S.

24               Citizenship and Immigration Services to obtain a visa

25               for Socheat

26        39.   Defendants Sing and Yam continued to manipulate and entrap

27   Socheat by compromising her reputation in her community, and by submitting

28

1   fabricated evidence to the American Embassy in Cambodia and to U.S.

2   Citizenship and Immigration Services ("USCIS").  Defendant Sing told Socheat

3   that she had to do whatever Defendant Yam told her to do if Socheat wanted to

4   work in the United States.

5        40.   First, after the wedding ceremony, Defendant Yam made Socheat

6   take pictures all over Cambodia of him hugging and touching her.  Next,

7   Defendant Yam forced Socheat to get into bed with him, and had Socheat's

8   father's boss take pictures of her lying in bed next to Defendant Yam.  Defendant

9   Yam threatened Socheat that if she did not stop being shy or embarrassed, and

10  act like his wife for the photos, she could not come work in the United States.

11       41.   Around this time, Socheat heard a rumor in town that she had slept

12  with Defendant Yam and become pregnant.  Based on this rumor and her ever-

13  present fear that Defendant Sing would turn her attention toward Socheat's sister,

14  Socheat felt compelled to obey Defendants Sing and Yam.

15       42.   While Socheat was waiting to come to the United States, Defendant

16  Yam informed her that his girlfriend, Defendant Keo, would direct Socheat

17  through the immigration process.  In or around August or September 2011,

18  Defendant Keo traveled to Cambodia to meet Socheat.  Defendant Keo instructed

19  her throughout the visa application process, including on what to say at her

20  interviews with USCIS.  Defendant Keo instructed Socheat to call her with any

21  questions that might arise during the immigration process.

22       43.   Defendant Yam certified under penalty of perjury on required U.S.

23  immigration form I-864 that he would provide Socheat with financial support

24  equal to at least 125% of the federal poverty line.  Defendant Chan also certified

25  under penalty of perjury on required U.S. immigration form I-864 that she was

26  Socheat's joint sponsor for her immigration application, and would also provide

27  Socheat with financial support equal to at least 125% of the federal poverty line.

28                                    -11-

44.    On information and belief, Defendant Keo prepared and submitted Socheat's immigration paperwork for USCIS.  On information and belief, Defendant Yam and Defendant Chan's false attestations on the I-864 immigration forms and the forms Defendant Keo prepared and submitted provided USCIS with required information for Socheat's visa application. USCIS issued Socheat a visa in May 2013 to come to the United States.

**C. Defendants transported Socheat to the United States**

45.    In or around May or June 2013, Defendant Yam traveled to Cambodia to retrieve Socheat, and bring her to the United States.  Defendant Yam travelled with Socheat and controlled her entry to the United States. Socheat arrived in the United States on June 11, 2013.  Defendant Sing picked Socheat up from the airport, and took Socheat to Defendant Ngo's residence in Palmdale, California.

**D. Defendants Sing, Lim, and Ngo threatened, abused, and used Socheat for forced labor**

a)    <u>Defendants confiscated Socheat's passport, and threatened Socheat to coerce her labor and compliance</u>

46.    On Socheat's first full day in the United States, Defendant Sing began manipulating Socheat with threats and coercion.  Defendant Sing demanded that Socheat give Defendant Sing her passport.  Socheat did not understand why Defendant Sing needed her passport, but she complied because she was scared.

47.    On information and belief, Defendant Sing ordered Socheat to hold out her hand as if in prayer, and promise that she would not steal from Sing, nor lie to her, nor run away.  Defendant Sing threatened Socheat that if Socheat broke her promises, great harm would come to Socheat.  On information and

-12-

1    belief, Defendant Sing knew that Socheat was a devoted Khmer Buddhist, and

2    understood that such a promise had religious significance.

3         48.   In or around that week, Defendant Yam came to Defendant Ngo's

4    house.  Defendant Sing told Socheat that she had already paid Defendant Yam

5    $20,000 for Socheat's travel to the United States.  Defendant Sing then counted

6    out an additional $20,000 in cash and handed it to Defendant Yam in front of

7    Socheat.  Defendant Sing told Socheat that it had cost Defendant Sing $40,000

8    total to get Socheat into the United States.  Socheat understood from this

9    exchange that she owed Defendant Sing $40,000.

10             b)    <u>Defendants forced Socheat to work 17-hour days, seven</u>

11                  <u>days a week for no pay; denied her proper meal and rest</u>

12                  <u>periods; and failed to provide her with wage statements</u>

13         49.   For the next five months, from approximately June 2013 through

14    October 2013, Defendant Sing and her children, Defendant Lim and Defendant

15    Ngo, required Socheat to work from morning until night, seven days per week, at

16    their various businesses.  On a typical day, Defendants made Socheat work at

17    two or three separate businesses, for approximately 17 hours total.  Socheat

18    tended the cash registers, stocked products, mopped floors, cleaned countertops,

19    and took the trash out, among other tasks.

20         50.   In addition to forcing Socheat to work at the Defendants' gas

21    stations, laundromat, and shopping center, Defendants forced Socheat to clean

22    and mop Defendant Ngo's house approximately once per week.  During the

23    summer, Defendants made Socheat pull weeds in Defendant Ngo's backyard and

24    tend Defendant Ngo's garden in the heat.

25         51.   The minimum wage in California when Socheat began working for

26    Defendants was $8.00 per hour.  From June 2013 through October 2013,

27    Defendants did not pay Socheat at all for her labor.

28

-13-

COMPLAINT
Case No. 2:17-cv-04325

1    52.   California law also requires that employees be paid overtime for any

2  hours worked in excess of eight hours per day or forty hours per week.

3  Employers must pay employees one and one-half times their regular rate of pay

4  for all hours worked in excess of eight hours up to and including 12 hours in any

5  workday, and two times their regular rate of pay for all hours worked in excess

6  of 12 hours in any workday.  California law prohibits employers from requiring

7  employees to work for seven days in one workweek.  California law requires that

8  employees be paid 1.5 times their regular rate of pay for the first eight hours

9  worked on the seventh workday of the workweek, and two times their hourly

10  wage for hours worked in excess of eight on the seventh workday of the

11  workweek.   Although Defendants forced Socheat to work about 17 hours per

12  day, seven days per week, from approximately June through October 2013, they

13  never provided Socheat with overtime pay.

14    53.   In addition to working long hours for no pay, Defendants routinely

15  denied Socheat her proper meal and rest periods.  Under California law, an

16  employer is required to provide an employee with a meal period of at least 30

17  minutes if the employee works for more than five hours per day, and with a

18  second meal period of at least 30 minutes if the employee works for more than

19  ten hours per day.  If the employee works no more than 12 hours, the second

20  meal period may be waived by mutual consent of the employer and employee.

21  An employer may require the employee to remain at the work site during the

22  meal period only with the employee's written consent, and the meal period must

23  be paid.  Under California law, an employer is also required to provide an

24  employee with a rest period at a minimum rate of ten minutes for every four

25  hours worked, and insofar as practicable such rest period must be provided in the

26  middle of each work period.  Rest periods are counted as time worked.

27

28

-14-

54. Despite this, Defendants repeatedly failed to offer Socheat meal or rest periods of the required length and frequency. Defendants also forced Socheat to remain on site at all times. Socheat did not enter into a written agreement to waive her meal and rest period rights.

55. Finally, Defendants never provided Socheat with accurate wage statements, as required by law. To date, Defendants have failed to pay Socheat all wages due to her for her labor during these five months.

        c)    <u>Defendants forced Socheat to sleep in a lawn chair at the gas station and bathe onsite</u>

56. Almost every night, Defendants forced Socheat to sleep in the stocking room at Defendant Doe Gas Station 2 in a lawn chair without any cushions. In the noisy and cold gas station stocking room, Socheat slept at most five or six hours per night, and often slept fewer. Defendant Sing gave Socheat only one thin blanket, which did not adequately protect Socheat against the cold. Defendant Sing did not allow Socheat to use a pillow or additional blankets. Defendant Sing told Socheat she did not want it to look like someone was living there if there were an inspection.

57. Defendants made Socheat bathe in a small room of the gas station using a wall-mounted spigot, which was either too hot or too cold. On information and belief, Defendants knew the door to that room was broken and Socheat could be exposed to others while bathing.

58. On information and belief, Defendants directed Family Member 1 to stay with Socheat at Defendant Doe Gas Station 2 each night. Family Member 1 controlled the entry and exit points of Defendant Doe Gas Station 2. Family Member 1 carried with her a remote control that could lift the metal grate around Defendant Doe Gas Station 2, as well as the key to the doors. On information

1    and belief, Defendant Doe Gas Station 2 had an emergency door that allowed a

2    person inside the station to exit, but not to re-enter without a key.

3            d)   <u>Defendants verbally abused Socheat, and physically</u>

4                 <u>tortured and battered her</u>

5        59.   Defendant Sing repeatedly abused and tortured Socheat.  Defendant

6    Sing hit Socheat, pulled her hair, cussed at her, called her words like "stupid,"

7    "blind," "slow," and "lazy," and often screamed at Socheat when she asked a

8    question.  One time, in about September 2013, when Socheat was moving stock

9    in the backroom of Defendant Doe Gas Station 3, Defendant Sing approached

10   Socheat from behind and hit her on the back with her fists like she was swinging

11   a baseball bat at Socheat.  Other times, when Socheat could not find something,

12   Defendant Sing pulled Socheat by the hair and pushed Socheat's face inches

13   from the object to show her where it was, and then asked why Socheat was so

14   stupid.  Socheat was terrified of Defendant Sing.  As a result of Defendant Sing's

15   abuse, Socheat felt panicked when she saw Defendant Sing or Defendant Sing

16   called her name.  Whenever Defendant Sing approached Socheat, Socheat was so

17   scared that she had trouble functioning.

18       60.   Defendant Sing filed her nails to a point and scratched Socheat.

19   Defendant Sing poked Socheat's eyes with her sharpened nails, and poked and

20   pinched Socheat's ears and body regularly from in or around June 2013 through

21   October 2013.  Once, in or around August 2013, when Socheat was stocking

22   products, she put an item in the wrong place by accident.  Defendant Sing

23   dragged Socheat by her hair for about six steps, then shoved Socheat's face

24   against the counter, poked Socheat's head with her nails, and told Socheat where

25   to put the products.

26       61.   Another time, in or around October 2013, when Socheat was

27   stocking water, Defendant Sing began insulting Socheat, and demanded that she

28

-16-

1    move the water bottles elsewhere. Defendant Sing picked up a filled water

2    bottle, and hit Socheat repeatedly in the eye. Socheat's eye swelled, and she had

3    blurry vision for days after the incident.

4          62.    Defendant Ngo also physically, verbally, and psychologically abused

5    Socheat regularly from in or around June 2013 through in or around October

6    2013. Defendant Ngo hit Socheat, screamed at her, and called her names.

7    Defendant Ngo told customers that Socheat was "5150," suggesting that Socheat

8    was mentally unstable, and called Socheat a "slut" or "prostitute." Defendant

9    Ngo slandered Socheat's parents, which was very painful for Socheat.

10   Sometimes, if Socheat made a mistake in her work, Defendant Ngo hit Socheat

11   on the head with her knuckles.

12         63.    In or around October 2013, Defendant Yam secretly visited

13   Defendant Doe Gas Station 2, where Socheat was working, and asked Socheat if

14   she wanted to escape. Socheat told Defendant Yam that she could not leave

15   because Defendant Sing had taken all of her identity documents. Socheat also

16   feared escape because she owed Defendant Sing money, and Socheat thought

17   that her family would owe Defendant Sing the money if Socheat left.

18              e)    <u>Due to the abuse and threats of Defendants, Socheat's</u>
19                    <u>fear increased and her mental and physical state suffered</u>

20         64.    During this time, Socheat's physical and mental state deteriorated.

21   Many nights when she closed her eyes to sleep, she cried in fear of what

22   Defendant Sing might do to her. Socheat felt constant anxiety about what would

23   happen to her if she made a mistake while performing her assigned duties at the

24   gas stations and other shops.

25         65.    Socheat had trouble eating. The more she thought about Defendant

26   Sing, the more fearful and anxious she became. Whenever Socheat saw the

27   Defendant Doe Gas Station 3 sign, she felt depressed and scared. She

28

-17-

COMPLAINT
Case No. 2:17-cv-04325

1   experienced episodes of paralyzing fear and panic.  As her health worsened,

2   Socheat considered running away.

3          66.   Shortly after Defendant Yam visited her in or around October 2013,

4   Socheat was working the Defendant Doe Gas Station 3 cash register while

5   Defendant Sing was cutting ginger root nearby.  Socheat put a pack of cigarettes

6   in the wrong place.  Defendant Sing called Socheat "stupid," and jabbed

7   Socheat's face with her knife.  Socheat jumped out of the way, but Defendant

8   Sing managed to cut Socheat's face, and Socheat started bleeding.  Socheat

9   became afraid that Defendant Sing might actually kill her, and decided that she

10   had to run away.

11          **E.  Defendants Yam, Keo, and Khiev forced Socheat to work for**

12          **them in a purported "escape" from Defendants Sing, Lim, and Ngo**

13          67.   In late October 2013, a customer left a phone at the gas station by

14   mistake, and Socheat used it to call Defendant Yam, who arranged to pick her up

15   from Defendant Doe Gas Station 2.  Defendant Yam picked Socheat up in the

16   middle of the night, so that they would not be seen.  Socheat was brought to

17   Defendant Khiev's house in Long Beach, where Socheat lived with Defendants

18   Keo and Khiev for approximately six months.  Socheat hoped that she would

19   have more freedom, and that Defendants Keo, Khiev, and Yam would help her

20   get a job so she could pay off her debt to Defendant Sing.  However, while she

21   was there, Defendants Keo, Khiev, and Yam did not permit Socheat to go outside

22   or even stand near any windows.  Instead, Defendants Keo, Khiev, and Yam

23   required her to stay in the house.  Socheat performed daily domestic labor for

24   Defendants Keo and Khiev, including cooking, sweeping, stocking the

25   refrigerator, cleaning the two houses on the property, and cleaning the yard.  In

26   addition, Socheat gave Defendant Keo a massage for two to three hours per day,

27

28

-18-

1   seven days per week.  Socheat understood that Defendant Keo expected her to
2   perform this service.
3       68.   From in or around November 2013 through April 2014, Socheat
4   performed domestic services for Defendants Keo and Khiev for approximately
5   six to twelve hours per day, seven days per week.  Socheat was paid about $500
6   for approximately five months of domestic labor.
7       69.   At one point, Defendant Keo informed Defendant Yam that Socheat
8   had stood near the window of the house.  Defendant Yam accused Socheat of
9   trying to show off her body.  Socheat was ashamed and upset by this accusation,
10  and felt like a prisoner in Defendant Khiev's house.
11      70.   One night in early 2014, Defendant Yam allowed Socheat to leave
12  the house for a rare public outing.  While they were out, Defendant Yam bought
13  Socheat food and reminded her that he was treating her better than Defendant
14  Sing ever had.  He told her not to run away from him.
15      71.   Socheat's other neighbor from Cambodia, V.H., was also staying
16  with Defendants Keo, Khiev, and Lam at this time.  On information and belief,
17  V.H. had come to the United States to work for Defendant Sing and her children,
18  and later ran away.
19      72.   On or about April 2014, Defendant Yam drove Socheat back to
20  Defendant Doe Gas Station 3 at midnight.  He made Socheat swear not to tell
21  Defendant Sing where she had been, and that if she did, great harm would come
22  to her.
23  ///
24  ///
25  ///
26  ///
27  ///
28

-19-

**F.   Continued Debt Bondage, Abuse, and Threats by Defendants Sing, Lim, and Ngo**

       a)    **Defendants again threatened Socheat, and forced her into a written debt bondage contract**

73. When Socheat saw Defendant Sing again, Defendant Sing made Socheat swear a second time that she would not leave or betray Defendant Sing. Defendant Sing told Socheat that a recent, near-fatal motorbike accident involving Socheat's mother had occurred because Socheat had run away and cheated Defendant Sing. Defendant Sing made Socheat participate in a ceremony and light incense in the Buddhist tradition. On information and belief, Defendant Sing knew that according to Socheat's beliefs, the incense further strengthened the promise Socheat made to stay with Defendant Sing. Defendant Sing told Socheat that if she broke her promise or disobeyed Defendants, Socheat and her family would be cursed with poverty and misery, and great harm would come to Socheat.

74. A month or two later, Defendant Sing presented Socheat with a Khmer-language contract which stated that Socheat owed $40,000 to Defendant Ngo. Defendant Sing then made Socheat sign the contract with a fingerprint.

       b)    **Defendants continued to force Socheat to work, and physically and verbally abused her**

75. From about April 2014 through about September 2015, on a typical day Defendants required Socheat to work about 14-15 hours per day, seven days per week, at their various businesses and Defendant Ngo's home. Starting on July 1, 2014, the minimum wage in California increased from $8.00 to $9.00 per hour. During this 17-month period, Defendants only paid Socheat approximately $1,200, and never paid her overtime or minimum wage.

-20-

76.   As before, Defendants denied Socheat her meal and rest periods, required that she remain on site at all times, and never provided her with accurate wage statements, in violation of federal and state labor laws.

77.   For at least one month, Socheat was locked inside the gas station overnight, without control over the exit points of the station.  Those nights, Socheat slept on a lawn chair.

78.   As before, Defendant Sing and Defendant Ngo continued to verbally and physically abuse Socheat.

**G.   Due to grievous harms, Socheat attempted to end her life, and Defendants denied her medical services and left her to die**

79.   As Defendants continued to abuse Socheat and force her to work without pay in inhumane conditions, Socheat felt increasingly desperate. Socheat worried about how she would pay off her debt to Defendants, and concluded that the only way to escape the situation without causing problems for her family and her traffickers was to kill herself.  In August 2014, Socheat secretly ingested a bottle of Motrin and approximately ten tablets of Advil while at Defendant Ngo's house, in an attempt to end her life.  Defendants Sing, Ngo, and Lim forced Socheat to go to the gas station, even though Socheat had begun to feel sick.  Once Socheat arrived at work, she could not walk straight or communicate clearly.  She vomited four or five times throughout the day, but Defendants kept her at work.

80.   That night, Defendant Sing accused Socheat of trying to kill herself. Defendant Sing called Defendant Lim to inform him that Socheat had tried to kill herself.  They agreed that they would not take Socheat to the hospital.  Defendant Lim called Socheat a "stupid-ass bitch."

81.   After her suicide attempt, Socheat felt sick all the time.  She had trouble sleeping, and feared that if she fell asleep she would never wake up.

1  Whenever she did fall asleep, she had nightmares that she was falling off a
2  mountain or from a high tower.  She felt crazy all the time, like she might start
3  screaming, and like she did not have control of her body.  Sometimes Socheat
4  felt like she was trapped inside a tiny dark box and could not escape, even
5  though she was screaming for help.

6      82.  After surviving the suicide attempt, Socheat decided that she wanted
7  to live so that she could see her mother again.  She resolved to escape from her
8  traffickers.

9  **H. Socheat escaped from Defendants with the assistance of local**
10  **police**

11      83.  In or around August 2015, Socheat decided to try to contact a police
12  officer that she had seen in the store a few times, who seemed kind.  Socheat
13  barely spoke English, and was afraid to speak to him in person, in case
14  Defendant Sing or anyone else overheard.  She decided to write a note, but she
15  did not know the words in English.  Over the course of approximately two
16  weeks, Socheat asked customers and coworkers how to say and spell the words
17  she needed.  She never asked any person for more than one or two words, so that
18  no one would become suspicious or give her away.

19      84.  Eventually, Socheat pieced together a short note asking for the
20  officer's help, and in August 2015 she had a customer pass the note to the officer
21  when he visited the store.  Later, the officer left Socheat a note with his contact
22  information.  After that, Socheat discreetly secured a phone and contacted the
23  officer to tell him about her situation.  Socheat was rescued by law enforcement
24  on September 28, 2015, and law enforcement later raided Defendants' properties.

25  ///
26  ///
27  ///
28

-22-

1         **I.**   **Socheat continues to suffer from the effects of her trafficking**

2       85.    Since being rescued, Socheat lives in a shelter for trafficking

3 survivors. Socheat has been diagnosed with post-traumatic stress disorder

4 ("PTSD"), and suffers from regular nightmares and troubled sleep.

5         **J.**   **Defendants fraudulently transferred ownership of their real**

6       **properties into a Living Trust, soon before and sometime after law**

7       **enforcement rescued Socheat**

8       86.    On information and belief, Defendants Ngo, Lim, and Ngo Asset

9 Management transferred their rights, title, and interest in almost all of their real

10 properties to The Tiffany Ngo Living Trust UTD, for which Defendant Ngo is

11 trustee, two weeks before law enforcement rescued Socheat on September 28,

12 2015.

13       87.    Defendant Ngo is the sole owner and officer of Defendant Ngo Asset

14 Management.  On September 10, 2015, Defendant Ngo Asset Management

15 transferred its rights, title, and interest in the real property commonly known as

16 44442 Division St., Lancaster, California—the location of Defendant Doe Gas

17 Station 3—to The Tiffany Ngo Living Trust UTD by quitclaim deed, without

**Office  714-736-5505**

18 documentary transfer tax.  Socheat performed clerking and cleaning duties at this

**samkimteam@yahoo.com**

19 property for Defendants.

20       88.    On September 10, 2015, Defendant Ngo Asset Management

21 transferred its rights, title, and interest in the real property commonly known as

22 101-137 East Avenue J, Lancaster, California—the location of the Shopping

23 Center—to The Tiffany Ngo Living Trust UTD by quitclaim deed, Document

24 No. 20151149343, without documentary transfer tax.  Socheat performed

25 cleaning duties at one of the vacant retail spaces at the Shopping Center.

26       89.    On September 10, 2015, Defendant Ngo as "an unmarried woman"

27 transferred all her rights, title, and interest in her solely owned residential real

28

1  property in Palmdale, California to The Tiffany Ngo Living Trust UTD by

2  quitclaim deed, Document No. 20151149341, without documentary transfer tax.

3  Defendants Sing and Ngo resided at this property during Socheat's captivity and,

4  on information and belief, continue to reside there. Socheat performed cleaning

5  and landscaping duties at this residence during her captivity with Defendants

6  Sing, Ngo, and Lim, and slept at this residence between part of April 2014 and

7  September 2015.

8         90.   On September 10, 2015, Defendant Ngo as a "single woman"

9  transferred all her rights, title, and interest in her solely-owned real property

10  commonly known as 500 East Avenue K, Lancaster, California 93535, where

11  Defendants Doe Gas Station 2 and Doe Laundromat 4 are located, to The Tiffany

12  Ngo Living Trust UTD by quitclaim deed, Document No. 20151149342, without

13  documentary transfer tax. Socheat performed cleaning and clerking duties for

14  Defendants Doe Gas Station 2 and Doe Laundromat 4 at this property.

15        91.   On September 10, 2015, Defendants Ngo and Lim as joint tenants

16  transferred their rights, title, and interest in the real property commonly known as

17  VAC/PALMDALE BLVD/VIC 60th St., Palmdale, California, to The Tiffany

18  Ngo Living Trust UTD by quitclaim deed, Document No. 20151149340, without

19  documentary transfer tax.

20        92.   On September 10, 2015, Defendant Ngo as a "single woman"

21  transferred all her rights, title, and interest in the real property commonly known

22  as VAC/AVE K/VIC 98 STW, Del Sur, California, to the Ngo Living Trust by

23  quitclaim deed, Document No. 20151149344, without documentary transfer tax.

24        93.   On February 15, 2017, Defendant Lim transferred his right, title, and

25  interest in real property at VAC/AVE G/VIC 18, Lancaster, California, to his

26  spouse, Carmen Chau Yi Lim, by quitclaim deed, Document No. 20170234289,

27  as a bona fide gift, without documentary transfer tax. This transfer occurred

28                                      -24-



1    after Socheat's rescue by police in September 2015 and after certain of

2    Defendants' properties were raided by the Los Angeles Police Department.

3         94.   On information and belief, Defendants Ngo, Lim, and Ngo Asset

4    Management have transferred all their rights and interest in substantially all their

5    real properties in California to The Tiffany Ngo Living Trust UTD for zero or

6    nominal value, and thus without payment of reasonably equivalent value.

7         95.   Defendants Ngo, Lim, and Ngo Asset Management continued to

8    reside at or conduct business at these transfers.

9         96.   Defendants' transfers of these real properties to The Tiffany Ngo

10   Living Trust UTD, for which Defendant Ngo is trustee, were in effect transfers

11   to themselves.

12                        **FIRST CLAIM FOR RELIEF**

13                              **The TVPA**

14        **For Sale into Involuntary Servitude Under 18 U.S.C. §§ 1584, 1595(a)**

15                         **(Against All Defendants)**

16        97.   Socheat incorporates the foregoing paragraphs as if fully set forth

17   herein.

18        98.   18 U.S.C. § 1595 allows victims of involuntary servitude under 18

19   U.S.C. § 1584 to recover damages and reasonable attorneys' fees, both from the

20   perpetrators and others who knowingly benefitted from the violations.

21        99.   A victim may bring a § 1584 claim under 18 U.S.C. § 1595 against

22   any person, including any business entity, who knowingly and willfully holds to

23   involuntary servitude or sells into any condition of involuntary servitude, any

24   other person for any term, or brings within the United States any person so held.

25   Section 1584 makes it unlawful to hold a person in a condition of involuntary

26   servitude, that is, "a condition of servitude induced by means of . . . any scheme,

27   plan, or pattern intended to cause a person to believe that, if the person did not

28                                -25-

1    enter into or continue in such condition, that person or another person would

2    suffer serious harm or physical restraint." 22 U.S.C. §7102(6)(A).

3        100. Defendants repeatedly subjected Socheat to verbal threats of serious

4    harm, actual physical harm, and psychological and cultural coercion as part of a

5    scheme to force Socheat to perform work against her will and without pay.

6    Defendants shamed and manipulated Socheat into culturally and personally

7    compromising situations; threatened Socheat's sister; promised that great harm

8    would come to Socheat and her family if she attempted to escape from

9    Defendants; confiscated Socheat's identity documents so that Socheat could not

10    escape Defendants; physically confined Socheat to Defendants' houses and

11    businesses; physically harmed Socheat, including cutting her face with a knife;

12    and verbally abused Socheat. Defendants required Socheat to work excessive

13    hours, seven days per week.

14        101. All Defendants either perpetrated the described acts or knowingly

15    and financially benefitted from them.

16        102. As a result, Socheat sustained harm, including mental suffering,

17    humiliation, emotional distress, and economic loss, entitling her to damages in

18    amounts to be proven at trial and reasonable attorney's fees.

19        103. Defendants are liable to Socheat for compensatory and punitive

20    damages in amounts to be proven at trial, and other relief that the Court may

21    deem proper.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

-26-

## SECOND CLAIM FOR RELIEF

### The TVPA

### For Forced Labor Under 18 U.S.C. §§ 1589, 1595(a)

### (Against All Defendants)

104. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

105. 18 U.S.C. § 1595 allows victims of forced labor under 18 U.S.C. § 1589 to recover damages and reasonable attorneys' fees, both from the perpetrators and others who knowingly benefitted from the violations.

106. A victim may bring a § 1589 claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly provides or obtains the labor or services of another person, by means of actual or threatened serious harm, including financial harm, to the victim or a third party, or by means of actual or threatened abuse of the legal process. Serious harm encompasses not only physical violence, but also more subtle psychological methods of coercion.

107. Defendants repeatedly subjected Socheat to verbal threats of serious harm, actual physical harm, and psychological and cultural coercion as part of a scheme to benefit from Socheat's labor without compensating her. Defendants shamed and manipulated Socheat into culturally and personally compromising situations; threatened Socheat's sister; promised that great harm would come to Socheat if she attempted to escape from Defendants; confiscated Socheat's identity documents so that Socheat could not escape Defendants; physically confined Socheat to Defendants' houses and businesses; physically harmed Socheat, including cutting her face with a knife; and verbally abused Socheat.

108. All Defendants either perpetrated the described acts or knowingly and financially benefitted from them.

-27-

1       109.  As a result, Socheat sustained harm, including mental suffering,

2  humiliation, emotional distress, and economic loss, entitling her to damages in

3  amounts to be proven at trial and reasonable attorney's fees.

4       110.  Defendants are liable to Socheat for compensatory and punitive

5  damages in amounts to be proven at trial, and other relief that the Court may

6  deem proper.

### THIRD CLAIM FOR RELIEF

### The TVPA

For Trafficking With Respect to Peonage, Slavery, Involuntary Servitude,

or Forced Labor 18 U.S.C. §§ 1590, 1595(a)

(Against All Defendants)

12       111.  Socheat incorporates the foregoing paragraphs as if fully set forth

13  herein.

14       112.  18 U.S.C. § 1595 allows victims of enticement into slavery,

15  involuntary servitude, or forced labor under 18 U.S.C. § 1590 to recover

16  damages and reasonable attorneys' fees, both from the perpetrators and others

17  who knowingly benefitted from the violations.

18       113.  A victim may bring a § 1590 claim under 18 U.S.C. § 1595 against

19  any person who knowingly recruits, harbors, transports, provides, or obtains by

20  any means, any person for labor or services in violation of 18 U.S.C. §§ 1984

21  and 1989, among others.

22       114.  In violation of 18 U.S.C. § 1590, Defendants knowingly recruited

23  and transported Socheat to the United States, where they held her in a condition

24  of involuntary servitude and forced labor through actual and threatened verbal

25  and physical abuse, psychological coercion, threats to her and her family, and

26  physical confinement in their houses and businesses, as set forth in the respective

27  claims above.

28

-28-

1    115. As a result, Socheat sustained harm, including mental suffering,

2    humiliation, emotional distress, and economic loss, entitling her to damages in

3    amounts to be proven at trial and reasonable attorney's fees.

4    116. Defendants are liable to Socheat for compensatory and punitive

5    damages in amounts to be proven at trial, and other relief that the Court may

6    deem proper.

7    **FOURTH CLAIM FOR RELIEF**

8    **The TVPA**

9    **For Unlawful Conduct With Respect to Documents in Violation of 18 U.S.C.**

10    **§§ 1592, 1595(a)**

11    **(Against All Defendants)**

12    117. Socheat incorporates the foregoing paragraphs as if fully set forth

13    herein.

14    118. 18 U.S.C. §§ 1595 allows victims under 18 U.S.C. § 1592 to recover

15    damages and reasonable attorneys' fees, both from the perpetrators and others

16    who knowingly benefitted from the violations.

17    119. A victim may bring a § 1592 claim under 18 U.S.C. §§ 1595 against

18    any person, including any business entity, who knowingly destroys, conceals,

19    removes, confiscates, or possesses any actual or purported passport or other

20    immigration document, or any other actual or purported government

21    identification document, of another person in the course of a violation of §§

22    1584, 1589, or 1590 with intent to violate those sections; or to prevent or restrict

23    or to attempt to prevent or restrict, without lawful authority, the person's liberty

24    to move or travel, in order to maintain the labor or services of that person, when

25    the person is or has been a victim of a severe form of trafficking in persons.

26    120. In violation of § 1592, Defendants confiscated Socheat's passport

27    and identity documents upon her arrival in the United States.  On information

28

-29-

1    and belief, Defendants removed these documents from Socheat with the intent to

2    prevent or restrict, without lawful authority, Socheat's liberty to move or travel,

3    in order to maintain her labor.  On information and belief, Defendants possessed

4    these documents until they were retrieved by the Los Angeles Police Department

5    during a raid.

6        121.  All Defendants either perpetrated the described acts or knowingly

7    and financially benefitted from them.

8        122.  As a result, Socheat sustained harm, entitling her to damages in

9    amounts to be proven at trial and reasonable attorney's fees.

10       123.  Defendants are liable to Socheat for compensatory and punitive

11   damages in amounts to be proven at trial, and other relief that the Court may

12   deem proper.

13                      <u>FIFTH CLAIM FOR RELIEF</u>

14                              The TVPA

15   **For Benefitting Financially from Trafficking in Persons Under 18 U.S.C. §§**

16                          **1593A, 1595(a)**

17                      **(Against All Defendants)**

18       124.  Socheat incorporates the foregoing paragraphs as if fully set forth

19   herein.

20       125.  18 U.S.C. § 1595 allows victims under 18 U.S.C. § 1593A to recover

21   damages and reasonable attorneys' fees, both from the perpetrators and others

22   who knowingly benefitted from the violations.

23       126.  A victim may bring a § 1593A claim under 18 U.S.C. § 1595 against

24   any person, including any business entity, who knowingly benefits, financially or

25   by receiving anything of value, from participation in a venture which has

26   engaged in any act in violation of section 1592 or 1595(a), knowing or in

27   reckless disregard of the fact that the venture has engaged in such violation.

28                                  -30-

1    127. As alleged herein, Defendants violated § 1593A by knowingly

2    benefitting from participation in a venture, knowing or in reckless disregard of

3    the fact that the venture engaged in such a violation.

4    128. All Defendants either perpetrated the described acts or knowingly

5    and financially benefitted from them.

6    129. As a result, Socheat sustained harm, entitling her to damages in

7    amounts to be proven at trial and reasonable attorney's fees.

8    130. Defendants are liable to Socheat for restitution and compensatory

9    and punitive damages in amounts to be proven at trial, and other relief that the

10   Court may deem proper.

11                          **SIXTH CLAIM FOR RELIEF**

12                                **The TVPA**

13   **For Conspiracy to Violate the Chapter in Violation of §§ 1594, 1595(a)**

14                          **(Against All Defendants)**

15   131. Socheat incorporates the foregoing paragraphs as if fully set forth

16   herein.

17   132. 18 U.S.C. § 1595 allows victims under 18 U.S.C. § 1594 to recover

18   damages and reasonable attorneys' fees, both from the perpetrators and others

19   who knowingly benefitted from the violations.

20   133. 18 U.S.C. §§ 1594(b) makes unlawful any conspiracy to violate,

21   among other provisions, 18 U.S.C. §§ 1589, 1590, and 1592.

22   134. As alleged herein, all Defendants conspired to violate 18 U.S.C. §§

23   1589, 1590, and 1592 by agreeing or conspiring to obtain or provide Socheat's

24   forced labor in violation of 18 U.S.C. § 1589, to traffick Socheat in violation of

25   18 U.S.C. § 1590, and to unlawfully possess Socheat's identity and immigration

26   documents in violation of 18 U.S.C. § 1592.  On information and belief,

27

28                                    -31-

1    Defendants came to an understanding to commit these violations through the

2    course of their dealings with each other.

3        135. All Defendants either perpetrated the described acts or knowingly

4    and financially benefited from them.

5        136. As a result, Socheat sustained harm, including mental suffering,

6    humiliation, emotional distress, and economic loss, entitling her to damages in

7    amounts to be proven at trial and reasonable attorney's fees

8        137. Defendants are liable to Socheat for compensatory and punitive

9    damages in amounts to be proven at trial, and other relief that the Court may

10   deem proper.

11                    **SEVENTH CLAIM FOR RELIEF**

12        **For Human Trafficking Under California Civil Code § 52.5**

13                       **(Against All Defendants)**

14       138. Socheat incorporates the foregoing paragraphs as if fully set forth

15   herein.

16       139. California Civil Code § 52.5(a) allows a victim of human trafficking,

17   as defined in California Penal Code § 236.1, to recover, in a civil action, actual

18   damages, compensatory damages, punitive damages, and any other appropriate

19   relief, as well as attorneys' fees and costs of suit. California Civil Code §

20   52.5(b) allows a victim of human trafficking to recover treble damages.

21       140. A victim may bring a claim under California Civil Code § 52.5

22   against any person who violates or deprives the victim of her personal liberty

23   with the intent to obtain forced labor or services, or who restricts the victim's

24   liberty through fraud, deceit, coercion, violence, duress, menace, or threat of

25   unlawful injury. Forced labor or services means labor or services that are

26   performed or provided by a person, and are obtained or maintained through

27

28                                  -32-

1  force, fraud, or coercion, or equivalent conduct that would reasonably overbear

2  the will of the person.

3       141.  Defendants, acting in their personal capacities and as agents of each

4  other, used threats, intimidation, coercion, violence, duress, menace, and the

5  threat of unlawful injury to overbear Socheat's will, deprive Socheat of her

6  liberty, and force her to work extreme hours in poor conditions and without

7  adequate pay.

8       142.  Through such actions, Defendants acted with malice, oppression,

9  fraud, and duress, to traffick Socheat.  On information and belief, Defendants

10  conspired with each other to violate California Civil Code § 52.5.

11       143.  As a result, Socheat sustained harm, including mental suffering,

12  humiliation, emotional distress, and economic loss, entitling her to damages in

13  amounts to be proven at trial and reasonable attorneys' fees.

14       144.  Defendants are liable to Socheat for actual, compensatory, punitive,

15  and treble damages in amounts to be proven at trial.

16       <u>**EIGHTH CLAIM FOR RELIEF**</u>

17  **For Failure to Pay Minimum Wage Under California Labor Code Sections**

18  **1194, 1194.2, and 1197 and IWC Wage Order Nos. 6, 7, and 15**

19  **(Against All Defendants Except Defendants Chan and Doe 1)**

20       145.  Socheat incorporates the foregoing paragraphs as if fully set forth

21  herein.

22       146.  California Labor Code § 1197 establishes the right of employees to

23  be paid minimum wages for their work, in amounts set by state law.  Prior to

24  2013, California Labor Code § 1182.12 provided that the minimum wage in

25  California was $8.00 per hour.  In 2013, § 1182.12 was amended to provide that,

26  effective July 1, 2014, the minimum wage was to be raised to $9.00 per hour.

27

28

-33-

1        147. California Labor Code §§ 1194(a) and 1194.2(a) provide that an

2  employee who has not been paid the legal minimum wage may recover the

3  unpaid balance, together with attorneys' fees and costs of suit as well, as

4  liquidated damages in an amount equal to the minimum wages unpaid and

5  interest on those amounts.

6        148. From June 2013 through September 2015, Defendants paid Socheat

7  significantly less than the minimum wage for the hours she worked.

8        149. Defendants were aware of, or should have been aware of, the

9  requirement to pay Socheat the statutorily defined minimum wage for her labor

10  and their failure to pay the minimum wage was willful.

11        150. As a direct and proximate result of these actions, Socheat has

12  sustained damages, including lost wages, entitling her to damages in an amount

13  to be proven at trial and reasonable attorneys' fees, and all appropriate penalties

14  provided by the Labor Code.

15                     **NINTH CLAIM FOR RELIEF**

16  **For Failure to Pay Overtime Wages Under California Labor Code Sections**

17      **510(a), 1194, and 1198 and IWC Wage Order Nos. 6, 7, and 15**

18    **(Against All Defendants Except Defendants Chan and Defendant Doe 1)**

19        151. Socheat incorporates the foregoing paragraphs as if fully set forth

20  herein.

21        152. California Labor Code § 510(a) entitles employees generally, IWC

22  Wage Order No. 6 entitles laundromat employees, and IWC Wage Order No. 7

23  entitles gas station employees, to one and one-half times their regular wage rate

24  for hours worked in excess of eight hours per day (or 40 hours per week), and

25  twice their regular rate for hours worked in excess of 12 hours per day, or in

26  excess of eight hours per day on the seventh day of a workweek.

27

28                          -34-

1    153. As authorized by California Labor Code § 1198, IWC Wage Order

2    No. 15 provides for overtime payments to domestic service "live-in" employees

3    in California who are not "personal attendants." Employees, like Socheat, who

4    spend more than 20% of their time engaged in activities other than taking care of

5    a child or person requiring supervision, are not attendants. IWC Wage Order No.

6    15 provides that such workers shall not be employed more than nine hours in any

7    workday for the first five workdays in a work week unless they receive

8    additional compensation beyond their regular wages in amounts specified by

9    law. Such an employee is entitled to overtime pay at a rate of one and one-half

10   times her regular rate for all hours worked in excess of nine during the first five

11   workdays. For the first nine hours worked on the sixth and seventh days of the

12   work week, the employee is entitled to be paid one and one-half times her

13   regular rate. For the remaining hours worked on the sixth and seventh days, the

14   employee is entitled to be paid at double her regular rate.

15   154. Labor Code § 1194(a) provides that an employee who has not been

16   paid the legal overtime pay may recover from her employer the unpaid balance

17   together with attorneys' fees, costs of suit, and interest of those amounts.

18   155. From June 2013 through September 2015, Defendants failed to pay

19   Socheat the significant overtime wages she was entitled to under Labor Code §

20   510(a) and IWC Wage Orders Nos. 6, 7, and 15.

21   156. On information and belief, Defendants were aware of, or should have

22   been aware of, the requirement to pay Socheat the statutorily defined overtime

23   pay for her labor. Defendants' failure to pay the overtime wage was willful.

24   157. As a direct and proximate result of these actions, Socheat has

25   sustained damages, including lost wages, entitling her to damages in an amount

26   to be proven at trial and reasonable attorneys' fees, and all appropriate penalties

27   provided by the Labor Code.

28                                              -35-

<u>**TENTH CLAIM FOR RELIEF**</u>

**For Failure to Pay Minimum Wage Under the FLSA, 29 U.S.C. § 206(a)(1)**
**and § 206(f)**

**(Against All Defendants Except Defendants Chan and Doe 1)**

158. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

159. 29 U.S.C. §§ 206(a) and 206(f), sections of the FLSA, establish a Federal minimum wage of $7.25 per hour for all relevant periods. 29 U.S.C. § 218 provides that an employer is required to pay the greater of the applicable state or federal minimum wage. Prior to 2013, California Labor Code § 1182.12 provided that the minimum wage in California was $8.00 per hour. In 2013, § 1182.12 was amended to provide that, effective July 1, 2014, the minimum wage was to be raised to $9.00 per hour. Thus, Defendants were at all times required to pay Socheat the applicable California minimum wage.

160. 29 U.S.C. § 216(b) provides that an employer who fails to pay employees the minimum wages or overtime required under the FLSA is liable to such employees for their unpaid minimum wage or overtime, plus an additional equal amount in liquidated damages.

161. Defendants employed Socheat within the meaning of FLSA.

162. From June 2013 through September 2015, Defendants paid Socheat significantly less than the greater of the state or federal minimum wage for the hours that she worked.

163. On information and belief, Defendants were aware of, or should have been aware of, the requirement to pay Socheat the statutorily defined minimum wage for her labor. Defendants' failure to pay the minimum wage was willful.

164. As a direct and proximate result of these actions, Socheat has sustained damages, including lost wages, entitling her to recover her unpaid

-36-

1  wages, an additional equal amount in liquidated damages in an amount to be
2  proven at trial, and costs and reasonable attorneys' fees, and such further relief as
3  the court deems proper.

## ELEVENTH CLAIM FOR RELIEF

### For Failure to Pay Overtime Under the FLSA, 29 U.S.C. § 207(a)

### (Against All Defendants Except Defendants Chan and Defendant Doe 1)

7        165. Socheat incorporates the foregoing paragraphs as if fully set forth
8  herein.

9        166. 29 U.S.C. § 207(a) requires an employer to pay workers at a rate not
10 less than one and one-half times the higher of their regular rate (which must be at
11 least the statutory minimum wage) for all hours worked in excess of forty hours
12 per week.

13       167. 29 U.S.C. § 216(b) provides that an employer who fails to pay
14 employees the minimum wages or overtime required under the FLSA is liable to
15 such employees for their unpaid minimum wage or overtime, plus an additional
16 equal amount in liquidated damages.

17       168. From June 2013 through September 2015, Defendants failed to pay
18 Socheat the significant overtime wages she was entitled to under 29 U.S.C. §
19 207(a).

20       169. On information and belief, Defendants were aware of, or should have
21 been aware of, the requirement to pay Socheat the statutorily required overtime
22 pay for her labor. Defendants' failure to pay the minimum wage was willful.

23       170. As a direct and proximate result of these actions, Socheat has
24 sustained damages, including lost wages, entitling her to recover her unpaid
25 overtime and an additional equal amount in liquidated damages, in an amount to
26 be proven at trial, as well as costs and reasonable attorneys' fees, and such
27 further relief as the court deems proper.

28                                          -37-

## TWELFTH CLAIM FOR RELIEF

### For Failure to Provide Meal and Rest Periods Under

### California Labor Code § 226.7 and IWC Wage Order Nos. 6, 7, and 15

### (Against All Defendants Except Defendants Chan and Doe 1)

171. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

172. California Labor Code § 226.7 requires employers to permit their employees to take specified, paid rest breaks and unpaid meal periods. § 226.7 imposes statutory damages on employers who violate these provisions. Courts characterize § 226.7 claims as a kind of wage claim.

173. From June 2013 through September 2015, Defendants routinely failed to provide Socheat with all legally required meal and rest periods, all in violation of Labor Code § 226.7.

174. Due to Defendants' unlawful failure to provide Socheat with the meal and rest periods to which she was entitled by law, Defendants are liable to Socheat for statutory damages as provided by the Labor Code.

## THIRTEENTH CLAIM FOR RELIEF

### For Failure to Provide Accurate, Itemized Wage Stubs Under California

### Labor Code § 226 and IWC Wage Order Nos. 6, 7, and 15

### (Against All Defendants Except Defendants Chan and Doe 1)

175. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

176. Under California Labor Code § 226, for each pay period, employers must furnish each employee with an accurate itemized statement reflecting employment information including gross wages earned, total hours worked, and itemized deductions. Employers must record wage deductions in ink and keep these records on file for at least three years.

-38-

1     177. From June 2013 through September 2015, Defendants knowingly
2 and intentionally failed to provide Socheat with accurate itemized statements in
3 the form and manner specified by Labor Code § 226.

4     178. As a direct and proximate result of these actions, Socheat has
5 sustained damages, including lost wages. Under Labor Code § 226(e), Socheat
6 is entitled to recover the greater of all actual damages or $50 for the initial pay
7 period in which a violation occurs and $100 for each violation in a subsequent
8 pay period, not to exceed an aggregate penalty of $4,000, as well as an award of
9 costs and reasonable attorneys' fees.

10           **FOURTEENTH CLAIM FOR RELIEF**
11   **For Willful Failure to Pay Wages to Discharged or Quitting Employee**
12           **Under California Labor Code § 203**
13    **(Against All Defendants Except Defendants Chan and Doe 1)**

14     179. Socheat incorporates the foregoing paragraphs as if fully set forth
15 herein.

16     180. California Labor Code § 203 provides that if an employer willfully
17 fails to pay any wages of an employee who is discharged or who quits, the wages
18 of the employee shall continue as a penalty from the date that wages are due until
19 the wages are paid, for up to thirty days.

20     181. At all relevant times, Defendants refused and failed to pay Socheat
21 minimum wage, overtime compensation, and premiums for missed meal and rest
22 breaks required by the California Labor Code and the applicable Wage Orders.

23     182. Defendants did not pay Socheat all wages and premiums owed to her
24 by the time she escaped captivity, thereby entitling Socheat to recover waiting
25 time penalties equal to thirty days' pay pursuant to Labor Code § 203.

-39-

## FIFTEENTH CLAIM FOR RELIEF

### For Unfair Competition Under California Business & Professions Code §
### 17203

### (Against All Defendants Except Defendants Chan and Doe 1)

183. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

184. The California Unfair Competition Law ("UCL"), in Cal. Bus. & Prof. Code § 17203, permits a court to provide injunctive relief to restore a plaintiff any interest in money or property which may have been acquired by means of unfair competition. Cal. Bus. & Prof. Code § 17200 defines "unfair competition" to include any unlawful, unfair, or fraudulent business act or practice. Pursuant to Cal. Bus. & Prof. Code § 17204, an individual has standing to bring a claim under the UCL if he or she has suffered injury in fact, and has lost money or property as a result of the unfair competition.

185. Defendants engaged in unlawful business acts or practices, including those set forth in the preceding paragraphs of the Complaint. Defendants, in operating their business, engaged in systematic violations of state and federal minimum wage and overtime laws and state and federal forced labor and human trafficking laws, each of which caused injury and the loss of money or property to Socheat.

186. Defendants' unfair business practices are detailed above.

187. Socheat seeks full restitution from Defendants, and other appropriate injunctive relief, as necessary and according to proof, to restore any and all monies withheld, acquired, and/or converted by Defendants by means of the unfair practices complained of herein.

-40-

<u>**SIXTEENTH CLAIM FOR RELIEF**</u>

**For Intentional Infliction of Emotional Distress**

**(Against All Defendants Except Defendants Chan and Doe 1)**

188.  Socheat incorporates the foregoing paragraphs as if fully set forth herein.

189.  Defendants engaged in outrageous conduct towards Socheat, with the intention of causing, or with reckless disregard for the probability of causing, Socheat to suffer severe emotional distress.  To the extent that such outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified the conduct with a wanton and reckless disregard of the deleterious consequences to Socheat.  This outrageous conduct far exceeded the risks inherent in a normal employment relationship, and included the use of threats, intimidation, and coercion to overbear Socheat's will, to make her travel from her home overseas, to deprive her of personal liberty, and to force her to work for below minimum wage.  For example, Socheat was forced to sleep in Defendant Doe Gas Station 2 on a lawn chair without a blanket, to bathe in Defendant Doe Gas Station 2 and risk exposure to coworkers, and was subjected to constant verbal and physical abuse.  Defendants' conduct violates the fundamental public policy of this state, including as set forth in California Civil Code § 52.5.

190.  As a direct and proximate result of Defendants' actions, Socheat has sustained harm, including lost wages, mental suffering, humiliation and emotional distress, entitling her to damages in an amount to be proven at trial.

191.  Defendants committed these acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Socheat, from an improper and evil motive amounting to malice, and in conscious disregard of Socheat's

-41-

1   rights. Socheat is thus entitled to recover punitive damages from Defendants in

2   an amount to be proven at trial.

3   ### SEVENTEENTH CLAIM FOR RELIEF

4   ### For False Imprisonment

5   ### (Against All Defendants Except Defendants Chan and Doe 1)

6   192.  Socheat incorporates the foregoing paragraphs as if fully set forth

7   herein.

8   193.  Defendants intentionally restricted Socheat's freedom, movement, or

9   physical liberty, confining her to their businesses and homes, without legal right

10  and without her consent, through the use of force, words, and acts. Socheat was

11  unlawfully detained against her will by Defendants from June 2013 through

12  September 2015. Socheat was not free to leave Defendants' control.

13  194.  Specifically, Defendants seized Socheat's passport and other

14  identification documents; monitored all of Socheat's movements; prevented

15  Socheat from leaving their properties without supervision; restricted and

16  controlled Socheat's communications with her family; threatened Socheat and

17  her family's safety and security; and physically and verbally tortured Socheat.

18  Because of Defendants' actions, Socheat was afraid to defy Defendants and

19  reasonably believed that she had to submit and remain in their control.

20  195.  Defendants committed these acts maliciously, with the wrongful

21  intention of causing harm to Socheat, and in conscious disregard of her rights.

22  196.  As a direct and proximate result of Defendants' conduct, Socheat

23  suffered harm, including emotional and psychological distress, pain and

24  humiliation, economic injury from being deprived of the ability to go about her

25  personal affairs, and other injuries.

26  197.  Socheat is entitled to recover damages, including punitive damages,

27  in an amount to be proven at trial.

28

-42-

COMPLAINT
Case No. 2:17-cv-04325

## EIGHTEENTH CLAIM FOR RELIEF

### Battery

### (Against Defendants Sing and Ngo)

198. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

199. Defendants committed battery on Plaintiff by intentionally bringing about harmful and/or offensive contact upon Plaintiff.

200. Defendants' harmful and/or offensive conduct consisted of Defendants Sing and Ngo striking, shoving, hitting, pinching, scratching, cutting, dragging, and slapping Socheat, all of which was done without Socheat's permission or consent. Defendants' battery as alleged herein constituted an intentional touching of Socheat and was undertaken deliberately, and with actual malice, spite, and ill will.

201. As a result of Defendants' conduct in perpetrating these battery acts, Socheat suffered damages, including emotional and psychological distress, pain and suffering, humiliation, mental distress, and other injuries.

202. Socheat is entitled to recover damages, including punitive damages, in an amount to be proven at trial.

## NINETEENTH CLAIM FOR RELIEF

### For Assault

### (Against Defendants Sing and Ngo)

203. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

204. Defendants intended to and did cause Socheat to apprehend immediate, unlawful, and harmful contact, without provocation and without the consent of Socheat, when Defendants repeatedly caused the herein described injuries and damages. Defendants' unlawful actions, and affirmative acts and/or

-43-

1   omissions, were carried out knowingly, willfully, intentionally and with the

2   specific malicious intent to cause injury and harm to Socheat, and ultimately

3   caused actual physical injuries and harm to Socheat.

4       205. Socheat is entitled to recover general, punitive, and exemplary

5   damages in an amount to be proven at trial.

6   ## TWENTIETH CLAIM FOR RELIEF

7   ### Negligence

8   ### (Against All Defendants)

9       206. Socheat incorporates the foregoing paragraphs as if fully set forth

10   herein.

11       207. Defendants stood in a special relationship to Socheat, based on the

12   facts alleged in this Complaint, including but not limited to the following:

13   Defendants arranged and paid for Socheat to travel to the United States; procured

14   Socheat's presence in the United States on fraudulent pretenses; forced Socheat

15   to reside at their properties; and knew Socheat spoke little English and had no

16   familiarity with the customs, culture, society, or laws of the United States at the

17   time they brought her from Cambodia. Further, on information and belief, they

18   knew when they brought Socheat to the United States that she had no money for

19   return airfare and no other means of earning money in the United States.

20       208. The California Labor Code imposes duties on employers, including

21   the duty to allow an employee one day's rest in seven under Labor Code §§ 551

22   and 552, and to "do every other thing reasonably necessary to protect the life,

23   safety, and health of employees" under Labor Code § 6401.

24       209. By virtue of the relationship described above and Defendants'

25   position as Socheat's employers, Defendants' duty of reasonable care toward

26   Socheat under the circumstances included but was not limited to: (1) a duty to

27   provide reasonable accommodations and a safe working and living environment;

28

-44-

1   (2) a duty of reasonable care under the circumstances to protect Socheat's

2   emotional state; (3) a duty to allow Socheat one day in seven to rest from her

3   work; and (4) a duty to ensure Socheat was informed of her rights as an

4   employee under the laws of the United States and the State of California. On the

5   basis of the facts alleged in this Complaint, Defendants assumed a duty of care to

6   Socheat beyond that owed to the public in general, including but not limited to

7   the duties listed above.

8        210. Defendants breached these duties owed Socheat by the acts and

9   omissions alleged in this Complaint, including but not limited to subjecting

10  Socheat to threats and abuse, and the failure to allow Socheat one day's rest in

11  seven.

12       211. As a direct and proximate result of these actions, Socheat sustained

13  harm, including serious and severe mental suffering, humiliation, and emotional

14  distress, entitling her to damages in an amount to be proven at trial.

15                  <u>**TWENTY-FIRST CLAIM FOR RELIEF**</u>

16                          **Negligence Per Se**

17                        **(Against All Defendants)**

18       212. Socheat incorporates the foregoing paragraphs as if fully set forth

19  herein.

20       213. The services provided by Socheat to Defendants were performed

21  under conditions that violated the FLSA; the TVPA; California Civil Code §

22  52.5; provisions of the California Labor Code; and the IWC Wage Orders, as

23  alleged in this Complaint. Defendants knew, or reasonably should have known,

24  of these and ongoing violations, yet did and have done nothing to alleviate,

25  investigate, remedy, or report the violations to appropriate authorities. The anti-

26  trafficking provisions of the TVPA and California Civil Code § 52.5; the

27  minimum wage and overtime guarantees of the FLSA, the California Labor

28                              -45-

1  Code, and applicable IWC Wage Orders; and other provisions of state and

2  federal law violated by Defendants, were enacted to protect workers from

3  economic and personal injuries caused by forced labor, poverty-level wages,

4  unduly long working hours, discrimination, and other substandard working

5  conditions.  The acts and omissions of Defendants as alleged in this Complaint

6  were and are a substantial factor contributing to the illegal working conditions

7  under which Socheat labored.

8      214.  Socheat is a member of the class of persons that the statutes and

9  regulations referenced above were designed to protect, and for whose protection

10  they were adopted.  Socheat's injuries are of the type that the foregoing statutes

11  and regulations are intended to prevent.  Defendants' violations of the foregoing

12  statutes and regulations constituted negligence per se, and created a presumption

13  of negligence.

14      215.  As a direct and proximate result of these actions, Socheat sustained

15  harm, including mental suffering, humiliation, and emotional distress, thereby

16  entitling Socheat to damages in an amount to be proven at trial.  This conduct

17  was malicious, fraudulent, and oppressive, and was done with a conscious

18  disregard of Socheat's rights, and of the deleterious consequences of Defendants'

19  actions.  Each defendant authorized, condoned, and/or ratified the unlawful

20  conduct of all the other defendants named in this action and of their agents and

21  employees.  Consequently, Socheat is entitled to an award of punitive damages.

22              **TWENTY-SECOND CLAIM FOR RELIEF**

23              **Negligent Infliction of Emotional Distress**

24                   **(Against All Defendants)**

25      216.  Socheat incorporates the foregoing paragraphs as if fully set forth

26  herein.

27

28                        -46-

217. By Defendants' status as Socheat's employers, and by virtue of Defendants' role in bringing Socheat from Cambodia to the United States and with knowledge of Socheat's vulnerability and dependence upon Defendants as alleged herein, Defendants owed Socheat a duty of care and a fiduciary duty to act in her best interest.

218. Defendants negligently committed the acts alleged in this Complaint against Socheat, and thereby directly and proximately caused Socheat to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress.

219. By the actions alleged herein, Defendants negligently breached their duty of care to Socheat, and directly and proximately caused her harm, entitling Socheat to damages in an amount to be proven at trial.

## TWENTY-THIRD CLAIM FOR RELIEF

### Trespass to Chattel

### (Against Defendants Sing and Ngo)

220. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

221. Defendants intentionally interfered with Socheat's right to possession of her personal property by confiscating Socheat's identity documents upon her arrival in the United States, thereby depriving Socheat of their use from in or around June 2013 through at least September 2015.

222. As a direct and proximate result of these actions, Socheat sustained harm, including the loss of rightful use of her identity documents, entitling her to damages in an amount to be proven at trial.

///
///
///

-47-

## TWENTY-FOURTH CLAIM FOR RELIEF

### Quantum Meruit

### (Against All Defendants Except Defendants Chan and Doe 1)

223.   Socheat incorporates the foregoing paragraphs as if fully set forth herein.

224.   Socheat performed all of the above-mentioned labor for Defendants.. Defendants have not tendered proper payment to Socheat, and Socheat has not been compensated for the reasonable value of the services she rendered on behalf of Defendants.

225.   Socheat is entitled to compensatory damages from Defendants in an amount to be proven at trial, together with interest, attorneys' fees, and the costs of this action.

## TWENTY-FIFTH CLAIM FOR RELIEF

### Conspiracy

### (Against All Defendants)

226.   Socheat incorporates the foregoing paragraphs as if fully set forth herein.

227.   Defendants conspired and agreed with one another to unlawfully commit the tortious acts described herein.

228.   The tortious acts, or the tortious means used to accomplish the acts not in themselves tortious, were done in furtherance of the conspiracy. Defendants' conduct was oppressive, malicious, intentional, and done with specific intent to harm Socheat.

229.   The tortious act or acts, or the tortious means used to accomplish an act not in itself tortious, directly and proximately caused harm to Socheat, entitling her to damages in an amount to be proven at trial.

-48-

# TWENTY-SIXTH CLAIM FOR RELIEF

### Constructive Voidable Transaction

### Cal. Civil Code § 3439.04(a)(2) and § 3439.05

### (Against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee)

230. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

231. Socheat brings this cause of action against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee.

232. A voidable transfer of assets occurs when the debtor makes the transfer without receiving a reasonably equivalent value in exchange for the transfer obligation, and the debtor intends to incur, or believes or reasonably should believe that she will incur, debts beyond her ability to pay as they become due.

233. Defendants Sing, Ngo, Lim, and Ngo Asset Management had obligations to pay creditors, including but not limited to Socheat.

234. Defendants incurred debts or obligations to pay Socheat because they trafficked Socheat and subjected her to labor violations, including denying her the minimum wage required by law for work performed at Defendant Doe Gas Station 3 at 44412 Division St. in Lancaster; Shopping Center at 101-137 E Avenue J in Lancaster; Defendants Doe Gas Station 2 and Doe Laundromat 4 at 500 East Avenue K; and at Defendant Ngo's residence in Palmdale. Defendants knowingly and financially benefitted from the trafficking scheme. On information and belief, Defendants were aware at all times of the obligations imposed on employers under the California Labor Code and the FLSA, and believed or reasonably should have believed that they would incur debts for Socheat's forced labor.

-49-

1       235. Defendants' obligations to pay creditors, including Socheat, arose

2   before the transactions in September 2015 and February 2017, in which

3   Defendants Ngo, Lim, and Ngo Asset Management transferred their rights, title,

4   and interest in substantially all their real properties to The Tiffany Ngo Living

5   Trust UTD. On September 10, 2015, Defendants Ngo, Lim, and Ngo Asset

6   Management transferred to The Tiffany Ngo Living Trust UTD: (1) Defendant

7   Ngo's residence in Palmdale; (2) Defendant Doe Gas Station 3 at 44412 Division

8   St. in Lancaster; (3) Shopping Center at 101-137 East Avenue J in Lancaster; (4)

9   Defendants Doe Gas Station 2 and Defendant Doe Laundromat 4 at 500 East

10   Avenue K in Lancaster; (5) vacant lot at VAC/Palmdale Blvd/Vic 60th; and (6)

11   vacant lot at VAC/AVE K/Vic 98 STW. On February 15, 2017, Defendant Lim

12   transferred his interest in an additional vacant lot to his spouse Carmen Chau Yi

13   Lim. Defendants transferred these assets for no consideration, and thus received

14   far less than reasonably equivalent value.

15       236. On information and belief, at the time of the transfers, Defendants

16   believed or reasonably should have believed that the transfers would make them

17   incur debts that were beyond their ability to repay as they became due.

18       237. These transfers put beyond creditors' reach—including Socheat's,

19   reach—assets that may be subject to payment of Defendants' debts.

20       238. On information and belief, Defendants Ngo, Lim, Ngo Asset

21   Management, and Ngo Trustee acted on each other's behalf in order to render

22   Defendants insolvent and unable to satisfy debts incurred to Socheat and other

23   creditors.

24       239. As a proximate result of the wrongful acts alleged, Socheat has

25   incurred general damages in an amount to be proven at trial.

26

27

28

-50-

## TWENTY-SEVENTH CLAIM FOR RELIEF

### Intentional Voidable Transaction

### California Civil Code §§ 3439.04(a)(1), (b)

### (Against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee)

240. Socheat incorporates the foregoing paragraphs as if fully set forth herein.

241. Socheat brings this cause of action against Defendants Ngo, Lim, Ngo Asset Management, and Ngo Trustee.

242. A voidable transfer of assets occurs when the debtor makes the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. Actual intent may be inferred when certain factors are present, including the following: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; or (3) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

243. On September 10, 2015, Defendants Ngo, Lim, and Ngo Asset Management transferred to The Tiffany Ngo Living Trust UTD: (1) Defendant Ngo's residence in Palmdale; (2) Defendant Doe Gas Station 3 at 44412 Division St. in Lancaster; (3) Shopping Center at 101-137 East Avenue J in Lancaster; (4) Defendants Doe Gas Station 2 and Doe Laundromat 4 at 500 East Avenue K in Lancaster; (5) vacant lot at VAC/Palmdale Blvd/Vic 60th; and (6) vacant lot at VAC/AVE K/Vic 98 Ste.

244. On September 28, 2015, Socheat was rescued from Defendants by law enforcement. Sometime after she was rescued, law enforcement raided certain of Defendants' properties. On February 15, 2017, Defendant Lim

-51-

1  transferred his interest in an additional vacant lot to his spouse Carmen Chau Yi

2  Lim.

3        245.  The transfers of real properties by Defendants Ngo, Lim, and Ngo

4  Asset Management were made with actual intent to hinder, delay, or defraud

5  present and future creditors of Defendants, including but not limited to Socheat.

6  Defendants Ngo, Lim, and Ngo Asset Management transferred the real properties

7  to insiders, The Tiffany Ngo Living Trust UTD, of which Defendant Ngo is

8  trustee, and to Defendant Lim's wife, Carmen Chau Yi Lim.

9        246.  Defendants Ngo, Lim, and Ngo Asset Management continue to

10  reside in or conduct business at their respective real properties, and thus retained

11  possession or control of the properties after they were transferred.

12        247.  Defendants Ngo, Lim, and Ngo Asset Management transferred the

13  real properties for no consideration, and so for less than reasonably equivalent

14  value.

15        248.  These transfers put beyond creditors' reach—including Socheat's,

16  reach—assets that may be subject to payment of Defendants' debts.

17        249.  As a proximate result of the wrongful acts alleged, Socheat has

18  incurred general damages in an amount to be proven at trial.

19                  __**TWENTY-EIGHTH CLAIM FOR RELIEF**__

20                        **Breach of Contract**

21  **(Against Defendants Sing, Yam, Ngo, Lim, and Ngo Asset Management,**

22      **Doe Gas Station 2, Doe Gas Station 3, and Doe Laundromat 4)**

23        250.  Socheat incorporates the foregoing paragraphs as if fully set forth

24  herein.

25        251.  Socheat brings this cause of action against Defendants Sing, Yam,

26  Ngo, Lim, Ngo Asset Management, Doe Gas Station 2, Doe Gas Station 3, and

27  Doe Laundromat 4.

28

-52-

1    252.  On information and belief, Defendant Sing, acting on behalf of

2    herself and as agent for Defendants Yam, Ngo, Lim, Ngo Asset Management,

3    Doe Gas Station 2, Doe Gas Station 3, and Doe Laundromat 4 entered into an

4    oral, implied employment contract with Socheat.  Defendants offered her a job in

5    the United States performing cashier and inventory duties for their businesses.

6    253.  On information and belief, Defendants directed Family Member 1 to

7    encourage Socheat to work for Defendants in the United States.  Socheat

8    understood she was going to work alongside Family Member 1 at Defendants'

9    businesses.

10    254.  Socheat arrived in the United States to work for Defendants on June

11    11, 2013.  Defendants intended to employ Socheat as a cashier and clerk at

12    Defendants' gas stations and businesses, and put her to work as soon as she

13    arrived in the United States on June 11, 2013.

14    255.  Defendants also had Socheat clean Defendant Ngo's residence from

15    time to time.

16    256.  Defendants did not discuss the express terms of compensation, but

17    Defendant Yam represented to Socheat that she would make more working for

18    Defendants than she was making at her job in Cambodia.

19    257.  The employment contract between Defendants and Socheat impliedly

20    incorporated all applicable laws, rules, and regulations promulgated by the State

21    of California and the United States, including prohibitions against paying

22    workers less than the minimum wage, denying them meal and rest breaks, and

23    employing workers for seven consecutive workdays.

24    258.  Defendants breached their contractual obligations to pay Socheat

25    minimum wage; prevent her from working overtime unless they paid overtime

26    premiums; provide her with meal and rest breaks; provide her with accurate

27

28
                              -53-

1    wage statements; and prevent her from working seven consecutive days, as
2    required under law and implied under the contract.

3       259. Defendants paid Socheat no wages for the first five months she
4    worked for their various businesses.  Only after Socheat returned from Defendant
5    Khiev's house did Defendants pay her approximately $100 per month from in or
6    around May 2014 through September 2015.

7       260. Defendants, through their actions and statements as set forth above,
8    have breached the terms, covenants, conditions, and agreements of the contract.

9       261. Defendants have also breached the implied covenant of good faith
10    and fair dealing found in the contract.  The breach of the implied covenant of
11    good faith and fair dealing includes the fraud and misrepresentations set forth
12    herein.  Because of Defendants' breach, Socheat was denied the benefits of her
13    bargain, and is entitled to the appropriate relief.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Socheat Chy respectfully seeks the following relief:

1.   Unpaid minimum and overtime wages, penalties and interest; liquidated damages; double damages; waiting time penalties; and wages in compensation for missed rest periods, under the applicable sections of the California Labor Code and of the FLSA, according to proof at trial;

2.   For general, compensatory, and special damages according to proof at trial;

3.   Exemplary and punitive damages according to proof at trial;

4.   Statutory damages, liquidated damages, treble damages, penalties, and all other forms of monetary relief recoverable under applicable law;

-54-

|    |     |                                                                          |
|----|-----|--------------------------------------------------------------------------|
| 1  | 5.  | Pre-judgment and post-judgment interest;                                 |
| 2  | 6.  | Preliminary and permanent injunctive relief;                             |
| 3  | 7.  | Avoidance of transfers or obligations and attachment of any assets or    |
| 4  |     | proceeds;                                                                |
| 5  | 8.  | Appropriate restitution;                                                 |
| 6  | 9.  | Reasonable costs and attorneys' fees, and expenses incurred and          |
| 7  |     | expended to date, according to proof at trial, to the extent allowable   |
| 8  |     | by applicable law; and                                                   |
| 9  | 10. | Such other and further relief as the Court deems just and proper.        |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated: June 9, 2017

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Lorraine B. Echavarria*
Lori Echavarria
Sonia L. Fleury
Kelsey M. McGregor
Laura F. Donaldson

ASIAN AMERICANS ADVANCING JUSTICE—LOS ANGELES
Laboni Hoq
Yanin Senachai

*Attorneys for Plaintiff*

-55-