Lorraine B. Echavarria (SBN 191860)
lori.echavarria@wilmerhale.com
Nancy Lynn Schroeder (SBN 280207)
nancy.schroeder@wilmerhale.com
Sonia L. Fleury (SBN 298534)
sonia.fleury@wilmerhale.com
Kelsey M. McGregor (SBN 307627)
kelsey.mcgregor@wilmerhale.com
Laura F. Donaldson (SBN 307638)
laura.donaldson@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

Laboni Hoq (SBN 224140)
lhoq@advancingjustice-la.org
Yanin Senachai (SBN 288336)
ysenachai@advancingjustice-la.org
ASIAN AMERICANS ADVANCING
    JUSTICE-LOS ANGELES
1145 Wilshire Blvd., 2nd Floor
Los Angeles, CA 90017
(213) 977-7500 Telephone
(213) 977-7595 Facsimile

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Socheat Chy,<br><br>            Plaintiff,<br><br>    v.<br><br>Lam Sin Yam; Ray Lim; Tiffany Ngo; Ngo Asset Management, LLC; Tiffany Ngo in her capacity as trustee of the Tiffany Ngo Living Trust UTD; Naing Lam Yam; Cindy Kanya Chan; Molica Ratha Keo; Nivodeth Khiev; Cruise Thru Dairy, d/b/a Cruise Thru Dairy; Valero Mart Inc., d/b/a Valero Mart/ Arco Market Inc.; and Tiffany Ngo, d/b/a Speedy Wash,<br><br>            Defendants. | Case No. 2:17-cv-04325<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Action Filed: June 9, 2017<br>First Amended Complaint Filed: August 16, 2017<br>Second Amended Complaint Filed: September 5, 2017<br>Motion to Dismiss Filed: September 19, 2017<br>Hearing Date: November 6, 2017 |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 1

II.     PROCEDURAL BACKGROUND ..................................................... 2

III.    FACTS ............................................................................................ 2

IV.     ARGUMENT ................................................................................... 3

        A.      Legal Standard ...................................................................... 3

        B.      The Fourth Claim under the TVPA for Document Abuse Applies to
                Defendants Because They Either Perpetrated the Violation or
                Knowingly Benefited from It. ................................................ 4

        C.      Defendants' Statute of Limitations Defense to Ms. Chy's False
                Imprisonment Claim Should be Denied because She Properly Pled
                Equitable Tolling .................................................................. 6

                1.      Equitable Tolling is Not Ripe at the Pleading Stage ................. 6
                2.      Ms. Chy Pled Sufficient Facts to Allege Equitable Tolling in
                        the Complaint ............................................................. 7

        D.      Ms. Chy's Negligent Infliction of Emotional Distress Should Not Be
                Dismissed Because it Constitutes a Separate and Distinct Claim Under
                California Law. .................................................................... 10

        E.      Ms. Chy Properly States a Claim under RICO. ................................ 12

                1.      Ms. Chy sufficiently alleges a pattern of racketeering. ............ 13
                2.      Ms. Chy sufficiently alleges multiple predicate acts. ............... 13
                3.      Ms. Chy does not fragment one single act into multiple
                        predicates. ................................................................ 15
                4.      Ms. Chy sufficiently pled predicate acts, not
                        "lesser offenses." ......................................................... 16
                5.      Ms. Chy sufficiently alleges continuity to establish a pattern of
                        racketeering activity. .................................................... 17

                        a)      Closed-ended continuity ................................... 18
                        b)      Open-ended continuity ..................................... 19

6.  The Ninth Circuit does not require multiple victims for RICO claims. ....................................................................................... 20

7.  Ms. Chy has sufficiently alleged conspiracy to commit RICO. ........................................................................................... 21

V.    LEAVE TO AMEND ...................................................................... 21

VI.   CONCLUSION ............................................................................... 23

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>CASES</u>

*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733 (9th Cir. 2008) ....................... 22

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (1995) ............................................. 18, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 3, 4

*Ateeq v. Najor*, 15 Cal. App. 4th 1351 (1993) ........................................................ 8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ........................... 4

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .................................................... 22

*Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) .................................... 9

*Burgess v. Superior Court*, 2 Cal. 4th 1064 (1992) .............................................. 11

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ................................. 7

*Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002) ............................... 22

*Collins v. Los Angeles Cty.*, 241 Cal. App. 2d 451 (1966) ...................................... 9

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................... 4

*Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir.
        2001) ............................................................................................................... 7

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) .................. 9

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ............... 22

*Eriksson v. Nunnink*, 233 Cal. App. 4th 708 (2015) ........................................ 10, 11

*Ford v. Artiga*, No. 2:12-CV-02370 KJM-AC, 2013 WL 3941335
        (E.D. Cal. July 30, 2013) ......................................................................... 8, 22

*Granger v. Lowe's Home Ctrs., LLC*, No. 114CV01212DADSKO,
        2016 WL 1138175 (E.D. Cal. Mar. 23, 2016) ............................................. 11

-iii-

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ...............................15, 17, 18, 19

*Hernandez v. Attisha*, No. 09CV-2257-IEGWMC, 2010 WL 816160
    (S.D. Cal. Mar. 5, 2010) ...........................................................................9, 10

*Hernandez v. City of Richmond*, No. 14-CV-03079-JST, 2014 WL
    5034756 (N.D. Cal. Oct. 8, 2014) ...........................................................10, 11

*Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035 (N.D. Cal 2011) .....................19

*Johnson v. Dovey*, No. CV06-01985-DDP JCR, 2008 WL 4375654
    (C.D. Cal. Aug. 27, 2008) ...............................................................................7

*Kearney v. Foley and Lardner, LLP*, 607 Fed. App'x 757 (9th Cir.
    2015)..............................................................................................................21

*Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003) ..................................................9

*Martinez v. Calmlim*, 651 F. Supp. 2d 852 (E.D Wis. 2009) ...................14, 15, 21

*M*oore v. Comcast Sportsnet, No. C 12-05708 SBA, 2013 WL 451665
    (N.D. Cal. Feb. 4, 2013) ................................................................................22

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d
    1134 (C.D. Cal. 2011) .............................................................................15, 16

*Polycast Tech. Corp. v. Uniroyal*, 728 F. Supp. 926 (S.D.N.Y. 1989)..................16

*Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965 (1993) ..............................11

*Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013)......................................................4

*Sedima, S.P.R.L., v. Imrex Co.*, 473 U.S. 479 (1985).......................................13, 21

*Stoll v. Runyon*, 165 F.3d 1238 (9th Cir. 1999).......................................................8

*Summers v. Delta Airlines, Inc.*, 805 F. Supp. 2d 874 (N.D. Cal. 2011) ...............22

*Sun Sav. and Loan Ass'n. v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987)...................21

*Tatung Co., Ltd. v. Hsu*, No. SA CV 13-1743-DOC (ANx), 2015 WL
    11072178 (C.D. Cal. Apr. 23, 2015)............................................................21

-iv-

*Ticor Title Ins. Co. v. Florida*, 937 F.2d 447 (9th Cir. 1991) ................................. 20

*United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990) ............................................. 17

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ................................. 21

*United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989) ...................................... 14,

*Vaughan v. Grijalva*, 927 F.2d 476 (9th Cir. 1991) .................................................. 7

*Wong v. Tai Jing*, 189 Cal. App. 4th 1354 (2010) ................................................. 10

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 1584 ...................................................................................... 13, 14

18 U.S.C. § 1589 ............................................................................... 13, 14, 17

18 U.S.C. § 1590 ............................................................................... 13, 14, 17

18 U.S.C. § 1592 ................................................................................... passim

18 U.S.C. §1595 ....................................................................................... 4, 5, 6

18 U.S.C. § 1961(1) ................................................................................ 13, 17

18 U.S.C. § 1961(5) ...................................................................................... 13

18 U.S.C. § 1962 ........................................................................................... 12

18 U.S.C. § 1962(d) ...................................................................................... 21

18 U.S.C. § 1964(c) ...................................................................................... 13

Federal Rules of Civil Procedure ("FRCP") 15 ...................................... 22

Federal Racketeer Influenced and Corrupt Organizations Act
        ("RICO") ...................................................................................... passim

FRCP 12(b)(6) ........................................................................................ 4, 6

Trafficking Victims Protection Act ("TVPA") .............................. 1, 4, 5, 6

## I.    INTRODUCTION

This is a case about human trafficking and the corresponding conspiracy to physically and emotionally terrorize a young woman, Socheat Chy, through a forced labor scheme constituting racketeering activity.  Defendants are individuals and businesses directly engaged in the trafficking scheme, were agents of the traffickers, and/or knowingly benefitted from the trafficking scheme.[1]  Despite Defendants' claims that Ms. Chy's pleadings are insufficient and Defendants' insinuations that the facts all amount to a misunderstanding amongst purported "family" members, the Defendants in fact trafficked Ms. Chy, abused her mentally and physically, forced her to work without pay or breaks, physically confined her in their gas stations, and deprived her of her immigration documentation to ensure her continued subjugation.  Defendants have asked this Court to dismiss four of Ms. Chy's claims against them, including claims for unlawful conduct regarding documents under the Trafficking Victims Protection Act ("TVPA"), false imprisonment, negligent infliction of emotional distress, and Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  Defendants' arguments ignore allegations contained in the Second Amended Complaint ("Complaint") and misconstrue the law governing Ms. Chy's claims.  As a result, Defendants' motion should be denied.

---

[1] Defendants applicable to this motion are Lam Sin Yam ("Defendant Sin"); Ray Lim ("Defendant Lim"); Tiffany Ngo ("Defendant Ngo"); Ngo Asset Management, LLC ("Defendant Ngo Asset Management"); Tiffany Ngo in her capacity as trustee of the Tiffany Ngo Living Trust UTD ("Defendant Ngo Trustee"); Cruise Thru Dairy, d/b/a Cruise Thru Dairy ("Defendant Valero Gas Station"); Valero Mart Inc., d/b/a Valero Mart/ Arco Market Inc. ("Defendant Arco Gas Station"); and Tiffany Ngo, d/b/a Speedy Wash ("Defendant Speedy Wash") (collectively "Defendants").  The other Defendants to this action did not move to dismiss the Second Amended Complaint, so only those that brought the Motion to Dismiss Fourth, Seventeenth, Twenty-Second, and Twenty-Ninth Claims for Relief are included within the definition of Defendants for purposes of this Opposition filing.

## II.   PROCEDURAL BACKGROUND

Ms. Chy had made good faith efforts to respond to Defendants' arguments about the purported deficiencies in the allegations and claims in this action.  After filing the initial complaint on June 9, 2017, Ms. Chy agreed to extend Defendants' time to respond, and thereafter met and conferred with Defendants on August 4, 2017 about the purported pleading deficiencies.  In response, Ms. Chy filed a First Amended Complaint on August 16, 2017 addressing certain of Defendants concerns.

After meeting and conferring with Defendants' counsel again on August 30, 2017, the parties stipulated to Ms. Chy filing the Complaint on September 5, 2017, to name the corporate Doe defendants and add a twenty-ninth claim for relief. Thereafter, on September 14, 2017, the parties met and conferred a third time to discuss the Defendants' motion to dismiss arguments.  As the Complaint sufficiently pleads facts supporting all claims asserted therein, Ms. Chy declined to further amend the complaint.  Defendants' thereafter filed the instant motion to dismiss, which Ms. Chy opposes here.

## III.   FACTS

Defendants recruited and transported Ms. Chy from Cambodia on June 11, 2013 to work in their three separate businesses and the California home of Defendants Sin and Ngo.  Compl. ¶ 44.  As soon as Ms. Chy arrived in the United States, Defendant Sin confiscated Ms. Chy's identity documents and withheld them until law enforcement retrieved them during a raid.  Compl. ¶¶ 45, 119. Defendants forced Ms. Chy to work seven days a week, approximately 17 hours per day, at their Arco and Valero gas stations, their Speedy Wash, and Defendant Sin and Ngo's residence.  Compl. ¶¶ 48-49, 74.  Defendants made Ms. Chy sleep overnight at one of the gas stations, sometimes locking her in, and failed to pay her

1  the minimum required wages. Compl. ¶¶ 50-51, 55, 74, 76. Defendants physically

2  harmed, threatened, and psychologically coerced Ms. Chy to perform work against

3  her will and without proper pay, meals, or rests. Compl. ¶¶ 46-47, 58-65, 73, 77.

4      In late October 2013, Ms. Chy attempted to escape from Defendants Sin,

5  Lim, and Ngo. Compl. ¶ 66. Her attempt at freedom fell short when Defendant

6  Naing Lam Yam (not a party to this motion) conspired with other Defendants to

7  return Ms. Chy to the custody and control of Defendants Sin, Lim, and Ngo.

8  Compl. ¶¶ 66-71. When Defendant Sin obtained control over Ms. Chy again,

9  Defendant Sin accused Ms. Chy of betraying Defendant Sin, and emotionally

10  manipulated Ms. Chy by telling her that Ms. Chy's mother in Cambodia had

11  suffered a near-fatal motorbike accident as a result of Ms. Chy's purported

12  disloyalty and the betrayal. Compl. ¶¶ 71-72. For another 17 months, Defendants

13  Sin, Ngo, and Lim again forced Ms. Chy to work at their businesses and at

14  Defendant Sin and Ngo's residence. Compl. ¶ 74. Defendants continued to deny

15  Ms. Chy minimum required wages and breaks, and Defendants Ngo and Sin

16  continued to verbally and physically abuse Ms. Chy. Compl. ¶¶ 75, 77.

17  Defendants denied Ms. Chy necessary medical attention when, in or around August

18  2014, Ms. Chy tried to commit suicide in an attempt to escape Defendants. Compl.

19  ¶¶ 78-80. With the help of law enforcement, Ms. Chy finally escaped from

20  Defendants in September 2015. Compl. ¶ 83. After her rescue, Ms. Chy was

21  diagnosed with Post-Traumatic Stress Disorder ("PTSD"), and has been living in a

22  shelter for trafficking survivors. Compl. ¶ 84.

23  **IV.   ARGUMENT**

24      **A.   Legal Standard**

25      Ms. Chy's claim need only be "plausible" at this early stage of litigation, and

26  "[a] claim has facial plausibility when the plaintiff pleads factual content that

27

28

-3-

allows the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). All well-pleaded factual allegations in the Complaint must be taken as true, and all reasonable inferences must be drawn in Ms. Chy's favor. *Id.*; *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). Indeed, her claims "should not be dismissed under Rule 12(b)(6) 'unless it appears *beyond doubt* that [she] can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief.'" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (emphasis added) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

> ### B.     The Fourth Claim under the TVPA for Document Abuse Applies to Defendants Because They Either Perpetrated the Violation or Knowingly Benefited from It.

Ms. Chy brings her Fourth Claim under the TVPA for unlawful conduct with respect to documents, pursuant to 18 U.S.C. § 1592 and §1595(a). In their Motion to Dismiss, Defendants claim that Ms. Chy failed to allege sufficient facts regarding liability of Defendants Lim, Ngo, Ngo Asset Management, Ngo Trustee, Valero Gas Station, Arco Gas Station, and Speedy Wash under this provision. Yet Defendants ignore the TVPA provisions explicitly extending liability for damages and reasonable attorneys' fees from both perpetrators of the violations and from those who *knowingly benefitted* from the violations. *See* Mem. of P. & A. in Supp. Defs.' Mot. 7; *compare* Compl. ¶¶ 119-120. As set forth in the Complaint, an enabling statute within the TVPA, 18 U.S.C. §1595(a), states that a civil action may be brought:

> …against the perpetrator (or whoever **knowingly benefits**, financially or by receiving anything of value from **participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter**) ….

18 U.S.C. § 1595(a) (emphasis added).  Section 1592, to be read in conjunction with this enabling provision, provides that it is a violation of the TVPA to conceal, remove, confiscate, or possess any actual or purported passport or other immigration document to prevent or restrict that person's liberty to move or travel, or to maintain the labor or services of that person.  18 U.S.C. § 1592.  Such a violation, and knowingly benefiting from that violation are the exact actions the Complaint alleges as to all Defendants.  *See* Compl. ¶¶ 7-12, 44-57, 72-77, 120.

Ms. Chy has alleged sufficient facts to demonstrate both that Defendant Sin removed, confiscated, and possessed her documents in violation of 18 U.S.C. § 1592 and 1595, and that each and all these Defendants knowingly benefitted from this misconduct and conspired in Ms. Chy's corresponding trafficking scheme. Compl. ¶¶ 7-12, 44-57, 72-77, 120.  Specifically, Ms. Chy alleges that Defendant Sin took Ms. Chy's passport and forced Ms. Chy to make promises under the threat of harm if she betrayed them.  Compl. ¶¶ 45-46.  Ms. Chy further alleged specific benefits that accrued to Defendants based on their denial of her liberty and freedom to leave, in part based upon withholding her passport, as well as through the unpaid[2] and forced labor that they required her to provide to their businesses and in their homes.  Compl. ¶¶ 7-12, 44-57, 72-77, 120.  The confiscation of documents contributed to the atmosphere of threats, abuse, and coercion all Defendants intentionally created in order to obtain the benefit of Ms. Chy's forced labor.  *See, e.g*., Compl. ¶¶ 7-12, 45-65, 74-77.  Ms. Chy also alleges specific details about Defendants confining her movement, constraining her ability to leave, and curtailing her liberty; for example, Defendants forced her to sleep at nights at their gas station, where they locked her in.  Compl. ¶¶ 55, 76.  Further, Ms. Chy alleged conspiracy, agency, and alter ego claims against all Defendants based on

---

[2] As alleged in the Complaint, Defendants paid Ms. Chy approximately $1,200 for 17 months of labor and nothing at all for 5 months of labor.  Compl. ¶¶ 50, 54, 74.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325

information and belief that each and every defendant worked together to traffic Ms. Chy, obtain her forced labor, and knowingly benefit from a venture that would violate the TVPA.  Compl. ¶¶ 7, 9-12, 16-20, 45, 119, 120.  Based on the statutory language enabling a plaintiff to bring claims against both the perpetrator of the unlawful conduct regarding documents and those knowingly benefitting from such conduct, these allegations suffice to state a claim under 18 U.S.C. § 1592 and 1595 of the TVPA against all Defendants.

### C.   Defendants' Statute of Limitations Defense to Ms. Chy's False Imprisonment Claim Should be Denied because She Properly Pled Equitable Tolling.

Defendants' motion to dismiss Ms. Chy's False Imprisonment claim on statute of limitations grounds based on failure to state facts supporting equitable tolling should be denied for two reasons: (1) courts have found that equitable tolling requires reference to facts outside the scope of the complaint alone and is not ripe at the pleading stage; and (2) Ms. Chy pled sufficient facts to support equitably tolling the statute of limitations applicable to her False Imprisonment claim—namely that Defendants' conduct caused Ms. Chy's delay in filing.

#### 1.   Equitable Tolling is Not Ripe at the Pleading Stage

As an initial matter, the court should not dismiss Ms. Chy's Seventeenth Claim for Relief—False Imprisonment at this early stage in the litigation based solely on the pleadings.  Courts have held that the question of whether equitable tolling applies in a given case "ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion,

1  where review is limited to the complaint alone." [3]  *Cervantes v. City of San Diego,*

2  *5 F.3d 1273, 1276 (9th Cir. 1993)*; *see Johnson v. Dovey*, No. CV06-01985-DDP

3  JCR, 2008 WL 4375654, at *7 (C.D. Cal. Aug. 27, 2008). Instead, "California's

4  fact-intensive test for equitable tolling is more appropriately applied at the

5  summary judgment or trial stage of litigation." *Cervantes*, 5 F.3d at 1276.

6  Therefore, the Court should decline to dismiss Plaintiff's claim of False

7  Imprisonment at this time.

8        **2.**    **Ms. Chy Pled Sufficient Facts to Allege Equitable Tolling in**

9                      **the Complaint.**

10        Here, Ms. Chy more than adequately pled facts to support equitable tolling

11  of her False Imprisonment claim, including Defendants' years of physical and

12  emotional abuse, psychological and personal coercion, threats of harm to Ms. Chy,

13  and forced labor without proper compensation. *See, e.g.*, Compl. ¶¶ 45-46, 58-61,

14  72-77, 84, 99, 106, 147, 285. For a claim to survive a motion to dismiss, there

15  only needs to be some facts supporting a potential equitable tolling argument.

16  *Cervantes*, 5 F.3d at 1277 ("The sole issue is whether the complaint, *liberally*

17  construed in light of our 'notice pleading' system, adequately alleges facts showing

18  the *potential* applicability of the equitable tolling doctrine." (emphasis added)).

19  

20  [3] Only in "unusual cases," is it appropriate for a court to dismiss a claim despite a defense
of equitable tolling. *Cervantes*, 5 F.3d at 1276; *Daviton v. Columbia/HCA Healthcare

21  Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001) (noting that "only in the rare case could the
[equitable tolling] inquiry proceed at the pleading stage"). In such rare cases, a

22  superficial review of the complaint demonstrates that the plaintiff could not have
prevailed as a matter of law on equitable tolling as plead. *Vaughan v. Grijalva*, 927 F.2d

23  476, 478 (9th Cir.1991). For example, a plaintiff cannot prevail on an equitable tolling

24  defense where there is an unreasonable and bad faith year-and-a-half wait to file a claim.
*Cervantes*, 5 F.3d at 1276. Here, there is no evidence of Plaintiff's bad faith. Rather, as

25  alleged in the Complaint, it was Defendants' bad faith that caused Ms. Chy's emotional

26  distress and prevented her from quickly rebuilding her life after her rescue. *See, e.g.*,
Compl. ¶¶ 45-46, 58-61, 84, 106, 147.

27                                     -7-

28

1    Furthermore, courts routinely apply equitable tolling where defendants' wrongful

2    conduct caused a plaintiff's delay in filing—the exact situation pled in this case.

3    *See Ford v. Artiga*, No. 2:12-CV-02370 KJM-AC, 2013 WL 3941335, at *7 (E.D.

4    Cal. July 30, 2013) (*citing Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1357 (1993))

5    ("California courts have recognized that equitable tolling is appropriate 'where

6    delay in commencing an action is induced by the conduct of the defendant.'").

7    Indeed, the Ninth Circuit concluded that equitable tolling applies especially when

8    the defendant's actions leave a plaintiff "so broken and damaged that she cannot

9    protect her own rights."  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)

10   (applying equitable tolling where defendant's physical and emotional abuse

11   prevented plaintiff from timely pursuing her wage claim).

12        As well-pled in the Complaint, Defendants' conduct left Ms. Chy broken

13   and caused her delay in filing.  From 2013 to 2015, Defendants subjected Ms. Chy

14   to years of physical and emotional abuse.  Compl. ¶¶ 45-46, 58-61, 72-77, 106.

15   Additionally, Defendants withheld Ms. Chy's money and identity documents, and

16   her identity documents were returned only after a law enforcement raid, following

17   Ms. Chy's rescue on September 28, 2015.  Compl. ¶¶ 119, 147, 267-269.  After her

18   rescue, Ms. Chy had to restart her life with few resources, limited English language

19   skills, and a fragile emotional state.  Compl. ¶¶ 84, 147.  Since being rescued, Ms.

20   Chy has been diagnosed with PTSD, and has been living in a shelter for trafficking

21   survivors where she is learning how to reintegrate into society.  Compl. ¶ 84.  Ms.

22   Chy pled facts confirming that she was not able to bring these claims earlier.  Ms.

23   Chy's emotional and financial challenges—caused by Defendants' conduct—span

24   a time period after her release, thereby extending Ms. Chy's deadline to file her

25   False Imprisonment claim.

26        Ignoring these clearly pled facts, Defendants' argue that no facts were pled

27

28

regarding equitable tolling and that only the period the Plaintiff was detained would be covered by the doctrine.  Such an outcome would be inconsistent with the equity principles behind the tolling doctrine, which as a matter of law extends the time to file until after Ms. Chy finally escaped her traffickers.  *See Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (equitable tolling is a judge-made doctrine "to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness"); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) ("[E]quitable tolling applies *after* the claim has already accrued, suspending the statute of limitations to prevent unfairness to a diligent plaintiff." (emphasis in the original) (citation omitted)).  As Defendants acknowledge, a claim for false imprisonment begins to accrue when a plaintiff is released from confinement.  *See* Mem. of P. & A. in Supp. Defs.' Mot. 8; *see also Collins v. Los Angeles Cty.*, 241 Cal. App. 2d 451, 455 (1966) (concluding that "the statute of limitations begins to run from the termination of the imprisonment of plaintiff").

Indeed, Defendants' reliance on *Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) and *Hernandez v. Attisha*, No. 09CV-2257-IEGWMC, 2010 WL 816160 (S.D. Cal. Mar. 5, 2010) to support their argument is misplaced.  In both cases, the courts applied equitable tolling to allow the plaintiffs' cases to go forward.  *Bureerong*, 922 F. Supp. at 1463 (finding that equitable tolling applied to plaintiffs' claims because plaintiffs were unable to bring their claims while physically restrained in a garment factory); *Hernandez*, 2010 WL 816160, at *4-5 (finding that equitable tolling applied to plaintiff's claims).  Moreover, neither of these cases expressly address whether equitable tolling applies to a claim, such as false imprisonment, which accrues only after the plaintiff is released from confinement.  *See Collins*, 241 Cal. App. 2d at 455.  Finally, although the

-9-

1    *Hernandez* court questioned whether the continuing tort doctrine delayed accrual

2    of a plaintiff's emotional distress claims while the plaintiff was confined to the

3    defendants' home, it did not find that equitable tolling only covered the period of

4    detention.  Instead, the court equitably tolled Plaintiff's claims because

5    "[d]efendants' alleged misconduct prevented [p]laintiff from complying with the

6    statute of limitations":  allowing the "[d]efendants to parlay their wrongful acts

7    into legal immunity" would be "exactly the type of unjust forfeiture equitable

8    tolling is designed to obviate."  2010 WL 816160, at *4-5.  Both of these

9    arguments apply to Ms. Chy's circumstances and support application of equitable

10   tolling doctrine in this matter.

11        **D.    Ms. Chy's Negligent Infliction of Emotional Distress Should Not**

12   **Be Dismissed Because it Constitutes a Separate and Distinct Claim Under**

13   **California Law.**

14        Ms. Chy pled sufficient facts to allege a separate claim for negligent

15   infliction of emotional distress, which under California law is a cause of action

16   separate and distinct from a negligence claim.  Although negligent infliction of

17   emotional distress ("NIED") has been construed as a subset of a negligence claim,

18   *see, e.g.*, *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010), courts have also

19   found that plaintiffs may "proceed with multiple, independent theories of

20   negligence" by pleading "additional, particularized facts in support of a separate

21   NIED theory." *Hernandez v. City of Richmond*, No. 14-CV-03079-JST, 2014 WL

22   5034756, at *5 (N.D. Cal. Oct. 8, 2014).  One court stated that "the right to

23   damages for NIED is a separate and distinct right belonging to the NIED plaintiffs."

24   *Eriksson v. Nunnink*, 233 Cal. App. 4th 708, 727 (2015).

25        Defendants oversimplify the case law defining NIED by relying exclusively

26   on a single case without considering or addressing the subsequent development of

27

28
                                                    -10-

case law on the issues.  First, the case upon which Defendants rely clarifies that although the tort of NIED is not independent of negligence, that does not mean that an NIED claim cannot be brought, but rather that "there is no duty to avoid negligently causing emotional distress to another, and that damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). Indeed, after *Potter*, California courts articulated a "direct victim theory" of NIED as a separate cause of action in which the plaintiff alleges emotional injuries arising out of non-physical acts which breach a duty.  *Granger v. Lowe's Home Ctrs., LLC*, No. 114CV01212DADSKO, 2016 WL 1138175, at *4 (E.D. Cal. Mar. 23, 2016) (finding that under the direct victim theory "a plaintiff may recover damages for serious emotional distress—absent a physical injury—if the distress results from 'a breach of duty owed the plaintiff' . . . .") (citation omitted);  *see also* Eriksson, 233 Cal. App. 4th at 727 (distinguishing "bystander" NIED claims from "direct victim" NIED claims); *Hernandez*, 2014 WL 5034756, at *5 (noting that plaintiff could have alleged a separate theory of NIED with "particularized facts").  In *Granger*, the court concluded that, while the plaintiffs' NIED claims originating from physical injuries should be "subsumed by their general negligence claim," the plaintiffs' NIED claims stemming from serious emotional distress "absent a physical injury" could continue under a "direct victim theory" if that distress "results from a breach of duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two."  2016 WL 1138175 at *4 (citing *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073 (1992) (internal quotation mark omitted).

Consistent with this doctrine, Ms. Chy pled emotional injuries stemming from multiple non-physical acts in breach of duties that the Defendants owed to her.

-11-

Ms. Chy alleged that Defendants caused her to experience "fear, depression, humiliation, mental anguish, and severe . . . emotional distress" when they breached the duty of care they assumed as both her employer and "by virtue of their role in bringing her from Cambodia to the United States with knowledge of her vulnerability and dependence upon Defendants."  Compl. ¶ 216; *see also* Compl. ¶¶ 63-64, 78, 80, 84.  She also pled facts detailing numerous non-physical acts that caused her severe emotional distress, including but not limited to: persistent verbal abuse (Compl. ¶¶ 58, 60-61, 77); threats against Ms. Chy and her family (Compl. ¶¶ 34, 45-47, 72); controlling Ms. Chy's activities and travel (Compl. ¶¶ 25-26, 44, 76); pressuring Ms. Chy and exposing her to cultural shame and ridicule (Compl. ¶¶ 33, 39-40); forcing Ms. Chy to work long hours and denying her rest (Compl. ¶¶ 48-53, 74-75); and abusive verbal remarks dismissing Ms. Chy's condition during her suicide attempt (Compl. ¶ 79).  Based on these facts in the Complaint, Defendants committed multiple *non-physical* acts causing Ms. Chy severe *emotional* distress, in breach of a duty or duties imposed on Defendants as a matter of law or which arose out of a relationship between the two. Therefore, Ms. Chy has effectively pled a separate claim of NIED.

**E.  Ms. Chy Properly States a Claim under RICO.**

Ms. Chy pled sufficient facts to state a RICO claim against Defendants under 18 U.S.C. § 1962.  Defendants argue that Ms. Chy has not alleged two or more predicate acts, that her allegations do not constitute a pattern with continuity, and that RICO is limited to a single alleged victim.  However, Ms. Chy has alleged multiple predicate acts constituting a pattern of racketeering activity with sufficient continuity, and RICO civil claims do not require multiple plaintiffs as a matter of law.

As applicable to Ms. Chy's experience here, any person injured in her

1    business or property by reason of a violation of RICO may sue to recover damages.

2    18 U.S.C. § 1964(c).  RICO is to be read broadly, consistent with Congressional

3    intent that RICO "be liberally construed to effectuate its remedial purposes."

4    *Sedima, S.P.R.L., v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) (citation omitted).

5    The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3)

6    through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's

7    business or property.  *See id.* at 496.  Racketeering activity is defined as "any act

8    indictable" under specified statutes, including 18 U.S.C. § 1584 (involuntary

9    servitude); 18 U.S.C. § 1589 (forced labor); 18 U.S.C. § 1590 (trafficking with

10   respect to peonage, slavery, involuntary servitude or forced labor); and 18 U.S.C. §

11   1592 (unlawful conduct with respect to documents in furtherance of trafficking,

12   peonage, slavery, involuntary servitude or forced labor).  18 U.S.C. § 1961(1).  A

13   "pattern of racketeering activity" requires "at least two acts of racketeering

14   activity," with the last activity occurring within ten years "after the commission of

15   a prior act of racketeering activity."  18 U.S.C. § 1961(5).

16                    **1.    Ms. Chy sufficiently alleges a pattern of racketeering.**

17            Ms. Chy alleged multiple predicate acts—involuntary servitude, forced labor,

18   trafficking, and unlawful conduct with respect to documents—spanning 22 months,

19   which constitutes a pattern of racketeering activity by Defendants.  Compl. ¶ 285.

20   Defendants do not dispute that the underlying predicates were sufficiently pled, but

21   rather that Ms. Chy only alleges a single predicate act.  Mem. of P. & A. in Supp.

22   Defs.' Mot. 12.  This argument fails both legally and factually.

23                    **2.    Ms. Chy sufficiently alleges multiple predicate acts.**

24            Defendants mischaracterize Ms. Chy's allegations of the distinct RICO

25   predicate acts of involuntary servitude, forced labor, trafficking, and unlawful

26   conduct with respect to documents as constituting a "single action" of forced labor.

27

28

1    *Id.* Defendants argue that this purported "single action" of forced labor, despite

2    violating multiple statutes and constituting numerous acts by Defendants, counts

3    only as a single predicate, citing a factually distinguishable criminal RICO case

4    *United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989). *Walgren* is not

5    applicable.  In *Walgren*, the defendant challenged his RICO conviction after an

6    underlying predicate mail fraud charge was vacated, leaving one predicate act

7    charge based on a single telephone call.  *Id.* at 1424.  The court held that the

8    government could not sustain a RICO charge based on the one telephone

9    conversation, despite the fact that the call violated both a federal and state bribery

10   statute.  *Id.* at 1425-26.

11       Unlike *Walgren,* Ms. Chy is not relying on a single act like a telephone

12   conversation to establish a pattern of racketeering activity, but alleges multiple

13   predicate racketeering acts of involuntary servitude, forced labor, trafficking, and

14   unlawful use of documents against Defendants.  *Id.* at 1417; Compl. ¶ 285.  Even if

15   *Walgren's* prohibition against charging multiple predicates for the same act applies

16   to civil RICO cases, Ms. Chy alleges multiple, distinct acts:  (1) Defendants'

17   confiscation and withholding of her identity and immigration documents (18 U.S.C.

18   § 1592; Compl. ¶¶ 116-122); (2) Defendants obtaining and knowingly benefitting

19   from her forced labor as managers/owners of the businesses and house where she

20   performed labor (18 U.S.C. § 1589; Compl. ¶¶ 103-109); (3) Defendants engaging

21   in multiple incidents of verbal and physical abuse and confinement which induced

22   a condition of servitude by causing her to believe serious harm would result if she

23   ran away from Defendants (18 U.S.C. § 1584; Compl. ¶¶ 96-102); and (4)

24   Defendants trafficking her, including transporting and harboring her, in furtherance

25   of forced labor (18 U.S.C. § 1590; Compl. ¶¶ 110-115).

26       Indeed, another human trafficking case, *Martinez v. Calmlim*, 651 F. Supp.

-14-

2d 852, 859-60 (E.D Wis. 2009), provides more analogous precedent for applying RICO.  In that case, plaintiff alleged RICO predicate acts of trafficking, forced labor, harboring, and mail and wire fraud against a family that trafficked her from the Philippines, forced her to work for them for little to no pay, and made threats to prevent her from leaving for nineteen years.  *Id*. at 856, 862.  The court held the plaintiff's allegations of predicate acts sufficiently plead pattern of racketeering. *Id*. at 860.  Similarly, in *Nunag-Tanedo v. East Baton Rouge Parish School Board*, the court upheld a RICO claim based on analogous facts to those present here.  790 F. Supp. 2d 1134, 1148-51 (C.D. Cal. 2011) (finding that Plaintiffs sufficiently alleged multiple RICO predicate acts where "Plaintiffs have stated valid claims for forced labor, human trafficking, and unlawful document-related practices, and these claims may also serve as underlying predicate acts for Plaintiffs' RICO claim").  In that case, involving individuals trafficked from the Philippines to work as teachers, the court held that allegations of forced labor, trafficking, confiscation of documents, and extortion were sufficient to establish a pattern of racketeering activity, and denied the Defendants' motion to dismiss.  *See id*. at 1134, 1148-51. Like *Nunag-Tanedo* and *Martinez*, Ms. Chy sufficiently alleges multiple predicate acts based on a scheme that involved repeated but distinct instances of threats and harm.  *Id*. at 1148.  That Defendants' predicate acts may form one scheme does not preclude her from showing a pattern of racketeering activity.  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240-41 (1989) (rejecting a requirement of "multiple schemes" for a RICO claim).

### 3.    Ms. Chy does not fragment one single act into multiple predicates.

Defendants argue that Ms. Chy uses a six-month "visit with her husband" Naing Lam Yam—an astonishing characterization of the pleadings, which name

Mr. Yam as a defendant, trafficker, and co-conspirator—to fragment a single action of forced labor into two predicate acts. Mem. of P. & A. in Supp. Defs.' Mot. 13. Even if this were true, which it is not, Ms. Chy alleges multiple other distinct, predicate acts. As explained above, Ms. Chy alleges multiple predicate acts that constitute involuntary servitude, forced labor, trafficking, and confiscation of documents. Defendants forced Ms. Chy to work long hours in their businesses and homes without proper compensation (Compl. ¶¶ 48-51, 66-67, 74); forced Ms. Chy to spend nights in the stocking room of their gas station (Compl. ¶¶ 55, 76); took measures to ensure Ms. Chy did not escape from their businesses and homes (Compl. ¶¶ 57, 66, 68, 76); repeatedly abused and tortured Ms. Chy, to the point where Ms. Chy felt her life and her family's lives were in danger, even causing Ms. Chy to attempt to end her life (Compl. ¶¶ 58-61, 65, 77, 78); told Ms. Chy that a near-fatal motorbike accident involving Ms. Chy's mother had occurred because of Ms. Chy's attempt to run away (Compl. ¶ 72); and confiscated and maintained control over Ms. Chy's passport for the duration of Ms. Chy's captivity (Compl. ¶ 45). Defendants cite to *Polycast Technology Corp. v. Uniroyal*, 728 F. Supp. 926, 941, 945 (S.D.N.Y. 1989), which is distinguishable because it involves a single set of misrepresentations, multiple revisions of a memorandum, and verbal statements on the same subject. Unlike in *Polycast*, Ms. Chy does not allege a single set or series of acts that amount to one action, but rather, and as set forth above, alleges multiple distinct predicate acts within a larger and continuous scheme. *See Nunag-Tanedo*, 790 F. Supp. 2d at 1148.

### 4. Ms. Chy sufficiently pled predicate acts, not "lesser offenses."

Defendants argue that Ms. Chy pleads "lesser offenses" to allege multiple predicate acts. Mem. of P. & A. in Supp. Defs.' Mot. 13. Any act indictable under

the statutes prohibiting trafficking (§ 1590) and unlawful conduct with respect to documents (§ 1592) constitutes racketeering activity.  Nothing in the statute listing racketeering activity indicates that these are lesser offenses to forced labor.  *See* 18 U.S.C. § 1961(1).

Defendants cite to *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990), which, like *Walgren*, is inapposite.  In *Biaggi,* the court overturned a RICO conviction because the alleged predicates were based on the same act—accepting a promise of employment—which the government inappropriately charged as separate counts of accepting a bribe and obstructing justice.  *Id.* at 685-87.  By contrast, Ms. Chy alleges multiple, indeed daily, acts violating four distinct RICO predicate statutes, not just a single act violating a single RICO predicate statute.  Forced labor, for example, is the act of knowingly providing, obtaining, or benefiting from the labor or services of a person by any number of forceful or threatening means,[4] whereas the withholding of documents is a separate act of destruction, concealment, removal, confiscation, or possession of Ms. Chy's property.

### 5.    Ms. Chy sufficiently alleges continuity to establish a pattern of racketeering activity.

A pattern of racketeering activity requires "continuity," in which the two or more related predicate acts must "amount to or pose a threat of continued criminal activity."  *See H.J. Inc.*, 492 U.S. at 239.  Continuity may be either closed-ended or open-ended, and Ms. Chy sufficiently alleges facts to establish both types.  *See id.*

---

[4] Forced labor can be obtained by any one of, or by any combination of, the following means: (a) force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (b) serious harm or threats of serious harm to that person or another person; (c) the abuse or threatened abuse of law or legal process; or (d) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.  18 U.S.C. § 1589.

1    at 241.

2                    a)    Closed-ended continuity

3            Ms. Chy alleged facts clearly establishing that she meets RICO's closed-

4    ended continuity theory.  "A party alleging a RICO violation may demonstrate

5    continuity over a closed period by proving a series of related predicates extending

6    over a substantial period of time."  *Id.* at 242.  In *Allwaste, Inc. v. Hecht,* 65 F.3d

7    1523, 1528 (9th Cir. 1995), the Ninth Circuit rejected a bright-line rule that a

8    "substantial period" requires at least one year, and indicated that allegations of

9    activity spanning 13 months could satisfy continuity.  For her RICO claim, Ms.

10   Chy pleads that Defendants committed predicate acts spanning 22 months.  First,

11   by subjecting her to involuntary servitude, confiscating her documents, forcing her

12   unpaid labor, and trafficking her for five months from June 2013 to October 2013.[5]

13   Compl. ¶¶ 45-62, 285.  Then, after a six-month period when she was under the

14   control of other named defendants, Defendants resumed their violative predicate

15   conduct from about April 2014 to September 2015, including continued threats of

16   harm, physical abuse, and other forms of coercion that compelled Ms. Chy to

17   continue working for Defendants under inhumane conditions.  Compl. ¶¶ 72-77,

18   285.  That second period alone spans 17 months, with a cumulative total of 22

19   months of continuous predicate acts—more than the 13 months considered a

20   substantial period in *Allwaste*.  65 F.3d at 1528.  Thus, Ms. Chy sufficiently

21   alleged closed-ended continuity.

22           Defendants resume their argument that Ms. Chy has only alleged a single

23   predicate act, "an isolated act or episode of forced labor," and thus cannot establish

24   a pattern over a substantial period.  Mem. of P. & A. in Supp. Defs.' Mot. 14-15.

25   _____

26   [5] Defendants inappropriately mischaracterize the period that Defendants Yam, Khiev, and
     Keo harbored Ms. Chy at Defendants Keo and Khiev's house as a "break," when Ms.
27   Chy alleged that defendants forced her to stay hidden at all times, such that Ms. Chy felt
     like a prisoner.  Compl. ¶ 285.

                                             -18-

28

1    As discussed above, because Ms. Chy has pled multiple predicate acts that

2    reoccurred daily for over 22 months, violating four separate RICO predicate

3    statues involving involuntary servitude, confiscation of documents, forced labor,

4    and trafficking, she has alleged conduct that was not isolated, and was indeed

5    continuous for a substantial period.

6                    b)      Open-ended continuity

7          Ms. Chy also pled facts that meet RICO's alternative open-ended continuity

8    theory.  Open-ended continuity is "established by showing either that the predicate

9    acts 'include a specific threat of repetition extending indefinitely into the future'

10   [threat of continued activity] or that the predicate acts were 'part of an ongoing

11   entity's regular way of doing business.'"  *Allwaste*, 65 F.3d at 1527 (quoting *H.J.*

12   *Inc.*, 429 U.S. at 242).  Open-ended continuity does not require that the predicate

13   acts have stopped.  *See Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1046

14   (N.D. Cal 2011) (rejecting the argument that plaintiffs severed open-ended

15   continuity by terminating the employee committing a racketeering act).

16         Defendants conduct satisfies RICO's open-ended continuity theory based on

17   multiple, alternative tests.  First, courts in the Ninth Circuit have held that plaintiffs

18   can establish a "threat of continued activity," by pleading that but for some

19   intervening event defendants would have continued their racketeering activity.  *See*

20   *Allwaste*, 65 F.3d at 1530 (holding that allegations satisfied open-ended continuity

21   where they supported an inference that predicate acts could have recurred

22   indefinitely had defendants not been terminated)*; see Huntair*, 774 F. Supp. 2d at

23   1046 ("There is no indication that the alleged wrongdoing would have stopped had

24   [the defendant] not been terminated.").

25         Similar to *Allwaste* and *Huntair*, Ms. Chy's Complaint satisfies open-ended

26   continuity because there is no indication that Defendants would have ceased

27

28
                                          -19-

subjecting her to forced labor, involuntary servitude, or returned her identity documents, had it not been for law enforcement rescuing her in September 2015. Indeed, Defendants were unwilling to stop their misconduct after Defendant Lam returned her to their custody.  Defendants resumed their threats, physical and verbal abuse, and forced labor against Ms. Chy and Ms. Chy only received her identity documents from the police after a raid on Defendants' property recovered them.  Compl. ¶¶ 72-77, 119.

Second, as Ms. Chy does here, a plaintiff can also satisfy open-ended continuity by showing that racketeering activity is part of a defendant's regular business.  *See Allwaste*, 65 F.3d at 1528-29.  This may be shown by the "frequency" of the predicate activity.  *See Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) (concluding that three forgeries within a 13-month period suggested that the "practice had become a regular way of conducting business").

Defendants argue without basis that Ms. Chy has not alleged that "racketeering is part of the Defendants' regular way of doing business."  Mem. of P. & A. in Supp. Defs.' Mot. 14-15.  To the contrary, the Complaint clearly alleges numerous facts indicating that racketeering constituted Defendants' regular way of doing business, including that Defendants engaged in racketeering acts spanning a period of 22 months, that these acts took place at multiple businesses and their home, and that these acts resumed their regular course after Ms. Chy tried to escape and was returned to Defendants' control.  Compl. ¶¶ 45-62, 285.

### 6.   The Ninth Circuit does not require multiple victims for RICO claims.

Relying on cases in other circuits, Defendants erroneously argue that Ms. Chy's claims should be dismissed because of her failure to plead multiple victims. But the Ninth Circuit has consistently recognized that a pattern of racketeering

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325

activity can be brought by a single victim. *See, e.g.*, *Kearney v. Foley and Lardner, LLP*, 607 Fed. App'x 757, 759 (9th Cir. 2015) (holding that "a pattern does not require multiple victims," and reversing the district court's dismissal of a single victim's RICO claim); *Sun Sav. & Loan Ass'n. v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987) (reversing dismissal of RICO claim that alleged a single victim of a fraudulent scheme). In *Martinez*, the court held a single trafficking victim's allegations stated a pattern of racketeering activity. 651 F. Supp. 2d at 856. And the Supreme Court case *Sedima* involved a single victim. *See* 473 U.S. at 483. Because the Ninth Circuit does not require multiple RICO victims, Ms. Chy's is not precluded from alleging a RICO claim.

### 7.   Ms. Chy has sufficiently alleged conspiracy to commit RICO.

Defendants also incorrectly argue that Ms. Chy has not sufficiently alleged conspiracy to commit RICO. Mem. of P. & A. in Supp. Defs.' Mot. 16. A RICO conspiracy under § 1962(d) requires only that a defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). The plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Tatung Co., Ltd. v. Hsu*, No. SA CV 13-1743-DOC (ANx), 2015 WL 11072178, at *25 (C.D. Cal. Apr. 23, 2015). As described above, Ms. Chy has alleged that Defendants committed or conspired to commit more than two predicate acts. Compl. ¶ 285. Thus, Ms. Chy has adequately pled conspiracy to commit RICO.

## V.   LEAVE TO AMEND

In the event that the Court finds any of these arguments insufficient, Ms. Chy

requests leave to amend pursuant to Fed. R. Civ. P. 15(a).  Fed. R. Civ. P. 15 advises the court that "leave shall be freely given when justice so requires," and this policy is "to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).  "Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile."  *Moore v. Comcast Sportsnet*, No. C 12-05708 SBA, 2013 WL 451665, at *1 (N.D. Cal. Feb. 4, 2013) (citing *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002)).  Indeed, "[d]ismissal without leave to amend is proper only in extraordinary cases." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citation omitted); *see also Summers v. Delta Airlines, Inc.*, 805 F. Supp. 2d 874, 887 (N.D. Cal. 2011) (granting a plaintiff leave to amend her NIED claim, given that "it is possible that Plaintiff may have some other basis for her negligent infliction of emotional distress claim that is unrelated to the negligence that allegedly caused her physical injuries."); *Ford*, 2013 WL 3941335, at *8 (granting the plaintiff leave to amend the complaint where the court determined that "the facts in plaintiff's complaint are insufficient to determine whether he meets the factors for equitable tolling").

There is no evidence to suggest that amendment would be futile in this case, nor that this case is extraordinary, and while Defendants cite to *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding that denials of leave to amend are made only when "allegation of other facts consistent with the challenged pleading could not be cured," or when a plaintiff has *repeatedly* failed to cure deficiencies), they fail to acknowledge that Ms. Chy has made repeated good faith efforts to cure alleged deficiencies, including by meeting with opposing counsel on several occasions and filing her First Amended Complaint.  If further pleading is determined necessary, she should be given an opportunity to clarify or

expand upon the alleged facts.

**VI.     CONCLUSION**

For the above reasons, Defendants' motion should be denied.

Dated:  October 16, 2017

WILMER CUTLER PICKERING HALE
        AND DORR LLP


By:  */s/ Lori Echavarria*
        Lori Echavarria
        Nancy Lynn Schroeder
        Sonia L. Fleury
        Kelsey M. McGregor
        Laura F. Donaldson

ASIAN AMERICANS ADVANCING
JUSTICE—LOS ANGELES
        Laboni Hoq
        Yanin Senachai

*Attorney for Plaintiff, Socheat Chy*

-23-

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 350 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

I hereby certify that a true and correct copy of the above and foregoing document has been served on October 16, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5-3.2.3.  All other parties who have not consented to electronic service via the Court's CM/ECF system will be served by U.S. Mail as follows:

☒    **(BY U.S. MAIL)**  I caused such document(s) to be deposited with the U.S. Postal Service by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

**Via CM/ECF Electronic Service**
Heidi S. Lewis
SULLIVAN, KRIEGER, TRUONG,
    SPAGNOLA & KLAUSNER, LLP
2 Park Plaza, Suite 900
Irvine, CA 92614

*Attorney for Defendants Lam Sin Yam; Ray Lim;*
*Tiffany Ngo; Ngo Asset Management, LLC;*
*Tiffany Ngo in her capacity as trustee of the*
*Tiffany Ngo Living Trust UTD; Cruise Thru*
*Dairy, d/b/a Cruise Thru Dairy; Valero Mart*
*Inc., d/b/a Valero Mart/ Arco Market Inc.; and*
*Tiffany Ngo, d/b/a Speedy Wash*

-24-
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325

## CERTIFICATE OF SERVICE
### (Continued)

**Via U.S. Mail**
Molica Ratha Keo
Long Beach, CA

**Via U.S. Mail**
Nivodeth Khiev
Long Beach, CA

**Via U.S. Mail**
Naing Lam Yam
Long Beach, CA

**Via U.S. Mail**
Cindy Kanya Chan
Long Beach, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 16, 2017 at Los Angeles, California.

_____
Gina N. Gaytan

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:17-cv-04325